## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

EDIBLE IP, LLC; and EDIBLE
ARRANGEMENTS LLC,

     Plaintiffs,

v.

MC BRANDS, LLC; and GREEN THUMB
INDUSTRIES INC.,

     Defendants.

NO: 20-cv-05840

## MC BRANDS, LLC AND GREEN THUMB INDUSTRIES INC.'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT

Defendants MC Brands, LLC and Green Thumb Industries Inc. (collectively, "GTI"), by and through its undersigned counsel of record, for its Answer to Plaintiff Edible Arrangements, LLC and Edible IP, LLC ("Plaintiffs") Complaint, states as follows:

## NATURE OF THE ACTION

1.     This is a civil action against Defendants for federal and state trademark and service mark infringement; federal unfair competition; Illinois common law unfair competition; and Illinois statutory deceptive trade practices arising out of Defendants' infringement and other wrongdoing with respect to Edible's federally registered EDIBLE mark and EDIBLE-formative trademarks and service marks, which Edible has extensively and continuously used nationwide and before Defendants to identify Edible's fruit, confection, and other food and gift-related goods and services throughout the United States prior to Defendants' conduct complained of herein.

1

**Answer**: GTI admits that Plaintiffs attempt to state causes of action for federal and state trademark and service mark infringement, federal unfair competition, Illinois common law unfair competition, and Illinois statutory deceptive trade practices. GTI denies the remaining allegations of this paragraph. GTI denies that Plaintiffs have established any rights in the term "edible" when used alone, with any goods or services. GTI denies that Plaintiffs have any rights to the term "edible" in the cannabis industry, as that term has been widely used as a generic term for cannabis-infused food for decades. GTI denies that Plaintiffs have any trademark rights in the cannabis industry because Plaintiffs have not actually used their asserted marks in commerce in connection with cannabis-infused edibles. In fact, GTI is the senior user of its INCREDIBLES mark in this area of commerce, and Plaintiffs are merely trying to muscle into an entirely new business area without actually building consumer loyalty and brand recognition.

2.      Thereafter, and junior to Edible's first trademark and service mark use in commerce, Defendants began and continue to use the virtually identical mark "INCREDIBLES" (the "INCREDIBLES Name" or the "Infringing Mark") to promote and offer confection and fruit-related products and services.

**Answer**: Denied. Plaintiffs do not have any rights to the term "edible" in the cannabis industry. "Edible" has been a generic term in the cannabis industry for decades. Further, GTI's INCREDIBLES mark is not "virtually identical" considering that the cannabis industry is crowded with "edible"-formative marks.

3.      This Complaint is brought pursuant to the trademark laws of the United States, Title 15, United States Code, as well as pursuant to the unfair competition and deceptive trade practices laws of the state of Illinois, and asserts claims for:

- federal trademark and service mark infringement in violation of Section 32 of the

2

Lanham Act of 1946, 15 U.S.C. § 1114;

- federal unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a);

- Illinois common law trademark and service mark infringement;

- Illinois common law unfair competition; and

- violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 (Count Six).

**Answer**: GTI admits that Plaintiffs attempt to state causes of action for federal trademark and service mark infringement, federal unfair competition, false designation of origin, and palming off, Illinois common law trademark and service mark infringement, Illinois common law unfair competition, and violation of Illinois Uniform Deceptive Trade Practices Act. GTI denies the remaining allegations of this paragraph.

4. In bringing this lawsuit, Edible seeks a judgment of damages measured by an accounting of Defendants' profits (*i.e.*, the sales that Defendants have made) from its trademark infringement, unfair competition, and deceptive trade practices, plus any additional sum as the Court shall find to be just, which shall constitute compensation; three times any actual damages that Edible has sustained as a result of Defendants' unlawful actions; permanent injunctive relief to stop Defendants' illegal use and infringement of Edible's EDIBLE and EDIBLE-formative marks; punitive damages; reasonable attorney's fees; and costs.

**Answer**: GTI admits that Plaintiffs attempt to seek these things but denies the remaining allegations of this paragraph. GTI denies that Plaintiffs are entitled to *any* relief, let alone the relief set forth above. Plaintiffs are not entitled to *any* lost profits because the idea that *any* consumer of GTI's INCREDIBLES edibles associates GTI's INCREDIBLES with Plaintiffs—a

3

fruit basket company—is preposterous.  Plaintiffs are not entitled to "three times any actual damages" because there is no (and never will be) any evidence of willfulness.  Plaintiffs have not sustained any actual damages, and are not entitled to any punitive damages, fees or costs.

## THE PARTIES

5.      Plaintiff Edible IP, LLC is a Connecticut limited liability company whose member is Edible Brands, LLC, a Delaware Company. Edible IP's principal place of business is in Fulton County, Georgia at 980 Hammond Drive, Atlanta, GA 30328. Edible IP owns all of the trademarks, service marks, trade names, common law intellectual property, and other goodwill associated with the brand "EDIBLE." As discussed in more detail below, Edible IP licenses this property to Edible Arrangements LLC and other entities that conduct business using the name EDIBLE.

**Answer**: GTI is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

6.      Plaintiff Edible Arrangements LLC is a Delaware limited liability company with a principal place of business at 980 Hammond Drive, Atlanta, Georgia 30328.

**Answer**: GTI is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

7.      On information and belief, Defendant MC Brands, LLC is a Colorado limited liability company with its principal place of business in the state of Colorado and offices located at 1150 W. Custer Place, Denver, CO 80223.

**Answer**: GTI admits that MC Brands, LLC, is a Colorado limited liability company. GTI denies the remaining allegations and affirmatively states that MC Brands, LLC's principal place of business is located at 325 W. Huron St., Suite 700, Chicago IL 60654.

8. On information and belief, Defendant Green Thumb Industries, Inc. is a British Columbia corporation with a principal place of business in the state of Illinois and offices located at 325 W Huron St #412, Chicago, IL 60654.

**Answer:** GTI admits that Green Thumb Industries Inc., is a British Columbia corporation. GTI denies the remaining allegations and affirmatively states that Green Thumb Industries Inc.'s principal place of business is located at 325 W. Huron St., Suite 700, Chicago IL 60654.

### JURISDICTION AND VENUE

9. This Court has original subject matter over Edible's claims as federal questions pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) and (b).

**Answer**: GTI admits that, to the extent Plaintiffs state a claim under the Lanham Act, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. GTI denies the remaining allegations of this paragraph.

10. This Court has supplemental jurisdiction over the claims for trademark infringement, unfair competition, and deceptive trade practices that arise under the State of Illinois statutory and common law pursuant to 28 U.S.C. § 1367(a), because they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts under Article III of the United States Constitution.

**Answer**: GTI admits that, to the extent Plaintiffs state a claim under the Lanham Act, this court has supplemental jurisdiction over the Illinois state law claims for trademark infringement, unfair competition, and deceptive trade practices pursuant to 28 U.S.C. § 1367. GTI denies the remaining allegations of this paragraph.

11.     This Court has personal jurisdiction over Edible, LLC and Edible Arrangements LLC because, by virtue of their filing of this Complaint, they consent to this Court's jurisdiction.

**Answer**: This paragraph contains conclusions of law for which no response is required.

12.     Defendants are subject to personal jurisdiction in this district under the Due Process Clause of the United States Constitution and the laws of the state of Illinois because Defendants have minimum contacts within the state of Illinois and the Northern District of Illinois pursuant to due process. Defendant Green Thumb Industries, Inc. has a principal place of business in this District, and together with Defendant MC Brands, LLC, Defendants make the INCREDIBLES branded products at issue in this lawsuit available for sale in the state of Illinois and in the Northern District of Illinois. Further, Edible's causes of action arise directly from Defendants' business contacts and other activities in the state of Illinois and in the Northern District of Illinois. More specifically, Defendants directly offer, transact businesses, and advertise (including through the provision of web pages) their products and services in the state of Illinois and the Northern District of Illinois where residents can and, upon information and belief, do purchase Defendants' goods offered and distributed under the infringing mark "INCREDIBLES." Thus, Defendants have committed trademark infringement, unfair competition, and deceptive trade practices in the state of Illinois and in the Northern District of Illinois.

**Answer**:  GTI denies that Plaintiffs have any cause of action or that Defendants have committed trademark infringement, unfair competition, and deceptive trade practices in the state of Illinois or anywhere else. Defendants admit that they have engaged in commercial activities in the State of Illinois and in this District and are subject to personal jurisdiction in this court.

