**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EDIBLE IP, LLC and EDIBLE ARRANGEMENTS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MC BRANDS, LLC and GREEN THUMB INDUSTRIES INC., <br><br> Defendants. | CIVIL ACTION <br><br> NO: 1:20-cv-05840 |

## PLAINTIFFS' ANSWER TO DEFENDANTS' COUNTERCLAIMS

Plaintiffs and counterclaim defendants Edible IP, LLC and Edible Arrangements, LLC ("Edible"), submit their Answer to the Counterclaims of Defendants/Counterclaim-Plaintiffs MC Brands, LLC and Green Thumb Industries Inc. (collectively, "Defendants").

1.       This is an action for (a) declaratory judgment under the Declaratory Judgment Act 28 U.S.C. § 2201 et seq., to resolve an actual case or controversy between the parties as to the validity of Edible Arrangements' asserted trademark rights in the purported "Edible Marks," as described in Edible Arrangements' Complaint, and GTI's purported infringement of those rights, including GTI's statutory fair use and other defenses, (b) an injunction compelling the U.S. Patent and Trademark Office to cancel U.S. Trademark Registration Nos. 4,319,940; 5,614,310; and 5,513,739; (c) an injunction compelling the U.S. Patent and Trademark Office to refuse U.S. Trademark Application Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, and (d) state trademark infringement and unfair competition.

**Answer:** Edible admits that Defendants purport to state a counterclaim for declaratory judgment regarding validity and infringement and injunctions compelling cancellation of various Edible trademark registrations and applications. Edible denies that Defendants have stated a counterclaim for "(d) state trademark infringement and unfair competition" which is not a count recited in Defendants' responsive pleading. Edible denies that Defendants are entitled to declaratory or any other relief requested in Defendants' counterclaims.

2.     Counterclaim-Plaintiff MC Brands, LLC is a Colorado limited liability company with its principal place of business in the state of Colorado and offices located at 1150 W. Custer Place, Denver, CO 80223.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2.

3.     Counterclaim-Plaintiff Green Thumb Industries Inc. is a British Colombia corporation with a principal place of business in the state of Illinois and offices located at 325 W Huron St #700, Chicago, IL 60654.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3.

4.     Counterclaim-Defendant Edible IP, LLC is a Connecticut limited liability company with its principal place of business in the state of Georgia at 980 Hammond Drive, Atlanta, GA 30328. Edible IP, LLC's member is Edible Brands, LLC, a Delaware limited liability company.

**Answer:** Admitted.

5.     Counterclaim-Defendant Edible Arrangements, LLC is a Delaware limited liability company with its principal place of business at 980 Hammond Drive, Atlanta, GA 30328.

**Answer:** Admitted.

2

6.    This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

**Answer:** Admitted, except as to Defendants' Counterclaim Count III for cancellation of various of Edible's trademark registrations.  Defendants purport that the Court may grant the requested relief pursuant to 15 U.S.C. § 1119, which on its face and by its express terms grants power to district courts over trademark *registrations* but not applications.

7.    On information and belief, this Court has personal jurisdiction over Edible Arrangements because Edible Arrangements regularly conducts business in this District, including conducting business with its numerous franchisees, and otherwise has made or established contacts within this District sufficient to permit the exercise of personal jurisdiction. Moreover, Edible Arrangements has consented to personal jurisdiction by virtue of the filing of its Complaint.

**Answer:** Admitted.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to GTI's claims occurred in this District, and/or 28 U.S.C. § 1391(b)(3) because Counterclaim-Defendants are subject to this Court's personal jurisdiction with respect to such action.

**Answer:** Admitted.

9.    On information and belief, Edible Arrangements started selling fruit baskets in 1998 under the name Edible Arrangements. In 2000, Edible Arrangements obtained its first U.S. Trademark Registration for "Edible Arrangements" for its fruit basket arrangements. Over the next ten plus years, Edible Arrangements used the Edible Arrangements mark only in connection with fresh fruit products. On information and belief, Edible Arrangements has never made significant use of the term "Edible" as a trademark separated from the term "Arrangements." On further

3

information and belief, consumers still recognize "Edible Arrangements" as "Edible Arrangements," despite its recent attempts to rebrand itself as "Edible." On further information and belief, consumers associate "Edible Arrangements" primarily with fruit baskets.

