# Exhibit G

Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA  30308-2216

troutman.com



**Lindsay Mitchell Henner**
lindsay.henner@troutman.com

February 23, 2022

**VIA EMAIL**

Maja Sherman
Greenberg Traurig, LLP
shermanm@gtlaw.com

**Re:    Edible v. MC Brands and Green Thumb Industries**

Dear Counsel:

This letter responds to your February 14, 2022, letter and February 18, 2022, e-mail correspondence regarding discovery disputes.

At the outset, let us be clear that Edible served its responses and objections to Defendants' written discovery nearly a year ago in April of 2021. Edible took care at that time to set out the precise scope of information that it intended to collect and produce and indicated with particularity any discovery requests that it did not understand or would be willing to confer over to determine a reasonable scope.

Most of April and all of May, June, July, August, September, and October of 2021 passed without any allegation by Defendants of "deficiency" in those responses. So, Edible moved forward with the plan set out in its written responses. It was only on November 8, 2021—*just three months ago*—that Defendants first sought to raise issues with Edible's written discovery responses and demand changes that would significantly alter the scope of Edible's written discovery response agreements. Defendants let twice as long of a time period go by without even attempting to address disputes.

The parties further conferred on January 14, 2022, regarding document production timing and Edible's responses to requests for admissions. The parties then conferred for the first time about details of disputed interrogatory responses on January 28, 2022. *Three weeks later*, after close of business on Friday, February 18, 2022, Defendants served the precursor to a motion to compel Edible's responses to the same interrogatories about which we recently conferred. Defendants simultaneously sent email correspondence disingenuously demanding not only a response, but actual supplementation to provide every single thing alleged to be deficient within *one business day*. There is no justification for this timeline of events.

Defendants' efforts to use characterizations in correspondence to paint Edible as the bad actor is a paper tiger. It was Edible that made the first document production. It was Edible that served the first deposition notices in the case. It was Edible that actually scheduled and took depositions



notwithstanding Defendants' document dumping on the eve of or after those depositions. Defendants insist on a date certain for production completion but have not provided one themselves. Defendants insist on Rule 33(d) supplementation but have not provided supplementation themselves. Defendants are not *unable* to schedule depositions; they unrealistically and unreasonably refuse to take depositions prior to guaranteeing 100% of other discovery is complete. And Defendants' "25,000" document production is nothing to tout. After filtering, our discovery team determined that less than a third of the set were not near duplicates.

We continue to move forward reasonably in view of all of the foregoing and have been negotiating in good faith over issues that may well have been waived by Defendants' long silence. Our responses on the issues raised in Defendants' discovery correspondence follow.

## A.  FEBRUARY 14, 2022, LETTER CORRESPONDENCE

> *1.  Selection and adoption of the Asserted EDIBLE marks (RFPs 1-2). We have seen no documents in your production on these categories – not even for the "incredible edibles" marks.*

Edible served its objections to these requests eleven months ago, on April 5, 2021. Edible stated at that time that it would agree to produce documents sufficient to show the selection and adoption of the Asserted Marks. Edible has done so, producing file histories and registrations that show the relevant timeline, marks, and goods, and has further produced representative uses of those marks in the marketplace.

The parties also conferred on Edible's responses to Defendants' RFPs on November 16, 2021, in such extensive detail that the call lasted 90 minutes. Setting aside mischaracterizations in Defendants' high-level summary of the conference, Defendants' own correspondence reflects that Defendants raised no issue with the scope of Edible's agreed production in response to RFP Nos. 1 and 2.

Edible is not in possession of any "conception" documents showing the first ideation of the name EDIBLE ARRANGEMENTS more than twenty years ago in 1999. And, further still, Edible has conducted a reasonable search of its files for documents and correspondence related to INCREDIBLE EDIBLES and already produced the same. It is unclear what Defendants expect to be produced or why, and the February 14 Correspondence does not provide any detail.

> *2.  Budget and dollars spent on advertising (RFP 14). We have seen "Marketing Budget" spreadsheets from the years 2016-2018. Please confirm those cover the complete landscape of both budget and spend for those years. Please also supplement for the years 2019 and 2020, which you agreed to produce. We have not seen the marketing fund documents that Plaintiffs agreed to produce during the November 16 meet-and-confer.*

During the November 16 conference, we identified that we were preparing marketing fund documents for production and have already produced them. They cover the years 2019 and 2020.



