```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

EDIBLE IP, LLC, and EDIBLE         )   No. 20 C 5840
ARRANGEMENTS, LLC,                 )
                                   )
               Plaintiffs,         )
                                   )
          vs.                      )
                                   )
MC BRANDS, LLC, and GREEN THUMB    )
INDUSTRIES, INC.,                  )
                                   )
               Defendants.         )
-----------------------------------)
MC BRANDS, LLC, and GREEN THUMB    )
INDUSTRIES, INC.,                  )
                                   )
          Counter-Plaintiffs,      )
                                   )
          vs.                      )
                                   )
EDIBLE IP, LLC, and EDIBLE         )
ARRANGEMENTS, LLC,                 )   Chicago, Illinois
                                   )   June 14, 2022
          Counter-Defendants.      )   10:00 a.m.

                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HON. SARA L. ELLIS

APPEARANCES:

For the Plaintiffs/
Counter-Defendants:    MS. LINDSAY M. HENNER
                       Troutman Pepper Hamilton Sanders, LLP,
                       600 Peachtree Street NE, Suite, 3000,
                       Atlanta, Georgia  30308

For the Defendants/
Counter-Plaintiffs:    MR. CAMERON M. NELSON
                       Greenberg Traurig LLC,
                       77 West Wacker Drive, Suite 3100,
                       Chicago, Illinois  60601


           Patrick J. Mullen, Official Court Reporter
             219 South Dearborn Street, Room 1412,
                   Chicago, Illinois  60604
                        (312) 435-5565
```

1       (Telephonic proceedings on the record.)
2              THE CLERK: 2020 CV 5840, Edible IP, LLC, versus
3  MC Brands, LLC.
4              MS. HENNER: This is Lindsay Henner for plaintiffs.
5              MR. NELSON: This is Cameron Nelson for defendants.
6              THE COURT: All right. Are we expecting anybody else?
7              MS. HENNER: No, Your Honor, not from plaintiffs.
8              MR. NELSON: None for defendants, Your Honor.
9              THE COURT: All right. So briefly what does Edible IP
10 believe that you're going to get from this person that you
11 can't get from anybody else?
12             MS. HENNER: Sure, Your Honor. I'm happy to answer
13 that question. As far as we understand the standard, you know,
14 it's not whether this witness has zero unique knowledge. We
15 have a few items that we've identified that other witnesses
16 have referred to him as the source of information.
17             Defendants' counsel produced custodial documents for
18 this witness after the 30(b)(6) deposition occurred, so even to
19 the extent that we could have asked certain 30(b)(6) witnesses
20 about those documents, they just weren't in our hands at the
21 time.
22             This witness is not just, you know, the CEO of a large
23 company that has many different brands. He's personally
24 contributed to slide decks describing market information that's
25 relevant to the marketplace in which we believe there's a

1 likelihood of confusion and in which we believe there is a risk
2 of harm.  He led the acquisition of the brand that is at issue
3 in this case.  He used his personal contacts to identify this
4 company as one for a targeted acquisition.  He signed the
5 agreement documents that were relevant to the acquisition that
6 included a license back to the original owner of the brand,
7 Medically Correct.  All of his thoughts on why the deal was
8 important to the company, what the landscape looked like, where
9 the future of the company is going is information that is
10 within his control.
11        Certainly, you know, we're respectful of Mr. Kovler's
12 time, but I would say that the hardship that defendants'
13 counsel has identified is basically reduced to two pretty basic
14 sentences.  There's no representation that we've heard that
15 Mr. Kovler doesn't have a single day with a few hours
16 available.  They say he travels, which is a non-issue because
17 we've done a lot of remote depositions in this case.
18        And the way that we see apex depositions is, for
19 example, you know, protecting the CEO of McDonald's in a hot
20 coffee personal injury and not protecting a CEO of a company
21 with personal, first-hand, direct knowledge of marks and brands
22 at issue in this case from a few hours of testimony.
23        So from our perspective, the arguments that defense
24 counsel is making about the lack of relevance of his testimony,
25 all of that is, you know, based on how they view our theories

