IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MC BRANDS, LLC; and GREEN THUMB INDUSTRIES INC.,<br><br>Defendants. | Civil Action No. 1:20-cv-05840 |
| MC BRANDS, LLC; and GREEN THUMB INDUSTRIES INC,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC,<br><br>Counterclaim-Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR AN EXTENSION OF DISCOVERY TO TAKE
DEPOSITIONS AND RESOLVE CURRENT DISCOVERY DISPUTES**

Plaintiffs Edible IP, LLC and Edible Arrangements, LLC (together, "Edible") hereby respond to Defendants MC Brands, LLC and Green Thumb Industries Inc. ("Defendants") motion for consent to take two depositions after June 15, 2022, and request for an extension of 30 days to resolve current discovery disputes.

**1. Relevant Factual Background Regarding this Motion**

Edible does not oppose the request for consent to take depositions after June 15, 2022. In

1

fact, it was Edible that on July 7, 2022, and after getting no response again on July 14, 2022, proposed a joint motion to the Court seeking authority, as required, to conduct the Kovler and Reynolds depositions out of time – a plan to which the parties had agreed in principle by each proposing deposition dates after the close of discovery when the deponents were first available. *See* **Exhibits 1-3**, attached hereto. On the morning of the last day of fact discovery, July 15, 2022, Defendants sent a lengthy email identifying alleged "deficiencies" in discovery. *See* Dkt. 74-1 (Exhibit A to Defendants' Motion). Later the same day, Defendants agreed to Edible's draft motion regarding the two depositions, but only under the condition that Edible also agree in the motion that Defendants' eleventh hour complaints from earlier in the day could form the basis of post-discovery dispute resolution (*i.e.*, motions to compel). *See* **Exhibit 3** at p. 3 (12:30 PM ET email from E. Maiers to J. Bowler).

Edible was at least willing to entertain the idea of additional time to settle discovery disputes, as long as the relief requested was mutual so that both parties could raise issues during that time period. *See id*. at p. 2 (12:18 PM CT email from J. Bowler to E. Maiers). Defendants refused on the basis that, somehow, they believed Defendants' list of alleged deficiencies sent mere hours before the close of discovery were purportedly timely raised, and anything identified by Edible as deficient thereafter would not be timely raised. *Id*. at p. 1 (2:05 PM ET email from E. Maiers to J. Bowler). Defendants having once again refused to discuss any reasonable compromise, per their usual practice before this Court, Edible proposed that the parties file the deposition-related motion jointly and then follow the Court's procedure for discovery disputes on the issue of deficiencies. *Id*. at p. 1 (3:11 PM ET email from J. Bower to E. Maiers). Defendants again refused and, contrary to the dispute resolution practice set out by the Court requiring statements from both sides, filed the independent motion now pending. The parties never properly

conferred on this motion because Defendants simply told Edible they were filing the motion an hour and a half before doing so. *See* **Exhibit 4** (4:31 PM ET email from C. Nelson to J. Bowler transmitting Defendants' draft motion only seeking for Edible to "reconsider" its position).

As Edible informed the Court at one of the many motion hearings in this case to date, Defendants have waited, and will continue to wait, until the last minute to raise a never-ending stream of alleged deficiencies and seek additional time over and over again to drag the case out indefinitely. Defendants have had plenty of time to prepare their case and there must be an end to discovery. Defendants have not followed proper procedure for conferring and moving to compel prior to the close of discovery. These delays simply cannot continue, nor is additional delay warranted by the facts.

### 2. Defendants' Eve of Discovery E-mail Alleging Deficiencies is Untimely and Factually Incorrect

If Defendants really believed that their deficiency allegations made on the day discovery closed were timely, they would not have attempted to condition the jointly agreed deposition relief on Edible's consent that Defendants could raise deficiency issues with the Court after the close of discovery. Defendants are well aware that the close of discovery is not the deadline to raise deficiency issues, but the deadline to move to compel. Defendants did nothing to try to comply with Court procedure necessary to meet that deadline, first raising additional deficiencies mere hours before the close of discovery leaving no time to confer or to present a motion on the Court's calendar. Even had Defendants filed a motion to compel on the close of discovery on July 15 rather than this motion, it would still have been untimely. *See Alight Solutions v. Thomson*, 2021 U.S. Dist. LEXIS 212472, at *8 (N.D. Ill. Nov. 3, 2021) ("Filing a motion to compel a mere hour or two before the close of discovery is unacceptable.").

Defendants also misrepresent the dates by which they became aware of the alleged

"deficiencies," and it is clear there is no cause to allow ongoing deficiency allegations post-discovery close.

- Defendants complain of the fact that their own investigation revealed an extension of time to oppose an INCREDIBLES mark filed by Edible in 2016. If Defendants genuinely waited until last week to identify this alleged fact, it has nothing to do with Edible's diligence or participation in discovery. This deficiency allegation is simply late. Regardless, Edible did not produce documents related to this issue because it identified none, and therefore there are none on its privilege log.