13.     A representative screenshot of Defendants' websites, which reference their business in Illinois, are as follows:



**Answer**: GTI admits that these images appear to be substantially similar to pages on GTI's website but denies the remaining allegations of this paragraph.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Edible's claims occurred in this District, and/or 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction with respect to such action.

**Answer**: Admitted.

## FACTUAL BACKGROUND

### Edible and Its Businesses

15.     Edible Arrangements LLC is the successful franchisor of stores offering, among a wide variety of other products, fresh cut fruit products. It is well known for its artistically designed confectionary fresh fruit products evocative of floral designs, dipped fruit products like chocolate dipped strawberries, and other chocolate, snack, and baked goods. These highly regarded products are available through an extensive network of franchises located throughout the United States and abroad, and through its website, its call center, the Internet, and a handful of affiliate-owned stores.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them. On information and belief, Plaintiffs are known to consumers as a fruit basket company, and are not known to consumers for their chocolate, snack and baked goods products. On further information and belief, Plaintiffs' products are not "highly regarded" among consumers.

16.     Edible IP, LLC is the owner and licensor of, among other things, the various trademarks, service marks, trade dress, domain names, copyrights, and other intellectual property

used and associated with the highly-successful, widely-recognized and distinctive "Edible" brand and business, as set forth in greater detail below. Edible IP, LLC licenses these intellectual property assets to Edible Arrangements LLC for use and sublicensing through Edible Arrangements LLC's franchise system and websites.

**Answer**: GTI denies that Plaintiffs' alleged "Edible" brand is "highly-successful, widely recognized and distinctive." "Edible Arrangements" is a fruit basket company, and to the extent "Edible Arrangements" is attempting to rebrand itself as "edible" in a misguided attempt to seize control of the generic term "edible" in the cannabis industry, consumers in the cannabis industry do not associate the generic term "edible" with Plaintiffs. Indeed, the generic term "edible" has been used as a generic term for such a long time in the cannabis industry, consumers will likely *never* associate the term "edible" with Plaintiffs. GTI is without information sufficient to admit or deny the remaining allegations of this paragraph and, accordingly, denies them.

17. Tariq Farid founded Edible in what has become a famous American success story. Mr. Farid emigrated from Pakistan when he was twelve years old. Beginning when he was only sixteen, Mr. Farid purchased his first flower shop. Within several years he grew his business to four locations.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them.

18. Then came his entrepreneurial breakthrough: Mr. Farid developed a unique marketing program of providing floral arrangements made from fresh cut fruit instead of flowers. The fresh fruit is cut and sculpted to look like beautiful floral designs.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them.

19.     In 1999, Mr. Farid opened the first "Edible Arrangements" store, through which he introduced his unique cut fruit products.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them.

20.     The Edible brand and business grew enormously. Two years after opening his first store, Mr. Farid introduced Edible franchises. And only three years after launching the first franchise, *Entrepreneur Magazine* recognized Edible in the top 500 franchises in the United States.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them.

21.     By 2006, there were 500 Edible franchises, and by 2011 there were 1,000. By 2019, there were almost 1,200 Edible stores worldwide, with more than 1,100 stores located throughout the United States, including in the state of Illinois.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them.

22.     As a part of its growth, Edible has expanded its product offerings beyond beautifully designed fruit and chocolate arrangements to include products such as dipped and coated fruit, chocolates, baked goods, smoothies, popcorn, and assorted gifts (stuffed animals, mugs, balloons, candles, etc.).

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them.

23.     Edible's success has been continuously recognized by the business media. For example, Edible ranked 9th on the 2011 Forbes list of top "franchises to start"; was named one of

the "Top 100 Internet Retailers" by Internet Retailer magazine; was 38th on Entrepreneur

Magazine's 2017 Entrepreneur Franchise 500; and was ranked 3rd on Inc. Magazine's list of top

food and beverage companies. Most recently, the Franchise Times ranked Edible number 128 in

the list of the "Top 200 Franchises."

**Answer**: GTI is without information sufficient to admit or deny the allegations of this

paragraph and, accordingly, denies them.

24.     After over 20 years of substantial and uninterrupted use, combined with extensive

advertising and promotion, the EDIBLE brand is distinctive and well known to the public.

**Answer**: Denied.  The brand that Plaintiffs' have been attempting to build for over 20

years is "Edible Arrangements," not "Edible."  Plaintiffs' attempt to rebrand themselves as

"Edible" is a recent development, and the general public is likely entirely unaware of this

attempted rebranding. Further, "Edible" cannot be a trademark for edible products and, in

particular, cannabis-infused edibles.

25.     Edible's system-wide revenue is in the hundreds of millions of annually. Edible's

success is a direct result of its commitment to providing a consistently high-quality and

beautifully designed product and services that consumers recognize as originating from Edible,

as well as Edible's marketing and promotion of the EDIBLE marks and brand.

**Answer**: GTI denies that Plaintiffs provide "a consistently high-quality and beautifully

designed products and services" and that customers recognize the alleged "EDIBLE marks and

brand." GTI is without information sufficient to admit or deny the allegations of this paragraph

and, accordingly, denies them.

26.     Edible's franchisees share in the commitment to consistently deliver high-quality

confectionary and other products that are instantly recognizable as an Edible product offered

under the EDIBLE Marks and brand, and which are offered in brick and mortar stores and online through Edible's various domains including www.ediblearrangements.com and www.edible.com.

**Answer**: GTI denies that Plaintiff or its franchisees "deliver high-quality confectionary and other products" and that customers recognize any products or services to be part of alleged "EDIBLE Marks and brand." GTI is without information sufficient to admit or deny the remaining allegations of this paragraph and, accordingly, denies them.

27.    Any consumer misperception or confusion as to the affiliation of Edible or its EDIBLE branded products and services with competitors or their products and services will irreparably damage Edible's valuable brand and goodwill, as well as that of the franchisees, who devote significant personal resources to running their shops.

**Answer**: Denied.  On information and belief, no confusion exists between GTI's INCREDIBLES edibles and Plaintiffs' "Edible Arrangements" brand or even their new attempted "edible" brand.  On further information and belief, Plaintiffs have not actually used the mark "edible" in the cannabis industry, and consumers in the cannabis industry do not associate the term "edible" with Plaintiffs.

### Edible's Intellectual Property Rights

28.    Edible's business is predicated on the high quality of its fruit, confection, and other food and gift-related goods and services and the trademarks and service marks that designate those goods and services.

**Answer**: Denied.  At the time of this filing, a basic Google search for "Edible Arrangements Reviews" reveals that the alleged "high quality" of Plaintiffs' products are widely panned. Consumers complain regarding missed deliveries, poor customer service, the taste of the

fruit and chocolate, and the high price of the goods. Many of the Edible Arrangements locations in the Chicago area have a *three-star rating or less* on Yelp. The website *mashed.com* ran an article titled "You won't want to order Edible Arrangements after reading this" in July, 2020. Edible Arrangements has an average rating of *one star* on resellerratings.com, where over one hundred one-star reviews have bene posted by consumers. Edible Arrangements has an average rating of *1.5 stars* on trustpilot.com, where 75% of 114 reviews rate Edible Arrangements as "Bad."

29.     By marketing and promoting the "EDIBLE" brand identifiers aggressively in connection with its hugely popular products and services, Edible has created a stable of extremely well-known marks that the public uses to identify and distinguish Edible's goods and services in the marketplace.

**Answer**: Denied. To the extent consumers recognize any of Plaintiffs' brands or registered marks, they would recognize the "Edible Arrangements" brand. Consumers do not recognize Plaintiffs as being a source for all things "edible," especially in the cannabis industry, where Plaintiffs are unlicensed and have no trademark rights.

30.     Edible first obtained a United States Trademark and Service Mark Registration for EDIBLE ARRANGEMENTS® (Reg. No. 2,356,362) in Class 29 on the Principal Register on June 6, 2000 with a first use and first use in commerce date of October 1998. Edible has used that mark continuously and exclusively for over 20 years, long ago achieving incontestability pursuant to 15 U.S.C. § 1065.

**Answer**: GTI admits that USPTO records show that Plaintiffs registered the trademark described in this paragraph. GTI is without information sufficient to admit or deny the remaining allegations of this paragraph and, accordingly, denies them.

31.     Edible also owns United States Trademark Registration No. 4,319,940 for

EDIBLE® in Classes 29, 30, 32, and 35, having a date of first use of 1999. The United States

Patent and Trademark Office ("USPTO") registered the EDIBLE® mark on the Principal Register

in 2012 pursuant to 15 U.S.C. § 1052(f). The registration is now incontestable pursuant to 15

U.S.C. § 1065.