**Answer:** Edible admits that Edible Arrangements began selling fruit arrangement products in 1999, and that Edible registered its first EDIBLE ARRANGEMENTS trademark with the United States Patent and Trademark Office in 2000. Edible denies the remaining allegations in paragraph 9.

10. The cannabis industry has used the terms "edible" and "edibles" as the generic term for cannabis-infused baked goods, candy, and snacks for decades. The definition of "edible" includes "a food or drink product that is infused with marijuana and ingested as an alternative to smoking or vaping the drug." With the ongoing move towards legalization across the United States, sellers of cannabis- or CBD-infused products have consistently referred to these products as "edibles," and "edibles" is considered to be a specific market segment of the cannabis industry.

**Answer:** Denied.

11. An April 20, 2020 Los Angeles Times article entitled "The best edibles for quarantine, according to SoCal dispensaries" makes common, generic use of the term "edibles" in both the title and within the text of the articles to refer to cannabis-infused food and beverage items.[1]

**Answer:** Edible admits only that Defendants have included an unauthenticated link to an April 20, 2020 Los Angeles Times article that appears to bear the title "The best edibles for quarantine, according to SoCal dispensaries". Edible denies the relevance of the referenced use of

---

[1] https://www.latimes.com/lifestyle/story/2020-04-20/cannabis-weed-edible-options-420-home-coronavirus

"edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 11.

12.     A July 13, 2020 New York Times article entitled "You Know What Else Has Sold Well During the Pandemic? Weed Edibles" makes common, generic use of the term "edibles" throughout the article, describing the popularity of edibles during the pandemic.[2]

**Answer:** Edible admits only that Defendants have included an unauthenticated link to a July 13, 2020 New York Times article that appears to be entitled "You Know What Else Has Sold Well During the Pandemic? Weed Edibles".  Edible denies the relevance of the referenced use of "edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 12.

13.     Most significantly, the term "edibles" is commonly used by third parties as a generic term for cannabis or CBD-infused food products. For example, Kiva Confections, a California based cannabis company uses the term "edibles" as a category for its cannabis-infused food products.[3]

**Answer:**  Edible admits only that Defendants have included an unauthenticated link to https://www.kivaconfections.com/ and a partial screenshot thereof.  Edible denies the relevance of the referenced use of "edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 13.

14.     Using "edibles" generically, Coda Signature identifies its various cannabis-infused chocolate and gummy products under the category "edibles."[4]

---

[2] https://www.nytimes.com/2020/07/13/style/weed-edibles-pandemic.html
[3] https://www.kivaconfections.com/
[4] https://codasignature.com/coda-signature-edibles/#

5



**Answer:** Edible admits only that Defendants have included an unauthenticated link to https://codasignature.com/coda-signature-edibles/ and a partial screenshot thereof. Edible denies the relevance of the referenced use of "edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 14.

15. Cheeba Chews, a company that specializes cannabis-infused taffy, identifies its products as "edibles"[5]



---

[5] https://hempcheebachews.com/

112863166v1

**Answer:**  Edible admits only that Defendants have included an unauthenticated link to https://hempcheebachews.com/ and a partial screenshot thereof.  Edible denies the relevance of the referenced use of "edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 15.

16.    The musician Willie Nelson sells various cannabis products under the brand "Willie's Reserve" and identifies his cannabis-infused food products under the category "edibles."[6]



**Answer:**  Edible admits only that Defendants have included an unauthenticated link to https://williesreserve.com/products?category=Ediblesc and a partial screenshot thereof.  Edible denies the relevance of the referenced use of "edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 16.

---

[6] https://williesreserve.com/products?category=Ediblesc

17.     Leafly, the largest cannabis website in the world for rating, reviewing and selling various cannabis products, uses the term "edibles" as a category of product comprised of cannabis and CBD-infused food products.[7]



**Answer:**  Edible admits only that Defendants have included an unauthenticated link to https://www.leafly.com/products/edibles and a partial screenshot thereof.  Edible denies the relevance of the referenced use of "edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 17.