- EDIBLE_002277 to EDIBLE_002283 titled MARKETING FUND OF EDIBLE ARRANGEMENTS, LLC FINANCIAL STATEMENTS YEARS ENDED DECEMBER 31, 2019 and 2018 with INTERNAL AUDITORS' REPORT

- EDIBLE_002284 to EDIBLE_002293 titled MARKETING FUND OF EDIBLE ARRANGEMENTS, LLC FINANCIAL STATEMENTS YEARS ENDED DECEMBER 31, 2020 and 2019 with INTERNAL AUDITORS' REPORT

3. ***Licensing agreements for the EDIBLE marks (RFP 43). During our November 16 Meet and Confer, you told us that Edible Arrangements would only permit us to see the franchise agreements in an in-person inspection at your Chicago offices. We think your insistence on an in-person inspection is needlessly burdensome in view of the protective order in this case, and that you have publicly disclosed previous versions of the agreement in prior litigations. See Edible Arrangements International, Inc. v. For Dreamers, LLC et al., Case No. 10-cv-7505 (N.D. Ill.). More importantly, you still have not made these documents available for inspection, despite a number of requests from us. Additionally, Edible Arrangements' franchise agreements only partially responds to this Request, insofar as Edible Arrangements' settlements with other alleged infringers included a license component. Those agreements should be of limited number and relatively easy to locate, insofar as Edible Arrangements has used a finite list of law firms on trademark enforcement and litigation matters over the years.***

The public availability of a prior franchise agreement under a different entity name from a case that was filed more than ten years ago is irrelevant to Edible's current interests in protecting the confidential and proprietary details of its current franchise agreement. Edible intends to make the intellectual property portions of its current Edible Arrangements franchise agreement available for inspection in Chicago and is aiming to provide a proposed date this week.

During the November 16 conference, we further already stated that Edible does not otherwise have licensed the use of the Asserted Marks.

4. ***Profit data (RFP 49). We have seen no sales data at all, let alone financial statements, costs of goods, and other information we would need to assess Plaintiff's profits.***

Whether seen or not, Edible's first production of documents contained sales information at EDIBLE_000914. The chart identifies units sold, broken down by specific product category, in the United States and Canada between 2018 and 2020.

5. ***Surveys, market research, or investigations referencing the EDIBLE marks or alternatives (RFP 6, 37). While there are some documents in Plaintiff's production relating to the Edible Arrangements brand as a whole, we see no such documents pertaining to the Incredible Edibles brand.***

Edible has conducted a reasonable search for and produced the above-referenced documents that it located. Edible is not aware of any such documents pertaining to the INCREDIBLE

**Maya Sherman**
February 23, 2022
Page 4



EDIBLES mark. Should Edible discover any additional responsive documents, it will produce them.

> **6. *Documents relating to the development, editing, and approval process of ads referencing the EDIBLE marks (RFP 9). We have seen no such documents in Plaintiff's production. Per our November 16th meet and confer, we now reiterate our request that Plaintiff "confirm there are no further responsive documents that it intends to rely upon."***
> **and**
> ***Documents discussing the use of "edible" in ads (RFP 10). Plaintiff has produced very little responsive to this request. Per our November 16th meet and confer, we now reiterate our request that Plaintiff "confirm there are no further responsive documents that it intends to rely upon."***

As discussed in the November 16 conference, we continue not to understand how RFPs 9 and 10 call for anything less than the production of the entirety of the marketing department's documents and correspondence. As we also discussed, and as noted in your summary correspondence, at that time Edible intended to produce additional marketing materials, and we did so.

We will not confirm as a general matter that there are zero other "marketing" materials on which we intend to rely, as discovery is ongoing and there is no basis to use discovery correspondence to foreclose supplementation permitted under the Federal Rules. However, Edible believes that its production is substantially complete as we have previously stated.