1  of the case, which is not a basis to foreclose testimony
2  entirely from a firsthand witness.
3       You know, we think certainly there's more prejudice to
4  Edible in denying the deposition outright than to Mr. Kovler in
5  spending a few hours in a deposition, and we're certainly
6  willing to be accommodating to that.  Our response to the
7  motion sets out, you know, that we've already offered to do
8  less than a day of deposition for him.  So with all of those
9  things in consideration, I think we can certainly make it easy
10 enough for Mr. Kovler to spend a few hours with us.
11      THE COURT:  And how long do you anticipate a
12 deposition going?
13      MS. HENNER:  No more than a half-day, Your Honor.
14      THE COURT:  So three hours?
15      MS. HENNER:  Correct.
16      THE COURT:  All right.  Then I'll hear from the
17 defendants.
18      MR. NELSON:  So, Your Honor, this is Mr. Nelson.  I've
19 asked the question that you just asked a number of times in the
20 last several months, and just like you didn't get an answer, I
21 didn't get an answer.  What unique knowledge that you can't get
22 elsewhere are you going to get from Mr. Kovler?  They haven't
23 answered that.
24      So they say that he was involved in the acquisition.
25 But, Your Honor, this is just a simple trademark infringement

1  case. The plaintiffs just need to prove, number one, that
2  there's a likelihood of confusion and, number two, that that
3  causes some sort of harm. Why GTI decided to acquire a brand a
4  few year ago has nothing to do with any of those factors.
5  　　　　It's important to acknowledge where we are in this
6  case. The plaintiff has already given up any claim of lost
7  profits. Plaintiff is not arguing that it loses sales because
8  of GTI's Incredibles brand. Plaintiffs' only remaining damages
9  argument is that consumers who go to a dispensary and show
10 their ID to pass a security guard and then go inside are
11 somehow thinking about Edible Arrangements fruit baskets while
12 they're purchasing an Incredibles product. That's what
13 plaintiffs' case is down to, and that has nothing to do with
14 Mr. Kovler.
15 　　　　This request for a deposition is merely tit for that,
16 but the parties are not in the same position. Edible
17 Arrangements named their CEO Tariq Farid as the only witness
18 they're going to rely on at trial in their initial disclosures.
19 In the 30(b)(6) deposition we took on Friday, the 30(b)(6)
20 witness, who wasn't Mr. Farid, consistently referred back to
21 Mr. Farid for answers to our questions.
22 　　　　That is not the situation here. We did not identify
23 Mr. Kovler as a witness we're going to rely on at trial.
24 Mr. Kovler runs a large publicly traded company, not a family
25 run business. Mr. Kovler is responsible for several brands

beyond the Incredibles brand. There's Beboe and Dogwalkers and Dr. Solomon's and Rhythm and Good Green, all of those brands. That's what he does.

So we've asked over and over again what unique knowledge are you looking to get from Mr. Kovler that you can't get elsewhere in discovery, and I still haven't heard an answer to that question. Ms. Henner argued that he contributed to slide decks, but she hasn't argued that somehow there's unique knowledge that she couldn't have asked the other witnesses she's already deposed. She mentioned she wanted to ask why the deal was important, but that's got nothing to do with ordinary trademark infringement. She said she wants to know the landscape or future of the company. That has nothing to do with ordinary trademark infringement, and frankly, Your Honor, it sounds like the plaintiffs are using this deposition to try to pry into GTI's future business strategies which have nothing to do with this case.

So then she just wants to talk about availability, but the question has never been answered: What unique knowledge does the CEO of this company have that's relevant to this case? Plaintiffs have not answered that. We asked them if they will give us a list in writing. We waited for over a month. They never gave it to us, and we ultimately filed this motion because they simply weren't responding to us.

So I don't see any relevance to Mr. Kovler's

1 deposition. They haven't identified anything that's unique,
2 and that's not shifting the burden here. It's simply saying in
3 order for us to assess your request for a deposition, we need
4 to understand why you think you need it. The plaintiffs
5 haven't given us that courtesy, and I don't think in their
6 answer to the Court just now that they gave the Court that
7 courtesy.
8     MS. HENNER: Your Honor, if I could respond to that.
9     THE COURT: Go ahead.
10     MS. HENNER: So what Mr. Nelson is essentially saying
11 is that plaintiffs have to show that there is a laundry list of
12 specifically unique information to Mr. Kovler, which I believe
13 that we have done in our motion response and on the phone
14 today. But he's saying that we need to know what's in
15 Mr. Kovler's head and list everything that's in Mr. Kovler's
16 head that is unique without ever talking to him and without
17 knowing what every other employee of Green Thumb knows in their
18 head and knowing that none of those people know anything else
19 that Mr. Kovler could have possibly known.
20     We've established that Mr. Kovler was directly
21 involved in issues in this case, and it's a mischaracterization
22 for Mr. Nelson to say that he just doesn't think any of those
23 things are relevant to a standard and ordinary trademark case.
24 Again, I go back to the fact that his perception of it is his
25 lawyer's, so defense counsel's perception of plaintiffs' theory

1 of the case.