- Defendants complain that Edible produced trademark watch notices showing the INCREDIBLES mark in 2016 but that there are no documents or privilege log entries related thereto. Again, Edible's "enforcement" production was made long ago, Edible did not produce documents related to this because it identified none, and therefore there are none on its privilege log.

- Defendants complain about Edible's sales information, which Edible produced <u>prior to its Rule 30(b)(6) deposition in early June</u>. Defendants have been aware of the scope of that production for more than a month prior to the close of discovery, but simply chose not to raise any further alleged deficiencies until the last hours of discovery.

- Defendants complain about missing prior litigation deposition transcripts, but the parties have conferred extensively about the fact that Defendants now possess everything that Defendants have requested related to prior litigations that is within Edible's and Edible's outside counsel's possession.

- Defendants complain about having fewer cannabis-related cease and desist letters

4

than they prefer (letters that Defendants have had possession of for months), but that is not a deficiency. It is the scope of Edible's collection and production.

*See generally* Dkt. 74-1.

It is only the last handful of alleged deficiencies in Defendants' email correspondence that Defendants attempt to tie to information revealed during recent depositions, but Defendants misrepresent those as well. Somia Farid Silber, Edible's Rule 30(b)(6) witness, was deposed on **June 10,** not "July 10" as misstated in Defendants' motion. That means Defendants had more than a month to raise any alleged deficiencies arising therefrom, follow the proper conferral process, and bring a motion for any disputes that reached an impasse.[1] They chose not to do so, and instead scrambled to "preserve" the issues by email on the last day of discovery.

Tariq Farid was deposed on July 11 only because Defendants demanded that Mr. Farid's deposition occur after Edible's Rule 30(b)(6) deposition. Regardless, Defendants have identified only three issues related to Mr. Farid:

1. The decision to move from "Edibles CBD" to "Incredible Edibles" as a brand name.
2. Due diligence and trademark searches relating to "Incredible Edibles."
3. Adword buys of "incredible" search term.

Edible's searches for and production of responsive documents related to Defendants' requests for production on these issues were completed more than a month ago. All three of these items were also the subject of Rule 30(b)(6) testimony from Ms. Farid Silber more than a month before the close of discovery. To the extent Ms. Farid Silber deferred to Mr. Farid on item No. 1 only, Mr. Farid provided the testimony that was within his knowledge. Mr. Farid's July 11 deposition is no

---

[1] Indeed, Defendants have turned around draft joint filings regarding discovery disputes in mere hours or days following arrival at an impasse, and even *prior to* the parties completing conferrals.

excuse for failing to timely allege deficiencies.

### 2. Defendants' Rejection of Mutuality in Raising Post-Discovery Disputes is Clear Gamesmanship that Should not be Endorsed or Rewarded

If Defendants truly believed that post-discovery motion practice on deficiencies is proper given recent document productions and still upcoming depositions, Defendants would have agreed to at least seek a <u>mutual</u> ability to raise deficiencies over the next month. Edible too will be taking a deposition of Defendants' CEO Kovler after the close of discovery at his first availability where new information could identify new deficiencies. Defendants also made a substantial production on July 8, 2022, one week before the close of discovery, of documents from predecessor in interest Medically Correct, whom Defendants spent all of discovery insisting were not involved in and should not be involved in this case. *See* **Exhibit 5** (July 7 email transmitting Medically Correct production). Only within the last week has it become clear that Defendants agree information from Medically Correct is needed in the case.

Most tellingly, however, after trying to secure a consent agreement from Edible for Defendants' own benefit on untimely raising alleged deficiencies, Defendants waited until near midnight on the last day of fact discovery (July 15) to produce <u>800 more documents</u> that Edible could never have even looked at before discovery closed. *See* **Exhibit 6** (July 15 email at 11:42 PM ET transmitting another production by Defendants). It raises a legitimate question whether Defendants intentionally sat on this belated production hoping Edible would have consented to Defendants' one-sided proposition earlier in the day not knowing Edible would later receive a midnight document dump. There are, therefore, equal reasons to permit Edible to allege deficiencies after the close of discovery under Defendants' argument, but Defendants continue to seek an unfair strategic advantage.

Edible strongly believes that, after more than a year of discovery, the parties should be held

to the close of discovery on July 15 except as to the two remaining depositions. If the Court is inclined to let Defendants' parade of last minute deficiency allegations continue, Edible at least seeks mutuality where it is entitled to raise its own deficiency allegations.

Dated: July 22, 2022

By: /s/ *John M. Bowler*
Robert E. Browne, Jr.
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
robert.browne@troutman.com
Tel: 312.759.1920

John M. Bowler
Lindsay M. Henner (*pro hac vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
john.bowler@troutman.com
lindsay.henner@troutman.com
Tel: 404.885.3000

*Attorneys for Plaintiffs Edible IP, LLC and Edible Arrangements LLC*

## CERTIFICATE OF SERVICE

I hereby certify July 22, 2022, I served the foregoing via ECF to Defendants' counsel of record.

/s/ *John M. Bowler*
John M. Bowler

7