**Answer**: GTI admits that USPTO records show that Plaintiffs registered the trademark

described in this paragraph.  GTI denies Plaintiffs own any protectable rights in that trademark.

GTI is without information sufficient to admit or deny the remaining allegations of this

paragraph and, accordingly, denies them.

32.     Edible is also the owner of numerous other federal registrations on the Principal

Register for EDIBLE (stand-alone) and EDIBLE-formative marks in which the USPTO has

found that Edible acquired distinctiveness in the "EDIBLE" portion of the marks, including, but

not limited to, Registration No. 5,614,310 for EDIBLE; Registration No. 5,513,739 for EDIBLE

and Design; Registration Nos. 4,328,107, 3,844,160, and 2,934,715 for EDIBLE

ARRANGEMENTS; and Registration No. 5,286,720 for EDIBLE ARRANGEMENTS and

Design.

**Answer**: GTI admits that USPTO records show that Plaintiffs registered the trademark

registrations listed in this paragraph. GTI denies Plaintiffs own any protectable rights in these

trademarks. GTI is without information sufficient to admit or deny the remaining allegations of

this paragraph and, accordingly, denies them.

33.     The aforementioned Edible registrations (collectively, the "EDIBLE Marks") are

summarized along with their dates of application, registration, first use, and incontestability

status on the table immediately below:

| Mark/Type (an asterisk next to a mark indicates incontestability) | Application Date (F)/ Registration Date (R) | App. No./ Reg. No. | International Trademark Class/Date of First Use (1st U)/Date of First Use in Commerce (1st UC) |
|---|---|---|---|
| EDIBLE* [Trademark/Service Mark] | F: 04/10/2012 R: 04/16/2013 | RN: 4319940 SN: 85593869 | (Int'l Class: 29) 1st U: 01/01/1999 1st UIC: 01/01/1999 (Int'l Class: 30) 1st U: 01/01/1999 1st UIC: 01/01/1999 (Int'l Class: 32) 1st U: 04/01/2006 1st UIC: 04/01/2006 (Int'l Class: 35) 1st U: 01/01/1999 1st UIC: 01/01/1999 |
| EDIBLE [Trademark] | F: 11/17/2016 R: 11/27/2018 | RN: 5614310 SN: 87240682 | (Int'l Class: 29) 1st U: 00/00/2000 1st UIC: 00/00/2000 (Int'l Class: 30) 1st U: 00/00/2000 1st UIC: 00/00/2000 |
| EDIBLE and Design  [Trademark/Service Mark] | F: 12/19/2017 R: 07/10/2018 | RN: 5513739 SN: 87726591 | (Int'l Class: 29) 1st U: 11/00/2017 1st UIC: 11/00/2017 (Int'l Class: 30) 1st U: 11/00/2017 1st UIC: 11/00/2017 (Int'l Class: 35) 1st U: 11/00/2017 1st UIC: 11/00/2017 |

15

| Mark/Type (an asterisk next to a mark indicates incontestability) | Application Date (F)/ Registration Date (R) | App. No./ Reg. No. | International Trademark Class/Date of First Use (1st U)/Date of First Use in Commerce (1st UC) |
|---|---|---|---|
| EDIBLE ARRANGEMENTS*<br><br>[Trademark] | F: 09/07/2012<br>R: 04/30/2013 | RN: 4328107<br>SN: 85723499 | (Int'l Class: 21)<br>1st U: 01/01/2007<br>1st UIC: 01/01/2007<br><br>(Int'l Class: 28)<br>1st U: 01/01/2007<br>1st UIC: 01/01/2007 |
| EDIBLE ARRANGEMENTS*<br><br>[Trademark/Service Mark] | F: 10/29/2009<br>R: 09/07/2010 | RN: 3844160<br>SN: 77860061 | (Int'l Class: 29)<br>1st U: 10/00/1998<br>1st UIC: 10/00/1998<br><br>(Int'l Class: 30)<br>1st U: 10/30/1998<br>1st UIC: 10/30/1998<br><br>(Int'l Class: 32)<br>1st U: 05/12/2005<br>1st UIC: 05/12/2005<br><br>(Int'l Class: 35)<br>1st U: 10/31/1998<br>1st UIC: 10/31/1998 |
| EDIBLE ARRANGEMENTS*<br><br>[Trademark] | F: 05/13/2003<br>R: 03/22/2005 | RN: 2934715<br>SN: 78249281 | (Int'l Class: 31)<br>1st U: 10/31/1998<br>1st UIC: 10/31/1998 |

| Mark/Type (an asterisk next to a mark indicates incontestability) | Application Date (F)/ Registration Date (R) | App. No./ Reg. No. | International Trademark Class/Date of First Use (1st U)/Date of First Use in Commerce (1st UC) |
|---|---|---|---|
| EDIBLE ARRANGEMENTS and Design  [Trademark/Service Mark] | F: 04/21/2015 R: 09/12/2017 | RN: 5286720 SN: 86605003 | (Int'l Class: 29) 1st U: 01/00/2016 1st UIC: 01/00/2016 (Int'l Class: 30) 1st U: 01/00/2016 1st UIC: 01/00/2016 (Int'l Class: 32) 1st U: 01/00/2016 1st UIC: 01/00/2016 (Int'l Class: 35) 1st U: 01/00/2016 1st UIC: 01/00/2016 |

**Answer**: GTI admits that USPTO records show that Plaintiffs registered the trademarks listed above. GTI denies Plaintiffs own any protectable rights in the trademarks listed in Paragraph 33. GTI is without information sufficient to admit or deny the remaining allegations of this paragraph and, accordingly, denies them.

34. Each of the registrations for the EDIBLE Marks are enforceable, valid, unrevoked, and subsisting.

**Answer**: Denied. Plaintiffs do not have any valid rights to the term "Edible," used alone, in any industry, let alone the cannabis industry.

35. In addition, of the registrations pleaded in the table in paragraph 33 above, those that are highlighted with an asterisk have been in consistent use for five or more consecutive years since registration are "incontestable" under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore constitute conclusive evidence of (i) the registration of the marks; (ii) the

validity of the marks; (iii) Edible's ownership of the marks; and (iv) Edible's exclusive right to use the marks in commerce in connection with the identified services, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

**Answer**: Denied.

36.     Furthermore, an incontestable mark may not be challenged as merely descriptive. 15 U.S.C. §§ 1065, 1115(b).

**Answer**: This paragraph contains conclusions of law for which no response is required.

37.     Edible also owns nationwide common law rights to the EDIBLE Marks based on the continuous and extensive bona fide use of the marks by Edible in interstate commerce throughout the United States to promote Edible's goods and services over the past twenty years.

**Answer**: Denied.

38.     Edible has continuously used, advertised, and promoted the EDIBLE Marks throughout the United States and world for many years in connection with genuine Edible goods and services.

**Answer**: Denied.

39.     Over the last twenty years, Edible has spent millions of dollars and has expended significant effort in promoting genuine Edible goods and services under the EDIBLE Marks.

**Answer**: Denied.  While Plaintiffs have no doubt invested in their "Edible Arrangements" brand, Plaintiffs do not appear to have invested significantly in the mark "Edible" alone, and do not appear to have invested in the mark "Edible" in the cannabis industry.

40.     Edible actively enforces its rights in the EDIBLE Marks against third parties.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies them.

41.     The EDIBLE Marks serve as the banner of quality that identify and distinguish Edible's goods and services from those of others in the marketplace and indicate the source of Edible's products and services.

**Answer**: Denied.

42.     The EDIBLE Marks are widely recognized by the general consuming public as identifying Edible and its products and services.

**Answer**: Denied.  On information and belief, while the consuming public *might* recognize "Edible Arrangements," the consuming public does not associate the term "edible" with Plaintiffs.

43.     The USPTO has found that Edible has proven that EDIBLE has acquired secondary meaning pursuant to Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f).

**Answer**: Denied.  The USPTO's determinations on secondary meaning are based on the assumption that use over time leads to secondary meaning; the USPTO does not assess actual consumer recognition, and the USPTO's administrative proceedings are not evidence of secondary meaning.

44.     Edible's branding is widely suffused with references to and displays of these well-known marks.

**Answer**: Denied.

45.     The EDIBLE Marks are used to reinforce consumer perception that all the goods and services through Edible and its franchisees' stores emanate from Edible.

**Answer**: Denied.

46.     The cumulative effect of this comprehensive promotion of the EDIBLE Marks is that consumers—whether purchasers, shoppers, recipients, or even viewers of advertising or

refrigerated delivery vehicles—are constantly informed that the EDIBLE Marks designate the source of the Edible products and services that circulate regularly throughout United States commerce.