18.     Weedmaps, a tech company in the cannabis industry breaks its products into eight general categories of goods, including "edibles" for cannabis and CBD-infused food items.[8]

---

[7] https://www.leafly.com/products/edibles
[8] https://weedmaps.com/products



**Answer:** Edible admits only that Defendants have included an unauthenticated link to https://weedmaps.com/products and a partial screenshot thereof. Edible denies the relevance of the referenced use of "edibles" to Defendants' specific infringing use of the brand INCREDIBLES or Edible's well-established trademark rights and denies the remaining allegations in paragraph 18.

19.     Even regulatory authorities, such as the California Department of Public Health, use "edibles" generically as a category of products.

## LABELING REQUIREMENTS
### MANUFACTURED CANNABIS PRODUCTS

CDPH

Cannabis products must be properly labeled to ensure consumers are informed about what they are purchasing and to prevent unintended use. These guidelines apply to manufactured cannabis.

**LABELING PLACEMENT**
Where does the required labeling go?
Most of the required labeling must be placed on the outer layer of packaging. The outer labeling requirements are divided into two categories, based on the part of the package where it belongs.
- **Primary Panel** – the part of the label most likely to be displayed to the consumer at retail; typically the front or top of the package
- **Informational Panel** – any other part of the label that is not the primary panel

**If the product has multiple layers of packaging**, you must also include basic labeling on the inner container that holds the cannabis product:
- Inhaled cannabis products (vape cartridges, shatter, wax, etc.) – must include the universal symbol
- Non-inhaled cannabis products (edibles, tinctures, topicals, etc.) – must include the product identity, universal symbol and net weight or volume. Edible products must also include the words "Cannabis-Infused."

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19.

9

20.     As shown above in just a few select examples, the cannabis industry universally uses the term "edibles" to describe cannabis and CBD-infused foods. This is powerful evidence that consumers know and understand what "edibles" are, and that consumers would never confuse the descriptive use of the term "edibles" with Edible Arrangements or cannabis-infused edibles with fruit baskets.

**Answer:** Denied.

21.     In fact, the term "edibles" is *so descriptive* that companies in the cannabis industry routinely use the term to refer to a category of products in their 10-K filings. (10-K for Cannabis Sativa, Inc., Ex. A, ("Kush is engaged in the research, development and licensing of specialized natural cannabis products, including cannabis formulas, edibles, topicals, strains, recipes and delivery systems;" "Kush believes that unlike the other edibles of which it is aware that take an hour or more to take effect, its lozenges will take effect in five to 15 minutes."); 10¬K for Kaya Holdings, Inc., Ex. B ("our current medical marijuana products available to patients at the flagship Portland facility feature...various marijuana infused tinctures and edibles including "Kaya Candies", "Kaya Caramels" and an assortment of cookies and cakes for patients who do not smoke."); 10-K for Bespoke Extracts, Inc., Ex. C ("The Company is now focused on bringing to market a proprietary line of premium, quality, all natural CBD products in the forms of tinctures, capsules, drops and edibles for the nutraceutical and veterinary markets."); 10-K for Cannabis Medical Solutions, Inc., Ex. D ("Cannabis Medical Solutions will seek to capitalize on this presently untapped and much needed solution, while managing and leveraging its' merchant relationships with medical dispensaries and wellness centers as a vertical pipeline and distribution channel for edibles and nutraceutical product lines."); 10-K for Cannapharmarx, Inc., Ex. E ("The

sale of edibles containing cannabis and cannabis concentrates was not initially permitted, however, such products are expected to be legalized by the fall of 2019.").)

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21 relating to third party 10-K filings. Edible denies the remaining allegations in paragraph 21.

22. Through its litigation against GTI, Edible Arrangements is seeking a windfall; Edible Arrangements wants the Court to declare that Edible Arrangements' *fruit basket business* somehow gives Edible Arrangements rights in the *cannabis industry*.

**Answer:** Denied.

23. On information and belief, Edible Arrangements' attempt to rebrand itself as "edible" is part of a concerted effort to lock up the use of the word "edible" in the cannabis industry, even though Edible Arrangements knows the term "edible" is generic and has been in use in the cannabis industry for decades.