> **7. *Documents discussing money spent on advertising, web design, and press releases as well as compensation paid to trade journals, journalists, and the like (RFP 15, 19). We have seen no documents responsive to these requests to date.***

Edible has produced documents showing money spent on marketing and advertising. During a previous conference, we discussed that individual documentation of costs for things like "trade journal" compensation is not a natural breakdown, not relevant and tedious. We have therefore provided summary spend and budgeting information related to marketing. Defendants have not offered any narrowed or more specific identification of what is expected under these requests since our conferral in November 2021, though our April 2021 objections to the requests specifically invite conferral to determine scope.

> **8. *Customer complaints (RFP 21). After our November 16th meet and confer, we confirmed that we seek all responsive complaints, but to the extent Edible Arrangements thinks this burdensome, we asked you to identify the potential sources of information, and what Edible Arrangements proposes to be a reasonable search of these sources. We have not received any follow-up communications from you on this, and other than a couple comments on social media, do not see any responsive documents in your production.***

**Maya Sherman**
February 23, 2022
Page 5



We have not identified a non-burdensome reasonable manner of collection for customer complaints, and we continue to request the relevance basis of anything other than representative complaints of which Defendants are already in possession.

9. ***Use of "edible(s)" with CBD or cannabis-infused products and the use of "edible(s)" with non-CBD or cannabis infused products (RFP 24, 25). We are still awaiting your position on the search terms and custodians we discussed.***

We reiterate our points made in a prior meet and confer that documents relating to use of "edible(s)" with cannabis or non-cannabis products calls for nearly every document in Edible's entire business to the extent that EDIBLE and INCREDIBLE EDIBLES are the business names themselves. For this reason, we began discussing limiting search terms. Our search term agreement is discussed below. *See infra* p. 6.

10. ***We note that we have provided you with four witnesses to date, but we have yet to complete a single deposition of Plaintiff, due to Plaintiff's failure to complete its document production.***

This comment is disingenuous and incorrect. It is Defendants' own responsibility to schedule depositions, and Defendants have failed to even attempt to set a schedule, including for third party depositions that do not depend on Edible's productions. Further, we represented to you in a prior conference that Edible's document productions were substantially complete and have yet to hear anything from Defendants regarding deposition scheduling.

The volume of any supplemental production is certainly no basis to indefinitely postpone setting a calendar for depositions. We have also been conferring and re-conferring on a number of issues each time Defendants' memory fades or another attorney for Defendants is assigned the task of discovery correspondence. The February 14 letter is no different, raising questions that have already been answered months before as though they were never previously discussed. Any delay at this time with respect to depositions rests squarely on Defendants' shoulders.

11. ***Please also provide dates for a meet and confer on RFPs 31 and 48, in response to which Plaintiffs refused to produce documents, and RFPs 27, 34, 35 and 36, in response to which Plaintiffs agreed to produce only a subset of documents responsive to the request.***

    ***Specifically, for the last set of RFPs, Defendants request all settlement and coexistence agreements pertaining to the asserted marks; all discovery served and received, including deposition transcripts in all cases identified in the production; and all cease-and-desist letters pertaining to the asserted marks from the past ten years, and any follow-up correspondence relating thereto—all going back to 2010.***

Edible served its objections to these requests eleven months ago, on April 5, 2021. Edible stated at that time what it would and would not agree to produce in accordance with the Federal Rules. And again, the parties also conferred on Edible's responses to Defendants' RFPs on November 16, 2021, in such extensive detail that the call lasted 90 minutes. Setting aside mischaracterizations in Defendants' high-level summary of the conference, Defendants' own



correspondence reflects that Defendants raised no issue with the scope of Edible's agreed production in response to the above-cited requests. There has been no change in circumstances, only the passage of extensive time and collection efforts based on Edible's long standing responses due to Defendants' delay without justification in raising alleged "deficiencies."

With respect to RFP 48, Edible did produce three years of number quantity information regardless of its response to the request, located at EDIBLE_000914.

With respect to RFPs 27, 34, 35 and 36, Edible's eleven-month old responses state that Edible will produce three years of documentation sufficient to identify any trademark proceedings. Edible has done so, producing more than the agreed amount of information in the form of litigation reports with no date limit. To ask for twelve years of not only any and all written discovery, deposition transcripts, letters, and agreements, but also *document productions* related to different cases involving different parties, different sets of marks, and different goods, is a mere fishing expedition and attempt to harass Edible with incredibly burdensome requests for extensive irrelevant information. Defendants would not even be permitted *in this case* to ask broad requests for "all things related to the Asserted Marks", so to ask the equivalent for third party cases is even more unreasonable.