2 We have plenty of relevant reasons to take this
3 testimony. The marketplace in which these parties exist is the
4 heart of a trademark infringement case. So whether Mr. Nelson
5 agrees with that or disagrees with that is not going to be
6 relevant to this motion.

7 And I will say, you know, to the aspersions that are
8 cast upon us about not responding to the motion, we had an
9 entire meet-and-confer on exactly the bases that were put in
10 our response to this motion where, to quote the defendants'
11 number 1 exhibit, where I personally, quote-unquote, rattled
12 off a list of reasons to Mr. Nelson about why this deposition
13 was relevant. So his complaint is that I didn't write it down
14 for him. Rather than him taking notes, he wanted me to write
15 down exactly what I said and send it to them again. So I don't
16 think that that's a fair characterization of where we are.

17 And I will point out as well that the draft motion
18 that defendants' counsel sent over to us and that we responded
19 to is not the one that defendants filed on Thursday of last
20 week. What they filed was a wholly revised version of their
21 motion with edits top to bottom, extensive edits top to bottom
22 that were never sent to us, that we saw for the first time when
23 it was filed, and that they placed our signature on, Your
24 Honor. So I'm not sure who's surprising who in this case, but
25 it's certainly not plaintiffs' counsel with the bases for this

1 motion.

2 So again, I would go back to the fact that what we're
3 asking for is a few hours of Mr. Kovler's time on issues that
4 he has firsthand knowledge of, that nobody has his firsthand
5 knowledge but him. We will keep it convenient for Mr. Kovler
6 to do, and absent it we will be prejudiced in a way that can't
7 be cured. Mr. Kovler simply loses a few hours of his time, but
8 we'll do everything we can to make it convenient and keep it
9 professional for him.

10 THE COURT: All right. Anything else?

11 MR. NELSON: Your Honor, this is Mr. Nelson. I would
12 simply say that I believe Ms. Henner's argument proves that
13 this is a fishing expedition. She's arguing she wants to know
14 what's in his head and she can't possibly know that in advance.
15 You could say that of any CEO, and she's just simply ignoring
16 the apex doctrine. We don't make CEOs of publicly traded
17 companies sit for depositions in the hopes that they find
18 something interesting.

19 THE COURT: All right. So I'm going to deny
20 plaintiffs' motion for a protective order, but I'm going to
21 limit the deposition to no more than three hours. I do find
22 based on plaintiff's argument that Mr. Kovler was directly
23 involved in certain decision-making aspects and had firsthand
24 knowledge of certain elements of their claims. They should be
25 entitled to depose him, but the deposition is limited to those

1  topics and limited in time to three hours.

2  You know, I don't believe that it's a fishing
3  expedition. While it's true that plaintiff's counsel doesn't
4  know what's in Mr. Kovler's head, she has identified certain
5  areas that she believes are relevant to plaintiffs' claims, and
6  it's not my job to litigate her case for her but, instead, just
7  set the rules so that it can be litigated in a way that's
8  sufficient and fair.

9  All right. I think you've got a settlement conference
10 set for 5/19 with Judge Weisman. Does it make sense to hold
11 off on this deposition till after the settlement conference if
12 we can push the dates out, or do you think you need this for
13 the settlement conference?

14 MS. HENNER: Your Honor, this is Lindsay Henner for
15 plaintiffs. I agree with your intuition. I think that we
16 probably do need this deposition in advance of the settlement
17 conference, and I believe there's only maybe a few days left in
18 discovery after the settlement conference. But again, we can
19 be accommodating to Mr. Kovler's schedule.

20 THE COURT: Okay. All right. Then I will leave that
21 up to the parties. We've got a discovery schedule that is set
22 and summary judgment. So unless you need anything else, I
23 think we're all set.

24 MS. HENNER: That's all for plaintiffs, Your Honor.
25 Thank you.

1    MR. NELSON:  That's all for defendants for today, Your
2  Honor.
3    THE COURT:  All right.  Thank you.
4    MS. HENNER:  Thank you.
5    MR. NELSON:  Thank you.
6    (Proceedings concluded.)
7           C E R T I F I C A T E
8    I, Patrick J. Mullen, do hereby certify that the
9  foregoing is a complete, true, and accurate transcript of the
10 proceedings had in the above-entitled case before the Honorable
11 SARA L. ELLIS, one of the judges of said court, at Chicago,
12 Illinois, on June 14, 2022.
13
14                    /s/ Patrick J. Mullen
                      Official Court Reporter
15                    United States District Court
                      Northern District of Illinois
16                    Eastern Division
17
18
19
20
21
22
23
24
25