**Answer**: Denied.

47.     By virtue of this extensive usage in connection with so many highly-regarded products and services, the EDIBLE Marks have become widely known to the general consuming public of the United States, has acquired significant secondary meaning, and represent goodwill of enormous value to Edible.

**Answer**: GTI denies that Plaintiffs product and services are "highly-regarded" and that the alleged Edible Marks have "become widely known to the general consuming public of the United States, has acquired significant secondary meaning." GTI is without information sufficient to admit or deny the remaining allegations of this paragraph and, accordingly, denies them.

48.     In addition to the previously mentioned registrations, Edible is the owner of numerous pending U.S. trademark and service mark applications for EDIBLE and EDIBLE formative marks, including, but not limited to

    a.     Application Serial No. 87113430 for EDIBLE SIGNATURE CHOCOLATE (filed July 22, 2016);

    b.     Application Serial No. 87188299 for EDIBLE GOURMET (filed September 29, 2016) relating to fruit-based products, confections and gifts;

    c.     Application Serial No. 87726646 (filed December 19, 2017) for the EDIBLE and Logo Mark relating to, *inter alia*, cookies, bakery goods,

brownies, desserts, stationery, fruit-based snack foods, and on-line and

retail store services in the field of food gift products;

d.     Application Serial No. 87833917 for EDIBLE TREATS (filed March 14,

2018) relating to products including chocolates, confections, candy, fruit,

and baked goods; and

e.     Application Serial No. 88550549 for EDIBLE (filed July 30, 2019) relating

to products including gummy candies, mints, candy, confections, and

chocolate.

**Answer**: GTI admits that USPTO records show that Plaintiffs filed the trademark

applications listed in paragraph 48. GTI denies that Plaintiffs own any protectable rights in the

purported trademarks listed in paragraph 48. GTI is without information sufficient to admit or

deny the remaining allegations of this paragraph and, accordingly, denies them.

49.     Edible also owns United States Trademark Registration No. 5,950,393 for

INCREDIBLE EDIBLE in Class 29, with a filing date of October 9, 2015 (the "INCREDIBLE

EDIBLE Mark").

**Answer**: GTI admits that USPTO records show that Plaintiffs registered the trademark

listed in paragraph 49. GTI denies that Plaintiffs own any protectable rights in the trademark

listed in paragraph 49. GTI is without information sufficient to admit or deny the remaining

allegations of this paragraph and, accordingly, denies them.

50.     In addition to the INCREDIBLE EDIBLE Mark registration, Edible is the owner

of numerous pending U.S. trademark and service mark applications for INCREDIBLE

EDIBLE(S) and INCREDIBLE-formative marks, including, but not limited to:

a.   Application Serial No. 86782900 for INCREDIBLE (filed October 9, 2015) in Class 29; and

b.   Application Serial No. 86503512 for INCREDIBLE EDIBLES (filed January 14, 2015) in Class 29.

**Answer**: GTI admits that USPTO records show that Plaintiffs filed the trademark applications listed in paragraph 50. GTI denies that Plaintiffs own any protectable rights in the trademarks listed in paragraph 50. GTI is without information sufficient to admit or deny the remaining allegations of this paragraph and, accordingly, denies them.

51.   Edible believes and alleges that Defendants have infringed on Edible's trademarks, engaged in unfair competition, and committed deceptive trade practices for each of the marks asserted in this litigation against Defendants, namely, the EDIBLE Marks and INCREDIBLE EDIBLE Mark.

**Answer**: Denied.  On information and belief, Plaintiffs do not genuinely believe that GTI's INCREDIBLES brand, a play on the commonly-used term "edibles" in the cannabis industry, has confused even a single consumer, or has harmed Plaintiffs in any way.

### *Defendants and the INCREDIBLES Brand*

52.   On information and belief, Defendant MC Brands, LLC is an intellectual property holding company that purports to own the brand name INCREDIBLES, under which Defendants, in conjunction with various licensees and manufacturers, distribute cannabis products.

**Answer**: GTI denies that MC Brands, LLC manufactures or distributes cannabis products. Otherwise, admitted.

53.     On information and belief, Defendant Green Thumb Industries, Inc., a Chicago based national cannabis consumer packaged goods company and retailer, is Defendant MC Brands LLC's parent company.

**Answer**: GTI admits that Defendant Green Thumb Industries Inc. is Chicago-based and that Defendant MC Brands LLC is a wholly owned subsidiary. GTI denies the remaining allegations of this paragraph.

54.     According to the INCREDIBLES brand website <www.iloveincredibles.com>, Defendants offer chocolates, gummies, and other candy products that contain cannabis; namely, the psychoactive constituent tetrahydrocannabinol, commonly referred to as "THC."

**Answer**: GTI admits that it offers chocolates, gummies and other candy products that contain cannabis, which include tetrahydrocannabinol, commonly referred to as "THC" under its INCREDIBLES brand. GTI denies the remaining allegations of this paragraph.

55.     The Controlled Substances Act ("CSA") makes it unlawful under federal law to manufacture, distribute, dispense, or possess a controlled substance, of which cannabis is one.

**Answer**: This paragraph contains conclusions of law for which no response is required.

56.     Regardless of state law, federal law provides no exception to the above-referenced provisions for cannabis intended for "medical use."

**Answer**: This paragraph contains conclusions of law for which no response is required.

57.     In order to establish trademark priority rights, a mark must be used in lawful commerce.

**Answer**: This paragraph contains conclusions of law for which no response is required.

58.     At least because Defendants purport to use the INCREDIBLES name to identify cannabis products, Defendants have not made actual use in commerce of the INCREDIBLES

name to establish trademark ownership priority over Edible under the Lanham Act and has no trademark rights. Defendants' use of INCREDIBLES also began well after Edible's use of the EDIBLE and EDIBLE ARRANGEMENTS Marks.

**Answer**: This paragraph contains conclusions of law for which no response is required. However, to the extent the legal conclusion above is correct, then Plaintiffs *also* have no legal rights in the cannabis industry. GTI is without information sufficient to admit or deny whether Plaintiffs used "EDIBLE" as a mark prior to GTI's and its licensees' use of INCREDIBLES and, accordingly, denies those allegations.

59.     Defendants' use of the INCREDIBLES name is strikingly similar to Edible's EDIBLE Marks. Representative side-by-side images of the parties' stylized logo treatments are as follows:



**Answer**: Denied.  The logos above are not "strikingly similar," as the only similarity is the use of the word "edible," which has been in common use in the cannabis industry for decades.

60.     As shown above, Defendants' INCREDIBLES logo, in lower case with uniform spacing between the letters and a bold primary color to emphasize the "edible" component of the name, is confusingly similar to Edible's EDIBLE logo.

**Answer**: Denied.

61.     Even with respect to the EDIBLE ARRANGEMENTS Mark, the primary emphasis and strongest visual impression is the EDIBLE component, which Edible has, for over 20 years, styled in a significantly larger font than the ARRANGEMENTS component, contributing to a likelihood of confusion between the EDIBLE ARRANGEMENTS Mark and Defendants' INCREDIBLES name.

**Answer**: Denied.

62.     Defendants' INCREDIBLES name is also wholly inclusive of Edible's EDIBLE Mark and the primary component of the EDIBLE ARRANGEMENTS Mark, furthering the likelihood of confusion between them.

**Answer**: Denied.

63.     Defendants' INCREDIBLES name is also an immaterially rearranged/combined, nearly identical mark to Edible's INCREDIBLE EDIBLE Mark, including the INCREDIBLE EDIBLE Mark in its entirety, further creating a likelihood of confusion between the two.

**Answer**: Denied.

64.     To the extent Defendants' INCREDIBLES name can be said to include the "plural" of the EDIBLE and INCREDIBLE EDIBLE Marks, legally, the plural of a trademark is materially indistinguishable from the singular such that it does not reduce the likelihood of confusion between the parties' marks.

**Answer**: To the extent the allegations of this paragraph purport to state a legal conclusion, no response is required. To the extent a response is deemed to be required, denied.

65.     Defendants' goods sold in connection with the INCREDIBLES name are also strongly related to and overlapping Edible's goods sold in connection with the EDIBLE and INCREDIBLE EDIBLE Marks.

**Answer**: Denied.  Cannabis-infused edibles are not strongly related to fruit baskets.

66.     For example, Edible has used the EDIBLE and INCREDIBLE EDIBLE Marks to sell chocolate and fruit products, including its signature chocolate-dipped strawberries. Defendants use the INCREDIBLES name to sell chocolate and fruit products, including a "chocolatey strawberries" product, among other fruit-related products that reference green apples, peaches, and watermelons, cherries, etc., some of which are also regularly included in Edible's products.