**Answer:** Denied.

24. Edible Arrangements has no rights in the term "edible" in the cannabis industry. It has not used the term "edible" or "edibles" in the cannabis industry in interstate commerce, and consumers in the cannabis industry do not associate "edibles" with Edible Arrangements. In fact, Edible Arrangements presently cannot participate in the cannabis industry at all, because it is not licensed by the proper regulatory authorities to do so. Nor can it claim trademark rights in, or that its "reasonable scope of expansion covers," CBD-infused edibles, because the FDA refuses to approve such products generally.

**Answer:** Denied.

11

25.     The parties have coexisted under the trademarks at issue in this case for 10 years, since 2010.

**Answer:**  Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 relating to Defendants' business.  Edible denies the remaining allegations in paragraph 25.

26.     In 2010, GTI's predecessor-in-interest developed a method to create edibles with consistent experiences for consumers, which it began selling under the trademark "INCREDIBLES."

**Answer:**  Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26.

27.     Since 2010, GTI has been selling edibles under the INCREDIBLES mark in Colorado and has grown to be one of the premier edible brands in the United States.

**Answer:**  Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27.

28.     During that time, GTI has expanded the geographic reach of its INCREDIBLES branded edibles from Colorado to many other jurisdictions throughout the United States, including Illinois, Ohio, Nevada and Massachusetts.

**Answer:**  Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28.

29.     GTI's edibles have received significant recognition and acclaim from the industry and media, including:

·       2015 "THC Championship" – Best Tested Edible

·       2015 "High Times Business Summit" – Best Edible

·  2015 "High Times Cannabis Cup" – Best Edible

·  2015 "Cannabis Business Awards" – Best Edible

·  2016 "GQ Magazine" – Top 50 Products

·  2018 – "BudFest" – 2nd Place, Best THC Edible

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29.

30.  GTI has promoted its INCREDIBLES products as "edibles" for many years in its website[9], social media accounts and on product packaging:





---

[9] https://iloveincredibles.com/edibles-edi-fication/

13

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 30.

31.     To emphasize its groundbreaking method to create a consistent and homogenous edibles experience, GTI's predecessor-in-interest began using the tagline "the credible edible" in connection with its goods.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31.

32.     GTI's INCREDIBLES edibles feature cannabis- and CBD-infused chocolate bars, gummy candies and mints.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 32.

33.     GTI's INCREDIBLES edibles have become well-known both within the states that it operates and outside, and its expansion into new states has been met with significant consumer enthusiasm.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33.

34.     The INCREDIBLES Mark serves as a unique identifier for GTI's premium edibles.
**Answer:** Denied.

35.     GTI has invested significantly in advertising and marketing to build the fame, reputation and goodwill of its INCREDIBLES brand. GTI advertises through a variety of media and also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35.

36.     GTI's INCREDIBLES mark is distinctive of the source or origin of GTI's edibles.

**Answer:** Denied.

37.     Prior to September of 2019, Edible Arrangements had not objected to GTI's use or registration of the INCREDIBLES mark.

**Answer:** Denied.

38.     Edible Arrangements has not asserted, nor is GTI aware of, any instances of actual confusion arising out of the parties' coexisting uses of their respective marks during the aforementioned 10 years.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38 regarding Defendants' awareness of any instances of actual confusion.  Edible admits that the Complaint does not recite a specific instance of actual confusion but denies that a statement of actual confusion is required to show entitlement to relief and denies any implication that no actual confusion exists.

39.     Because of the 10 years of coexistence under the respective "edibles" and "incredibles" marks, there is no likelihood of confusion.

**Answer:** Denied.

## AS TO FIRST COUNTERCLAIM
### (Declaratory Judgment Respecting Validity and Infringement)

40.     Edible realleges the responses in the preceding paragraphs as if fully stated herein.

41.     Edible Arrangements has alleged in this action that it owns protectable rights in the Edible Marks and the Edible Applications, namely, U.S. Trademark App. Nos. 88/550,549,

15

88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573 and that GTI has infringed those rights.

**Answer:** Admitted.

42.     GTI denies that it has infringed or that its use of the term "edibles" or "incredibles" will ever infringe or in any way violate Edible Arrangement's rights.

**Answer:** Edible admits that Defendants purport that they have not infringed or otherwise violated Edible's rights, but Edible denies that Defendants are not subject to liability for the claims in the Complaint.  Edible denies any remaining allegations in paragraph 42.