Edible has done what it said a year ago it would do for these requests, and without any complaint from Defendants in the interim.

## B. FEBRUARY 18, 2022, EMAIL CORRESPONDENCE

With respect to the February 18, 2022, email, we respond as follows:

1. ***First, please promptly confirm whether you agree to add the search term "incredible!" to our search term list to check the number of hits after you have uploaded the agreed-upon custodians. Please further confirm whether you agree to the addition of Bill Sluben and Paul Bundonis as custodians.***

As discussed during our last meet and confer on this topic, we agreed to inquire with Edible about these custodians and whether any of the proposed custodians would be redundant of one another. We can confirm that Mr. Sluben and Mr. Bundonis are redundant, such that information available to Mr. Sluben would be available to Mr. Bundonis, but not the reverse. Mr. Bundonis would have access to more comprehensive information that Mr. Sluben would not. Therefore, Edible will add Mr. Bundonis as a custodian for the purposes of the proposed search terms.

With respect to "incredible!", we proposed to add the "incredible" term as a limiting factor, given your representation that Defendants' interest in the proposed search terms is specific to the INCREDIBLE EDIBLES business. We will add this into the search. The term "incredibles" was already searched across the comprehensive backend email database for prior productions.

The hit counts have been rerun with the updated custodian list and term. We are setting up processing so our discovery team can run the w/range search phrases and process for production.



2. ***Second, please immediately confirm when you will provide the franchise agreements for our inspection. This issue has been outstanding since November 2021.***

*See supra* p. 3.

3. ***Third, please confirm a date certain by when all remaining franchisee document productions will be made.***

We confirmed that this production is complete on February 18, 2022.

4. ***Fourth, with respect to your deficient interrogatory answers, please confirm by what date you will supplement your answers to identify documents you are relying on pursuant to Rule 33(d), and further confirm when you will supplement your answers to Interrogatory Nos. 6 and 8.***

Edible is willing to agree to a date by which to mutually exchange available Rule 33(d) document identifications. Because Interrogatory No. 6 is a 33(d) response, we will provide any additional supplementation regarding lack of information prior to a three year lookback at that time.

With respect to Interrogatory No. 8, Mike Rotundo and Jill Thomas are former employees of whose knowledge Edible is not in possession, custody, or control. We have otherwise inquired with Edible and are not aware of conversations with third parties regarding "edible(s)" as a generic term that would be responsive to Interrogatory No. 8. Again, we will provide this supplementation on the 33(d) document identification exchange date. Should Edible discover any responsive communications, Edible will supplement its response further.

5. ***For Interrogatory Nos. 7 and 11, please confirm whether you agree to provide answers for the timeframe from 2010 to the present. For Interrogatory No. 11, as a compromise, we've asked that you provide a list of the outside advertising, marketing and PR agencies that Edible Arrangements has used since 2010. Please confirm whether you agree to provide this information.***

To the extent Defendants justify these requests based on Complaint allegations regarding Edible's use of its marks as source identifiers and in advertising since the inception of its business, those allegations do not call for a 12-year list of third party agencies and comprehensive accounting of every single enforcement activity. If there is any particular relationship at all between the information sought through these interrogatories and the cited Complaint allegations, you have not articulated it. We have yet to hear from Defendants the relevance of these interrogatories, whether for 22 years or 12 years, and agreed on a compromise from the outset to provide three years of information. At the time of the responses in April 2021, a three year lookback exceeded even the time period of Defendants' ownership of its INCREDIBLES brand.

With respect to Interrogatory No. 7, in particular, Edible has already produced records identifying its litigation and administrative proceedings, without date limitation. We are further reviewing cease and desist correspondence for production. As a further compromise, we will endeavor to collect cease and desist letters and advertising agencies for the last five years.

**Maya Sherman**
February 23, 2022
Page 8



Sincerely,

/s/ Lindsay Mitchell Henner
Lindsay Mitchell Henner