**Answer**: Denied.  Cannabis-infused edibles are a distinct channel of trade and commerce and consumers do not confuse cannabis-infused edibles with ordinary confections.

67.     To the extent Defendants' products sold in connection with the INCREDIBLES name are cannabis-related, that fact does not negate the likelihood of confusion, including at least because cannabis-related products are within the zone of Edible's natural expansion, as evidenced by Edible's expansion in-fact to sell Cannabidiol ("CBD") products in EDIBLE retail locations.

**Answer**: To the extent the allegations of this paragraph purport to state a legal conclusion, no response is required. To the extent a response is deemed to be required, GTI denies the allegations of this paragraph. GTI further denies that Plaintiffs have any trademark

rights in association with CBD-based products, insofar as the Food and Drug Administration has not approved CBD for general human consumption.

68.     CBD is a non-psychoactive concentrated liquid extract of "hemp", which is any part or derivative of the Cannabis sativa L. plant containing less than 0.3 percent THC by weight. The 2018 Farm Bill federal legislation legalized hemp and removed its Drug Enforcement Administration ("DEA") Schedule I controlled substance designation.

**Answer**: The allegations of this paragraph state a legal conclusion, and no response is required.

**COUNT ONE**
**Infringement of the Federally Registered**
**Asserted EDIBLE Trademarks and Service Marks**
**(Pursuant to 15 U.S.C. § 1114(1)(a))**

70.     Edible re-alleges and incorporates the preceding paragraphs 1 to 69.

**Answer**: GTI incorporates by reference its responses to paragraphs 1 to 69 as if fully set forth herein.

71.     Edible owns each of the EDIBLE and INCREDIBLE EDIBLE Marks identified above in paragraphs 32 and 49 that are covered by registrations on the Principal Register of the U.S. Patent and Trademark Office and are entitled to protection.

**Answer**: GTI is without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

72.     Edible is the senior user of the EDIBLE and INCREDIBLE EDIBLE Marks as compared to Defendants' unapproved, federally illegal use of the INCREDIBLES name.

**Answer**: Denied.

73.     By virtue of Edible's federally registered EDIBLE and INCREDIBLE EDIBLE Marks, Edible enjoys constructive nationwide priority in those marks and is presumed to have

started using the marks as of their respective filing dates, which are set forth in paragraphs 32 and 49 above.

**Answer**: Denied.

74.     Because Edible owns a federal registration in each of the EDIBLE and INCREDIBLE EDIBLE Marks, Defendants are deemed to have knowledge of the registration and of the rights claimed in the registration, and because of this constructive notice, Defendants cannot claim that they adopted and/or have used the infringing INCREDIBLES name without knowledge of the EDIBLE and INCREDIBLE EDIBLE Marks.

**Answer**: Denied.

75.     Despite Edible's well-known prior rights in the EDIBLE Marks and use and registration of the INCREDIBLE EDIBLE Mark, Defendants have, without Edible's authorization or consent, used and continues to use in the United States and this judicial district, Edible's federally-registered EDIBLE and INCREDIBLE EDIBLE Marks, or reproductions, copies, and colorable imitations thereof, in connection with the sale, offering for sale, distribution, and/or advertising of Defendants' goods and services, including Defendants' use of the name INCREDIBLES in connection with the promotion and offer of confectionary fruit and chocolate goods or services that are closely-related to Edible's goods and within Edible's natural zone of related-goods expansion, in a manner that infringes upon the EDIBLE and INCREDIBLE EDIBLE Marks and is likely to cause confusion, mistake, and deception as to the source, affiliation, approval or sponsorship of the goods and services, leading the consuming public to believe that Defendants' goods and services, and the goods and services advertised and promoted by Defendants, are the goods and services of Edible, or are sourced or originate from, or are affiliated, approved, or sponsored by, or are in some way connected with Edible.

**Answer**: Denied. Given the steep barriers to entry in the cannabis industry, including the requirement for a licenses in order to operate, stringent regulatory environment, and unique tax regime, edibles are not within Plaintiff's reasonable zone of expansion.

76.     Defendants' actions constitute willful infringement of Edible's exclusive rights in the EDIBLE and INCREDIBLE EDIBLE Marks in violation of 15 U.S.C. § 1114.

**Answer**: Denied.

77.     Defendants' use of the EDIBLE and INCREDIBLE EDIBLE Marks, copies, reproductions, or colorable imitations thereof, has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Defendants' goods and services.

**Answer**: Denied.

78.     Edible has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' conduct is allowed to continue.

**Answer**: Denied.

79.     As a direct and proximate result of Defendants' previously alleged conduct, Edible and the public have suffered irreparable harm that is not remedied by money damages. Unless Defendants are permanently enjoined from further infringement of the EDIBLE and INCREDIBLE EDIBLE Marks, Edible will continue to be irreparably harmed.

**Answer**: Denied.

80.     As a result of Defendants' acts, Edible has sustained actual damages to its business, marks, goodwill, and reputation proximately resulting from Defendants' wrongful acts and is entitled to recover three times the amount of its actual damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1117.

**Answer**: Denied.

81.     In addition to Edible's actual damages, pursuant to 15 U.S.C. § 1117, Edible is also entitled to an award based on an accounting of Defendants' profits measured by Defendants' sales because Defendants' conduct was willful and deliberate, Defendants were unjustly enriched, and an award of Defendants' profits is necessary to deter Defendants' future conduct.

**Answer**: Denied.

82.     As this is an exceptional case, Defendants' acts have been knowing, intentional, wanton, and willful, and Edible is further entitled to enhanced damages and reasonable attorney's fees incurred in this action pursuant to 15 U.S.C. § 1117.

**Answer**: Denied.

83.     Pursuant to 15 U.S.C. § 1117, Edible is also entitled to its costs incurred in this action.

**Answer**: Denied.

## COUNT TWO
### Federal Unfair Competition and False Designation of Origin or Sponsorship
### (Pursuant to 15 U.S.C. § 1125(a))

84.     Edible re-alleges and incorporates the preceding paragraphs 1 to 83.

**Answer**: GTI incorporates by reference its responses to paragraphs 1 to 83 as if fully set forth herein.

85.     Edible is the owner of all rights and title to and has valid and protectable prior rights to the EDIBLE Marks.

**Answer**: Denied.

86.     Edible is the senior user of the EDIBLE and INCREDIBLE EDIBLE Marks as compared to Defendants' unapproved, federally illegal use of the INCREDIBLES name.

**Answer**: Denied.

87.     By virtue of Edible's federally registered EDIBLE and INCREDIBLE EDIBLE Marks, Edible enjoys constructive nationwide priority in those marks and is presumed to have started using the marks as of their respective filing dates, which are set forth in paragraphs 32 and 49 above.

**Answer**: Denied.

88.     Because Edible owns a federal registration in each of the EDIBLE and INCREDIBLE EDIBLE Marks, Defendants are deemed to have knowledge of the registration and of the rights claimed in the registration, and because of this constructive notice, Defendants cannot claim that they adopted and/or have used the infringing INCREDIBLES name without knowledge of the EDIBLE and INCREDIBLE EDIBLE Marks.

**Answer**: Denied.

89.     By its acts alleged previously, Defendants have engaged, and are engaged, in federal unfair competition, false designation of origin, and palming off to willfully misappropriate and trade off the goodwill associated with the EDIBLE and INCREDIBLE EDIBLE Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), causing irreparable injury to Edible and the public.

**Answer**: Denied.

90.     Defendants have knowingly used, and continues to use, in U.S. commerce the asserted EDIBLE and INCREDIBLE EDIBLE Marks, or counterfeits, reproductions, copies, or colorable imitations thereof, in connection with the confectionary goods that Defendants advertise, promote, and offer.

**Answer**: Denied.

91.     Defendants' unauthorized use of the EDIBLE and INCREDIBLE EDIBLE Marks as alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Edible and/or Defendants' goods and services and Edible's goods and services.

**Answer**: Denied.

92.     Further, Defendants' unauthorized use of the EDIBLE and INCREDIBLE EDIBLE Marks as alleged above is likely to cause such people to believe in error that Defendants' goods and services have been authorized, sponsored, approved, endorsed, or licenses by Edible or that Defendants are in some way affiliated with Edible.

**Answer**: Denied.

93.     Edible has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if Defendants' conduct is allowed to continue.

**Answer**: Denied.

94.     As a direct and proximate result of Defendants' conduct, Edible has suffered irreparable harm to the valuable EDIBLE and INCREDIBLE EDIBLE Marks. Unless Defendants are permanently restrained from further infringement of the EDIBLE and INCREDIBLE EDIBLE Marks, Edible will continue to be irreparably harmed.