43.     The Edible Marks are not protectable in whole or in part, because they consist of a generic term or phrase.

**Answer:** Denied.

44.     Certain of the Edible Marks are not protectable in whole or in part, because they consist of a merely descriptive term or phrase that has not acquired distinctiveness.

**Answer:** Denied.

45.     The GTI's "incredibles" marks have coexisted with Edible Arrangements purported Edible Marks for 10 years.

**Answer:** Edible lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45 relating to Defendants' business.  Edible denies the remaining allegations in paragraph 45.

46.     As they are used or intended to be used in the actual marketplace, no likelihood of confusion exists between GTI's use of "edibles" or "incredibles" and any of Edible Arrangements' purported Edible Marks.

**Answer:** Denied.

112863166v1

47.     GTI's use of "edibles" constitutes descriptive fair use protected by the Lanham Act.

**Answer:**  Denied.

48.     An actual, immediate, and justiciable controversy between the parties exists over whether Edible Arrangements has any protectable rights in the Edible Marks in connection with CBD and cannabis related goods, and if so, whether GTI is infringing or otherwise violating those rights.

**Answer:**  Edible admits that there is an actual justiciable controversy between the parties regarding Edible's trademark rights and Defendants' infringement.

49.     GTI has and will continue to be damaged by the persistent uncertainty created by Edible Arrangement's unsubstantiated claims with respect to GTI's legitimate use of the term "edibles" and its "incredibles" mark.

**Answer:**  Denied.

50.     Accordingly, GTI is entitled to a declaration by this Court that (a) Edible Arrangements does not have any protectable rights in the Edible Marks or Edible Applications in connection with CBD and cannabis related goods; and (b) GTI's use of the term "edibles" and "incredibles" does not infringe or otherwise violate Edible Arrangements' purported rights.

**Answer:**  Denied.

## AS TO SECOND COUNTERCLAIM
### (Order Compelling The U.S. Patent and Trademark Office to Cancel U.S. Trademark Registration for Genericness)

51.     Edible realleges responses in the preceding paragraphs as if fully stated herein.

52.     U.S. Trademark Registration No. 4,319,940 for the putative word mark EDIBLE is invalid and unenforceable because now and/or at the time of registration, the term "edible" is

and was generic, in whole or in part, as applied to the services recited in Registration No. 4,319,940 and therefore was not protectable as a trademark at the time of registration.

**Answer:** Denied.

53.    U.S. Trademark Registration No. 5,614,310 for the putative word mark EDIBLE is invalid and unenforceable because now and/or at the time of registration, the term "edible" is and was generic, in whole or in part, as applied to the services recited in Registration No. 5,614,310 and therefore was not protectable as a trademark at the time of registration.

**Answer:** Denied.

54.    U.S. Trademark Registration No. 5,513,739 for the putative mark EDIBLE (and Design) is invalid and unenforceable because now and/or at the time of registration, the term "edible" is and was generic, in whole or in part, as applied to the services recited in Registration No. 5,513,739 and therefore was not protectable as a trademark at the time of registration.

**Answer:** Denied.

55.    GTI has been and continues to be injured by the existence of U.S. Trademark Nos. 4,319,940; 5,614,310; and 5,513,739, and Edible Arrangements' claim of exclusive rights, as set forth in its Complaint, in the "Edible Marks."

**Answer:** Denied.

56.    Because Edible Arrangements is not entitled to maintain any rights to the Edible Marks, including those rights accompanying a federal registration, the Court should issue appropriate orders pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to cancel U.S. Trademark Nos. 4,319,940; 5,614,310; and 5,513,739.

**Answer:** Denied.

**AS TO THIRD COUNTERCLAIM**
**(Order Compelling the U.S. Patent and Trademark Office to Refuse U.S. Trademark Applications for Genericness)**

57.     U.S. Trademark Application No. 88/550,549 for the mark EDIBLE is unregistrable and unenforceable because the phrase "edible" is generic, as applied to the goods recited in App. No. 88/550,549 and is therefore not protectable as a trademark.