**Answer**: Denied.

95.     As a result of Defendants' acts, Edible has sustained actual damages to its business, marks, goodwill, and reputation proximately resulting from Defendants' wrongful acts and is entitled to recover three times the amount of its actual damages in an amount to be proven at trial pursuant to 15 U.S.C. § 1117.

**Answer**: Denied.

96.     In addition to Edible's actual damages, pursuant to 15 U.S.C. § 1117, Edible is also entitled to an award based on an accounting of Defendants' profits measured by Defendants' sales because Defendants' conduct was willful and deliberate, Defendants were unjustly enriched, and an award of Defendants' profits is necessary to deter Defendants' future conduct.

**Answer**: Denied.

97.     As this is an exceptional case, Defendants' acts have been knowing, intentional, wanton, and willful, and Edible is further entitled to enhanced damages and reasonable attorney's fees incurred in this action pursuant to 15 U.S.C. § 1117.

**Answer**: Denied.

98.     Pursuant to 15 U.S.C. § 1117, Edible is also entitled to its costs incurred in this action.

**Answer**: Denied.

**COUNT THREE**
**Illinois Common Law Trademark and Service Mark Infringement**

99.     Edible realleges and incorporates the preceding paragraphs 1 to 98.

**Answer**: GTI incorporates by reference its responses to paragraphs 1 to 98 as if fully set forth herein.

100.     This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**Answer**: To the extent the allegations of this paragraph purport to state a legal conclusion, no response is required. To the extent a response is deemed required, GTI denies the remaining allegations of this paragraph.

101.     By its acts mentioned previously, Defendants have engaged, and are engaged, in common law trademark and service mark infringement of the EDIBLE and INCREDIBLE

EDIBLE Marks under Illinois law through Defendants' promotion, advertising, and marketing, and offer of overlapping confectionary goods.

**Answer**: Denied.

102.    Edible has suffered injury-in-fact and/or actual damages caused by Defendants' common law trademark infringement and service mark infringement.

**Answer**: Denied.

103.    Edible seeks Defendants' ill-gotten gains measured by the profits of Defendants' wrongdoing.

**Answer**: Denied.

104.    Edible also seeks reasonable attorney's fees and costs.

**Answer**: Denied.

**COUNT FOUR**
**Illinois Common Law Unfair Competition**

105.    Edible re-alleges and incorporates the preceding paragraphs 1 to 104.

**Answer**: GTI incorporates by reference its responses to paragraphs 1 to 104 as if fully set forth herein.

106.    This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**Answer**: To the extent the allegations of this paragraph purport to state a legal conclusion, no response is required. To the extent a response is deemed required, GTI denies the remaining allegations of this paragraph.

107.    By its acts aforesaid, Defendants have engaged, and are engaged, in common law unfair competition under Illinois law.

**Answer**: Denied.

**COUNT FIVE**
**Violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, *et seq.*)**

108.　　Edible re-alleges and incorporates the preceding paragraphs 1 to 107.

**Answer**: GTI incorporates by reference its responses to paragraphs 1 to 107 as if fully set forth herein.

109.　　This Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**Answer**: To the extent the allegations of this paragraph purport to state a legal conclusion, no response is required. To the extent a response is deemed required, GTI denies the remaining allegations of this paragraph.

110.　　The Illinois Uniform Deceptive Trade Practices Act 815 ILCS § 510, *et seq.* prohibits deceptive trade practices, which include passing off goods or services as those of another, causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; and engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding among the public.

**Answer**: To the extent the allegations of this paragraph purport to state a legal conclusion, no response is required. To the extent a response is deemed required, GTI denies the remaining allegations of this paragraph.

111.　　Defendants, by their acts alleged previously, have engaged, and are engaging in deceptive trade practice in the course of their business by causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or

35

association with or certification by Edible; and engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding in violation of the Illinois Uniform Deceptive Trade Practices Act.

**Answer**: Denied.

112.    The foregoing acts of Defendants constitute willful violations of the Illinois Uniform Deceptive Trade Practices Act.

**Answer**: Denied.

113.    Edible has been damaged and is likely to be damaged further by Defendants' deceptive trade practices, has no adequate remedy at law, will continue to suffer irreparable harm due to Defendants' activities, and Edible is therefore entitled to the grant of a permanent injunction against Defendants under the principles of equity and on terms that the Court considers reasonable.

**Answer**: Denied.

114.    Edible is entitled to its costs and a discretionary award of attorney's fees due to Defendants' willful engagement in trade practices knowing them to be deceptive.

**Answer**: Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the statutory fair use defense in Section 33(b)(3) of the Lanham Act, 15 U.S.C. § 1115(b)(3), because GTI only uses the word "edibles" "otherwise than as a mark" and in a manner "which is descriptive of and used fairly and in good faith to

describe only to describe the goods or services of" GTI.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of equitable estoppel based on Plaintiffs' actions, including years of knowing silence and inaction as to countless third parties using "edibles" in the same or similar manner as GTI, including in the cannabis industry, which is conduct that prejudiced GTI and upon which GTI relied to its detriment.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' unclean hands based on Plaintiffs' assertion of trademark rights in marks that are generic or merely descriptive without secondary meaning.

### SIXTH AFFIRMATIVE DEFENSE

GTI has acted in good faith at all times with respect to the allegations in the complaint and GTI's conduct has never been willful.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' purported "Edible Marks" are, and were as of the time of registration, generic for all or some of the goods for which they are registered, and not capable of serving as a source identifying function and not capable of functioning as a trademark.

### ADDITIONAL DEFENSES

GTI reserves the right to supplement or amend this Answer, including but not limited to the addition of further affirmative defenses, based upon further investigation and discovery in this action.

GTI denies all allegations in the Complaint not expressly admitted.

## PRAYER FOR RELIEF

WHEREFORE, GTI respectfully requests that this Court enter judgment in its favor:

A.     Dismissing all claims asserted against GTI in the Complaint with prejudice;

B.     Requiring Plaintiffs to pay the costs of this action and, to the extent authorized by law, to reimburse GTI for its attorneys' fees and expenses of litigation; and

C.     Granting GTI such other and further relief as this Court deems just and proper.

## <u>COUNTERCLAIMS</u>

Pursuant to Federal Rule of Civil Procedure 13, Defendants/Counterclaim-Plaintiffs MC Brands, LLC and Green Thumb Industries Inc. (collectively, "GTI") assert the following counterclaims against Plaintiffs/Counterclaim Defendants Edible IP, LLC and Edible Arrangements, LLC (collectively, "Edible Arrangements").

1.     This is an action for (a) declaratory judgment under the Declaratory Judgment Act 28 U.S.C. § 2201 et seq., to resolve an actual case or controversy between the parties as to the validity of Edible Arrangements' asserted trademark rights in the purported "Edible Marks," as described in Edible Arrangements' Complaint, and GTI's purported infringement of those rights, including GTI's statutory fair use and other defenses, (b) an injunction compelling the U.S. Patent and Trademark Office to cancel U.S. Trademark Registration Nos. 4,319,940; 5,614,310; and 5,513,739; (c) an injunction compelling the U.S. Patent and Trademark Office to refuse U.S. Trademark Application Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, and (d) state trademark infringement and unfair competition.

## THE PARTIES

2.       Counterclaim-Plaintiff MC Brands, LLC is a Colorado limited liability company with its principal place of business in the state of Colorado and offices located at 1150 W. Custer Place, Denver, CO 80223.

3.       Counterclaim-Plaintiff Green Thumb Industries Inc. is a British Colombia corporation with a principal place of business in the state of Illinois and offices located at 325 W Huron St #700, Chicago, IL 60654.

4.       Counterclaim-Defendant Edible IP, LLC is a Connecticut limited liability company with its principal place of business in the state of Georgia at 980 Hammond Drive, Atlanta, GA 30328. Edible IP, LLC's member is Edible Brands, LLC, a Delaware limited liability company.

5.       Counterclaim-Defendant Edible Arrangements, LLC is a Delaware limited liability company with its principal place of business at 980 Hammond Drive, Atlanta, GA 30328.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

7.       On information and belief, this Court has personal jurisdiction over Edible Arrangements because Edible Arrangements regularly conducts business in this District, including conducting business with its numerous franchisees, and otherwise has made or established contacts within this District sufficient to permit the exercise of personal jurisdiction. Moreover, Edible Arrangements has consented to personal jurisdiction by virtue of the filing of its Complaint.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to GTI's claims occurred in this District, and/or 28 U.S.C. § 1391(b)(3) because Counterclaim-Defendants are subject to this Court's personal jurisdiction with respect to such action.