**Answer:**  Denied.

58.     U.S. Trademark Application No. 88/550,564 for the mark EDIBLE is unregistrable and unenforceable because the phrase "edible" is generic, as applied to the services recited in App. No. 88/550,564 and is therefore not protectable as a trademark.

**Answer:**  Denied.

59.     U.S. Trademark Application No. 88/550,501 for the mark EDIBLE is unregistrable and unenforceable because the phrase "edible" is generic, as applied to the goods recited in App. No. 88/550,501 and is therefore not protectable as a trademark.

**Answer:**  Denied.

60.     U.S. Trademark Application No. 88/550,565 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the goods recited in App. No. 88/550,565 and is therefore not protectable as a trademark.

**Answer:**  Denied.

61.     U.S. Trademark Application No. 88/550,569 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the goods recited in App. No. 88/550,569 and is therefore not protectable as a trademark.

**Answer:**  Denied.

62.     U.S. Trademark Application No. 88/550,579 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the services recited in App. No. 88/550,579 and is therefore not protectable as a trademark.

**Answer:**  Denied.

63.     U.S. Trademark Application No. 88/550,573 for the mark EDIBLE CBD is unregistrable and unenforceable because the phrase "edible cbd" is generic, as applied to the goods recited in App. No. 88/550,573 and is therefore not protectable as a trademark.

**Answer:**  Denied.

64.     GTI has been injured by the existence of U.S. Trademark App. Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573, and Edible Arrangements' claim of exclusive rights, as set forth in its Complaint in the Edible Marks.

**Answer:**  Denied.

65.     Because Edible Arrangements is not entitled to maintain any of the rights to the Edible Marks and Edible Applications, including those rights accompanying a federal registration, the Court should issue appropriate orders pursuant to 15 U.S.C. § 1119 directing the Director of the USPTO to refuse the Edible Applications, U.S. Trademark App. Nos. 88/550,549, 88/550,564, 88/550,501, 88/550,565, 88/550,569, 88/550,579 and 88/550,573.

**Answer:**  Denied.

### PRAYER FOR RELIEF

The final unnumbered "wherefore" clause of the Counterclaim contains a prayer for relief to which no response is required.  To the extent a response is required, Edible denies that Defendant is entitled to any relief, including, but not limited to, the relief requested in the wherefore clause. Any allegations not specifically admitted herein are denied.

## DEFENSES

## LACK OF SUBJECT MATTER JURISDICTION

This Court lacks subject matter jurisdiction over Defendants' Counterclaim Count III for cancellation of various of Edible's trademark registrations. Defendants' purport that the Court may grant the requested relief pursuant to 15 U.S.C. § 1119, which on its face and by its express terms grants power to district courts over trademark *registrations* but not applications. Any relief related to Edible's pending trademark applications must first be sought through the United States Patent and Trademark Office's administrative proceedings.

### RESERVATION OF DEFENSES

Edible IP, LLC and Edible Arrangements, LLC allege that they intend to rely upon such other defenses as may become available or apparent during the course of investigation, discovery, or trial, and Edible IP, LLC and Edible Arrangements, LLC reserve the right to amend their Reply to Defendants' Counterclaims to assert such other defenses to which they may be entitled.

WHEREFORE, Plaintiffs/counterclaim defendants demand judgment as follows:

(a)     Dismissing the Defendants' Counterclaims in their entirety and with prejudice;

(b)     Awarding to Plaintiffs/counterclaim defendants costs and disbursements, including reasonable attorney fees; and

(c)     For such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Edible IP, LLC and Edible Arrangements, LLC hereby demand a jury trial for all issues so triable.

112863166v1

Dated this 21st day of January, 2021.

TROUTMAN PEPPER HAMILTON
SANDERS LLP

By: _/s/ *Robert E. Browne, Jr.*_____
Robert E. Browne, Jr.
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
robert.browne@troutman.com
Tel: 312.759.1920

John M. Bowler
Lindsay M. Henner (*pro hac vice*)
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
john.bowler@troutman.com
lindsay.henner@troutman.com
Tel: 404.885.3000

*Attorneys for Plaintiffs Edible IP, LLC and*
*Edible Arrangements LLC*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on January 21, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

Dated: January 21, 2021

*/s/  Robert E. Browne, Jr.*
Robert E. Browne, Jr.