## FACTUAL BACKGROUND

### "Edible" or "Edibles" Are Recognized Terms In the Cannabis and CBD Industry and Marketplace

9.      On information and belief, Edible Arrangements started selling fruit baskets in 1998 under the name Edible Arrangements. In 2000, Edible Arrangements obtained its first U.S. Trademark Registration for "Edible Arrangements" for its fruit basket arrangements. Over the next ten plus years, Edible Arrangements used the Edible Arrangements mark *only* in connection with fresh fruit products. On information and belief, Edible Arrangements has never made significant use of the term "Edible" as a trademark separated from the term "Arrangements." On further information and belief, consumers still recognize "Edible Arrangements" as "Edible Arrangements," despite its recent attempts to rebrand itself as "Edible." On further information and belief, consumers associate "Edible Arrangements" primarily with fruit baskets.

10.     The cannabis industry has used the terms "edible" and "edibles" as *the* generic term for cannabis-infused baked goods, candy, and snacks for *decades*. The definition of "edible" includes "a food or drink product that is infused with marijuana and ingested as an alternative to smoking or vaping the drug." With the ongoing move towards legalization across the United States, sellers of cannabis- or CBD-infused products have consistently referred to these products as "edibles," and "edibles" is considered to be a specific market segment of the cannabis industry.

11.     An April 20, 2020 Los Angeles Times article entitled "The best edibles for quarantine, according to SoCal dispensaries" makes common, generic use of the term "edibles" in both the title and within the text of the articles to refer to cannabis-infused food and beverage items.[1]

12.     A July 13, 2020 New York Times article entitled "You Know What Else Has Sold Well During the Pandemic? Weed Edibles" makes common, generic use of the term "edibles" throughout the article, describing the popularity of edibles during the pandemic.[2]

13.     Most significantly, the term "edibles" is commonly used by third parties as a generic term for cannabis or CBD-infused food products. For example, Kiva Confections, a California based cannabis company uses the term "edibles" as a category for its cannabis-infused food products.[3]



---

[1] https://www.latimes.com/lifestyle/story/2020-04-20/cannabis-weed-edible-options-420-home-coronavirus
[2] https://www.nytimes.com/2020/07/13/style/weed-edibles-pandemic.html
[3] https://www.kivaconfections.com/

14.     Using "edibles" generically, Coda Signature identifies its various cannabis-infused chocolate and gummy products under the category "edibles."[4]



15.     Cheeba Chews, a company that specializes cannabis-infused taffy, identifies its products as "edibles"[5]



---

[4] https://codasignature.com/coda-signature-edibles/#
[5] https://hempcheebachews.com/

42

16.     The musician Willie Nelson sells various cannabis products under the brand "Willie's Reserve" and identifies his cannabis-infused food products under the category "edibles."[6]



17.     Leafly, the largest cannabis website in the world for rating, reviewing and selling various cannabis products, uses the term "edibles" as a category of product comprised of cannabis and CBD-infused food products.[7]



---

[6] https://williesreserve.com/products?category=Ediblesc
[7] https://www.leafly.com/products/edibles

43

18.     Weedmaps, a tech company in the cannabis industry breaks its products into eight general categories of goods, including "edibles" for cannabis and CBD-infused food items.[8]



19.     Even regulatory authorities, such as the California Department of Public Health, use "edibles" generically as a category of products.

## LABELING REQUIREMENTS
### MANUFACTURED CANNABIS PRODUCTS

Cannabis products must be properly labeled to ensure consumers are informed about what they are purchasing and to prevent unintended use. These guidelines apply to manufactured cannabis.

**LABELING PLACEMENT**
**Where does the required labeling go?**
Most of the required labeling must be placed on the outer layer of packaging. The outer labeling requirements are divided into two categories, based on the part of the package where it belongs.
- **Primary Panel** – the part of the label most likely to be displayed to the consumer at retail; typically the front or top of the package
- **Informational Panel** – any other part of the label that is not the primary panel

**If the product has multiple layers of packaging**, you must also include basic labeling on the inner container that holds the cannabis product:
- Inhaled cannabis products (vape cartridges, shatter, wax, etc.) – must include the universal symbol
- Non-inhaled cannabis products (edibles, tinctures, topicals, etc.) – must include the product identity, universal symbol and net weight or volume. Edible products must also include the words "Cannabis-Infused."

---

[8] https://weedmaps.com/products

20.     As shown above in just a few select examples, the cannabis industry universally uses the term "edibles" to describe cannabis and CBD-infused foods. This is powerful evidence that consumers know and understand what "edibles" are, and that consumers would never confuse the descriptive use of the term "edibles" with Edible Arrangements or cannabis-infused edibles with fruit baskets.

21.     In fact, the term "edibles" is *so descriptive* that companies in the cannabis industry routinely use the term to refer to a category of products in their 10-K filings. (10-K for Cannabis Sativa, Inc., Ex. A, ("Kush is engaged in the research, development and licensing of specialized natural cannabis products, including cannabis formulas, edibles, topicals, strains, recipes and delivery systems;" "Kush believes that unlike the other edibles of which it is aware that take an hour or more to take effect, its lozenges will take effect in five to 15 minutes."); 10-K for Kaya Holdings, Inc., Ex. B ("our current medical marijuana products available to patients at the flagship Portland facility feature…various marijuana infused tinctures and edibles including "Kaya Candies", "Kaya Caramels" and an assortment of cookies and cakes for patients who do not smoke."); 10-K for Bespoke Extracts, Inc., Ex. C ("The Company is now focused on bringing to market a proprietary line of premium, quality, all natural CBD products in the forms of tinctures, capsules, drops and edibles for the nutraceutical and veterinary markets."); 10-K for Cannabis Medical Solutions, Inc., Ex. D ("Cannabis Medical Solutions will seek to capitalize on this presently untapped and much needed solution, while managing and leveraging its' merchant relationships with medical dispensaries and wellness centers as a vertical pipeline and distribution channel for edibles and nutraceutical product lines."); 10-K for Cannapharmarx, Inc., Ex. E ("The sale of edibles containing cannabis and cannabis concentrates was not initially permitted, however, such products are expected to be legalized by the fall of 2019.").)

**Plaintiffs are Attempting to Seize a Generic Term**

22.     Through its litigation against GTI, Edible Arrangements is seeking a windfall; Edible Arrangements wants the Court to declare that Edible Arrangements' *fruit basket business* somehow gives Edible Arrangements rights in the *cannabis industry*.

23.     On information and belief, Edible Arrangements' attempt to rebrand itself as "edible" is part of a concerted effort to lock up the use of the word "edible" in the cannabis industry, even though Edible Arrangements knows the term "edible" is generic and has been in use in the cannabis industry for decades.

24.     Edible Arrangements has no rights in the term "edible" in the cannabis industry. It has not used the term "edible" or "edibles" in the cannabis industry in interstate commerce, and consumers in the cannabis industry do not associate "edibles" with Edible Arrangements. In fact, Edible Arrangements presently cannot participate in the cannabis industry at all, because it is not licensed by the proper regulatory authorities to do so. Nor can it claim trademark rights in, or that its "reasonable scope of expansion covers," CBD-infused edibles, because the FDA refuses to approve such products generally.

**The Parties Have Co-Existed For Ten Years**

25.     The parties have coexisted under the trademarks at issue in this case for 10 years, since 2010.

26.     In 2010, GTI's predecessor-in-interest developed a method to create edibles with consistent experiences for consumers, which it began selling under the trademark "INCREDIBLES."

27.     Since 2010, GTI has been selling edibles under the INCREDIBLES mark in Colorado and has grown to be one of the premier edible brands in the United States.

46

28.     During that time, GTI has expanded the geographic reach of its INCREDIBLES branded edibles from Colorado to many other jurisdictions throughout the United States, including Illinois, Ohio, Nevada and Massachusetts.

29.     GTI's edibles have received significant recognition and acclaim from the industry and media, including:

- 2015 "THC Championship" – Best Tested Edible

- 2015 "High Times Business Summit" – Best Edible

- 2015 "High Times Cannabis Cup" – Best Edible

- 2015 "Cannabis Business Awards" – Best Edible

- 2016 "GQ Magazine" – Top 50 Products

- 2018 – "BudFest" – 2nd Place, Best THC Edible

30.     GTI has promoted its INCREDIBLES products as "edibles" for many years in its website[9], social media accounts and on product packaging:



---

[9] https://iloveincredibles.com/edibles-edi-fication/



31.     To emphasize its groundbreaking method to create a consistent and homogenous edibles experience, GTI's predecessor-in-interest began using the tagline "the credible edible" in connection with its goods.

32.     GTI's INCREDIBLES edibles feature cannabis- and CBD-infused chocolate bars, gummy candies and mints.

33.     GTI's INCREDIBLES edibles have become well-known both within the states that it operates and outside, and its expansion into new states has been met with significant consumer enthusiasm.

34.     The INCREDIBLES Mark serves as a unique identifier for GTI's premium edibles.

35.     GTI has invested significantly in advertising and marketing to build the fame, reputation and goodwill of its INCREDIBLES brand. GTI advertises through a variety of media

and also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

36. GTI's INCREDIBLES mark is distinctive of the source or origin of GTI's edibles.

37. Prior to September of 2019, Edible Arrangements had not objected to GTI's use or registration of the INCREDIBLES mark.

38. Edible Arrangements has not asserted, nor is GTI aware of, any instances of actual confusion arising out of the parties' coexisting uses of their respective marks during the aforementioned 10 years.

39. Because of the 10 years of coexistence under the respective "edibles" and "incredibles" marks, there is no likelihood of confusion.

## COUNT I
### (DECLARATORY JUDGMENT, 28 U.S.C. §§ 2201-2202, RESPECTING VALIDITY AND INFRINGEMENT)

40. GTI realleges the material fact allegations in the preceding paragraphs as if fully stated herein.

41. Edible Arrangements has alleged in this action that it owns protectable rights in the Edible Marks and the Edible Applications, namely, U.S. Trademark App. Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573 and that GTI has infringed those rights.

42. GTI denies that it has infringed or that its use of the term "edibles" or "incredibles" will ever infringe or in any way violate Edible Arrangement's rights.

43. The Edible Marks are not protectable in whole or in part, because they consist of a generic term or phrase.

44.     Certain of the Edible Marks are not protectable in whole or in part, because they consist of a merely descriptive term or phrase that has not acquired distinctiveness.

45.     The GTI's "incredibles" marks have coexisted with Edible Arrangements purported Edible Marks for 10 years.

46.     As they are used or intended to be used in the actual marketplace, no likelihood of confusion exists between GTI's use of "edibles" or "incredibles" and any of Edible Arrangements' purported Edible Marks.

47.     GTI's use of "edibles" constitutes descriptive fair use protected by the Lanham Act.

48.     An actual, immediate, and justiciable controversy between the parties exists over whether Edible Arrangements has any protectable rights in the Edible Marks in connection with CBD and cannabis related goods, and if so, whether GTI is infringing or otherwise violating those rights.

49.     GTI has and will continue to be damaged by the persistent uncertainty created by Edible Arrangement's unsubstantiated claims with respect to GTI's legitimate use of the term "edibles" and its "incredibles" mark.

50.     Accordingly, GTI is entitled to a declaration by this Court that (a) Edible Arrangements does not have any protectable rights in the Edible Marks or Edible Applications in connection with CBD and cannabis related goods; and (b) GTI's use of the term "edibles" and "incredibles" does not infringe or otherwise violate Edible Arrangements' purported rights.


**COUNT II**
**ORDER COMPELLING THE U.S. PATENT AND TRADEMARK OFFICE TO CANCEL U.S.**
**TRADEMARK REGISTRATIONS FOR GENERICNESS**

51.     GTI realleges the material fact allegations in the preceding paragraphs as if fully

stated herein.

52.     U.S. Trademark Registration No. 4,319,940 for the putative word mark EDIBLE is invalid and unenforceable because now and/or at the time of registration, the term "edible" is and was generic, in whole or in part, as applied to the services recited in Registration No. 4,319,940 and therefore was not protectable as a trademark at the time of registration.

53.     U.S. Trademark Registration No. 5,614,310 for the putative word mark EDIBLE is invalid and unenforceable because now and/or at the time of registration, the term "edible" is and was generic, in whole or in part, as applied to the services recited in Registration No. 5,614,310 and therefore was not protectable as a trademark at the time of registration.

54.     U.S. Trademark Registration No. 5,513,739 for the putative mark EDIBLE (and Design) is invalid and unenforceable because now and/or at the time of registration, the term "edible" is and was generic, in whole or in part, as applied to the services recited in Registration No. 5,513,739 and therefore was not protectable as a trademark at the time of registration.

55.     GTI has been and continues to be injured by the existence of U.S. Trademark Nos. 4,319,940; 5,614,310; and 5,513,739, and Edible Arrangements' claim of exclusive rights, as set forth in its Complaint, in the "Edible Marks."

56.     Because Edible Arrangements is not entitled to maintain any rights to the Edible Marks, including those rights accompanying a federal registration, the Court should issue appropriate orders pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to cancel U.S. Trademark Nos. 4,319,940; 5,614,310; and 5,513,739.

### COUNT III
#### ORDER COMPELLING THE U.S. PATENT AND TRADEMARK OFFICE TO REFUSE U.S. TRADEMARK APPLICATIONS FOR GENERICNESS

57.     U.S. Trademark Application No. 88/550,549 for the mark EDIBLE is

unregistrable and unenforceable because the phrase "edible" is generic, as applied to the goods recited in App. No. 88/550,549 and is therefore not protectable as a trademark.

58.     U.S. Trademark Application No. 88/550,564 for the mark EDIBLE is unregistrable and unenforceable because the phrase "edible" is generic, as applied to the services recited in App. No. 88/550,564 and is therefore not protectable as a trademark.

59.     U.S. Trademark Application No. 88/550,501 for the mark EDIBLE is unregistrable and unenforceable because the phrase "edible" is generic, as applied to the goods recited in App. No. 88/550,501 and is therefore not protectable as a trademark.

60.     U.S. Trademark Application No. 88/550,565 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the goods recited in App. No. 88/550,565 and is therefore not protectable as a trademark.

61.     U.S. Trademark Application No. 88/550,569 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the goods recited in App. No. 88/550,569 and is therefore not protectable as a trademark.

62.     U.S. Trademark Application No. 88/550,579 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the services recited in App. No. 88/550,579 and is therefore not protectable as a trademark.

63.     U.S. Trademark Application No. 88/550,573 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the goods recited in App. No. 88/550,573 and is therefore not protectable as a trademark.

64.     GTI has been injured by the existence of U.S. Trademark App. Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573, and Edible Arrangements' claim of exclusive rights, as set forth in its Complaint in the Edible Marks.

65.     Because Edible Arrangements is not entitled to maintain any of the rights to the Edible Marks and Edible Applications, including those rights accompanying a federal registration, the Court should issue appropriate orders pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to refuse the Edible Applications, U.S. Trademark App. Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573.

## PRAYER FOR RELIEF

Wherefore, GTI prays for the following relief:

A.     Entry of an order adjudging and declaring that

    1.     GTI's use of the terms "edibles" and "incredibles" does not infringe any Edible Arrangements marks or violate any of Edible Arrangements purported rights; and

    2.     Edible Arrangements' Edible Marks are not valid or protectable trademarks;

B.     Entry of an order directing the Director of the USPTO to cancel U.S. Trademark Reg. Nos. 4,319,940; 5,614,310; and 5,513,739;

C.     Entry of an order directing the Director of the USPTO to refuse U.S. Trademark App. Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573;

D.     That this Court award reasonable attorney fees, taxable costs and such other and further relief to GTI as deemed just and lawful; and

E.     Such other further relief to which GTI may be entitled.

This 31st day of December 2020.

Respectfully submitted,

**/s/ Cameron Nelson**

Cameron Nelson (ARDC #6275585)
Eric J. Maiers (ARDC #6286775)
Michael R. Friedman (ARDC #6312846)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-6590
nelsonc@gtlaw.com

*Attorneys for Green Thumb Industries Inc. and*
*MC Brands, LLC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2020, I electronically transmitted the foregoing MC BRANDS, LLC AND GREEN THUMB INDUSTRIES INC.'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT to the Clerk's Office using the CM/ECF System for filing and to the following CM/ECF registrants.

Robert E. Browne, Jr.
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
Tel: 312.759.1920
robert.browne@troutman.com

John M. Bowler
Lindsay M. Henner (*pro hac vice* to be filed)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
Tel: 404.885.3000
john.bowler@troutman.com
lindsay.henner@troutman.com

*Attorneys for Plaintiffs Edible IP, LLC and*
*Edible Arrangements LLC*

/s/ Cameron Nelson
Cameron M. Nelson