IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>MC BRANDS, LLC; and GREEN THUMB INDUSTRIES INC.,<br><br>    Defendants. | Civil Action No. 4:20-cv-05840<br><br>**FILED UNDER SEAL** |
| MC BRANDS, LLC; and GREEN THUMB INDUSTRIES INC,<br><br>    Counterclaim-Plaintiffs,<br><br>v.<br><br>EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC,<br><br>    Counterclaim-Defendants. | |

**DEFENDANTS MC BRANDS, LLC'S AND GREEN THUMB INDUSTRIES INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEY FEES**

Green Thumb Industries Inc. and MC Brands, LLC ("GTI") move for a finding of "exceptional case" under the Lanham Act, 15 U.S.C. § 1117, and an award of reasonable attorney fees. Edible Arrangements never had *any* factual evidence to support its claim of trademark infringement and filed this case for the improper purpose of gatecrashing the edibles industry.

## I.     INTRODUCTION

Edible Arrangements knew its lawsuit was meritless from the beginning. It knew "edible" was a generic term in the cannabis industry. (Silber Dep., Ex. A, at 27:7-14; Sluben Dep., Ex. B, at 13:5-15; Bundonis WMG Dep., Ex. C, at 18:3-20:6.) It knew it did not have *any* evidence of consumer confusion despite the *ten years* the INCREDIBLES product had been on the market. (Farid Dep., Ex. D, at 25:13-27;24; Silber Dep., Ex. A, at 77:18-78:4, 124:12-15, 139:19-22.) It knew that consumers don't really think of Edible Arrangements as just "Edible;" it didn't even *begin* calling itself "Edible" until 2018 (Silber Dep., Ex. A, at 46:7-12), and when Edible Arrangements filed this lawsuit in 2020, only *five* of Edible Arrangements' 1,000 stores had adopted "Edible" as their store name. (Id. at 32:14-18, 33:23-35:4.) Edible Arrangements knew consumers of INCREDIBLES products *only* purchase those products at licensed dispensaries (Id. at 105:14-18) and that those consumers had a "vastly different" consumer experience compared to an Edible Arrangements store. (Id. at 108:2-12.) Most importantly, Edible Arrangements only launched its "Incredible Edibles" CBD[1] brand years *after* it became aware of the INCREDIBLES brand. (Farid Dep., Ex. D, at 131:2-19; Silber Dep., Ex. A, at 243:5-245:13.)

Edible Arrangements wanted a free ticket into the cannabis industry, so it crafted a Complaint referring to itself as "Edible" and claiming the "Edible" brand has "20 years of substantial and uninterrupted use, combined with extensive advertising and promotion." (*Compare*

---

[1] CBD products are derived from cannabis, but do not contain delta-9 THC and can be sold over the counter anywhere.

Compl. ¶ 24, *with* Silber Dep., Ex. A, at 32:14-18, 33:23-35:4.) It alleged that there were 1,100 "Edible" stores nationwide (Compl. ¶ 22), and its products are "instantly recognizable as an Edible product" (Id. ¶ 26). All of this is fiction. After nearly two years of discovery, Edible Arrangements' corporate designee finally admitted: "I don't have any factual evidence" of confusion. (Silber Dep., Ex. A, at 344:18-345:3.) Edible Arrangements never produced evidence supporting these allegations, and never even conducted a consumer survey.

## II. THE RELEVANT FACTS

### A. Edible Arrangements is a Fruit Basket Company

While Edible Arrangements fancifully describes itself as selling "floral arrangements made from fresh cut fruit instead of flowers," and markets itself as a "destination for food gifts and treats" (Silber Dep., Ex. A, at 214:2-6; 26:24-27:4), at the end of the day it's a fruit basket company, and that is how consumers perceive it. Edible Arrangements' own website metadata emphasizes fruit baskets:



Edible Arrangements
https://www.ediblearrangements.com

**Edible Arrangements® Fruit Baskets, Bouquets & Gift Delivery**
Edible Arrangements® is your go-to destination for Edible® gifts that are oh-so delicious and perfect for just about any occasion! Our handcrafted Edible® ...

**All Fruit Arrangements**
Shop Edible Arrangements® entire collection online! Fruit Baskets ...

Edible Arrangements claims its brand is relevant to the cannabis edibles industry because it offers "treats," but it only added these products to its lineup in 2018 (Id. at 193:20-195:16, 216:10-20), and was still rolling these products out to stores in 2020 (Id. at 216:20-20).

Edible Arrangements calls itself "Edible," but that is fiction. Its "rebrand" purportedly

2

began in 2018, but by 2020 only *five* of its *thousand* stores had changed their signage to "Edible." (Silber Dep., Ex. A, at 33:23-35:4, 46:7-12.) By June 2022, 25% of Edible Arrangements stores *still* had not rebranded. (Id. at 32:14-18.) Even now, it has not fully committed to calling itself "Edible." While it owns edible.com, hosts its website at ediblearrangements.com. In the metadata it feeds to Google (shown above) it still calls itself "Edible Arrangements."

Edible Arrangements alleges it sells other "confections" such as "chocolates" and "popcorn" (Compl. ¶ 22), but this is a half-truth. Edible Arrangements sells *other* brands' chocolates—Rocky Mountain Chocolate Factory, Godiva and Maddy and Maize products. (Silber Dep., Ex. A, 140:17-143:10, 208:5-210:9.) These products only joined Edible Arrangements' lineup in 2018. (Id. at 211:12-216:15).

Edible Arrangements has not produced evidence that consumers are even *aware* of their purported rebrand, or of the fact that they sell "treats." They did not conduct *any* consumer survey—not before filing this case, and not during this case—while GTI's expert report is unrebutted. (Hal Poret Report, Ex. E.) Further, because Edible Arrangements' roll-out of its purported "Edible-only" brand occurred slowly on a store-by-store basis, store-level sales data is needed to determine how many consumers were exposed to the new brand. Edible Arrangements never provided this information. (*See* Dkt. Nos. 93, 94, 98; Silber Dep., Ex. A, at 142:2-21.) Edible Arrangements also did not produce data which would demonstrate its advertising spend specifically relating to "Edible" confections or treats, either.

**B.  Edible Arrangements is a Johnny-Come-Lately to the Cannabis Industry**

Edible Arrangements has been biding its time for over a decade. GTI launched its INCREDIBLES brand in 2010. (Rudolph Dep., Ex. F, at 103:22-104:2; 130:10-131:3; INCREDIBLES Our Story webpage, Ex. G.) The INCREDIBLES brand received wide recognition from industry publications, including THC Championship, Best of Chicago, Clio Award, Las

3

Vegas Cannabis Award, BudFest, and GQ Magazine, among others. (Our Story webpage, Ex. G.) The INCREDIBLES product line includes chocolate bars, gummies, tarts, and mints. (Our Edibles webpage, Ex. H.)

Edible Arrangements knew about the INCREDIBLES brand long before it entered the cannabis industry. Edible Arrangements' 30(b)(6) witness testified that Edible Arrangements had decided to transition to "Edible" "10 to 15 years ago." (Silber Dep., Ex. A, 31:22-32:3.) Edible Arrangements' CEO admitted Edible Arrangements considered entering the cannabis industry as early as 2010. (Farid Dep., Ex. D, at 326:13-22.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Silber Dep., Ex. A, at 243:5-245:13.) Then, in 2019, just weeks before Edible Arrangements' first test sales of CBD products in a single store, Edible Arrangements' CEO wrote in an internal email:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In other words, Edible Arrangements plotted its entry into the cannabis industry for a decade, named its product line "Incredible Edibles" *after* learning of the INCREDIBLES brand, and then had the *chutzpah* to send *INCREDIBLES* a cease-and-desist letter.

Edible Arrangements tried to obliquely enter the cannabis industry by offering CBD-only products.[2] (Silber Dep., Ex. A, at 64:17-65:13; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] CBD-only products do not contain significant amounts of delta-9 THC, and therefore can be sold over-the counter, unlike INCREDIBLES products sold at dispensaries.

4

██████ In 2019 Edible Arrangements purportedly offered CBD powder at Dallas and Houston franchises, but it has not produced documents showing how much was sold or how many stores were involved. (Silber Dep., Ex. A, at 175:23-180:22.) In 2020, Edible Arrangements opened a brick-and-mortar Incredible Edibles location. (Id. at 64:21-65:17; Bundonis Dep., Ex. M, at 45:16-21, 175:10-19; Sluben Dep., Ex. B, at 19:3-11, 99:22-25.) It opened a second location in March 2021. (Id.) Both locations promptly failed and are now closed. (Silber Dep., Ex. A, at 339:1-7.)

Edible Arrangements' Johnny-come-lately efforts to join the cannabis industry were a commercial failure. ████████████████████████████████████████████████████████████ Edible Arrangements franchises no longer sell the Incredible Edibles products. (Silber Dep., Ex. A, at 339:1-7.) Edible Arrangements claims Incredible Edibles CBD products are now sold in highway rest stops and

---

3 ████████████

5

online but did not produce evidence of these sales. (Id. at 257:11-24, 258:1-8.)

      **C.    Edible Arrangements Knew its Stores are a "Vastly Different" Experience than a Cannabis Dispensary**

Edible Arrangements always knew that cannabis consumers have a "vastly different" consumer experience. Edible Arrangements stores are open to the public; there is no age requirement to enter, and customers do not show an ID to enter; there are no security guards. (Silber Dep., Ex. A, at 102:8-103:10; id. at 104:6-9.) Edible Arrangements customers can use cash, credit cards, and debit cards to pay for goods. (Id. at 102:8-103:10.) Edible Arrangements advertises on television and through paid advertising on Facebook and Instagram and has 900,000 followers on Facebook. (Id. at 114:16-23, 125:24-126:4.)

GTI's INCREDIBLES products are sold only at licensed cannabis dispensaries to consumers over 21 years old who show a valid ID. (Id. at 105:14-18.) In some states, consumers must also have a qualifying medical condition. (Rudolph Dep., Ex. F, at 134:16-135:22.) Dispensaries have products on display in locked glass cases for viewing only. (Silber Dep., Ex. A, at 105:24-106:3; INCREDIBLES Products In-Store, Ex. Q.) When a consumer chooses a product for purchase, a salesclerk retrieves the product from a secure area. (Silber Dep., Ex. A, 106:8-107:15; Tour of RISE Dispensary, Ex. R; Image of RISE Dispensary, Ex. S.) Dispensaries also have security guards to secure the entrance and check ID. (Silber Dep., Ex. A, 105:9-14; Tour of RISE Dispensary, Ex. R.)

Edible Arrangements' 30(b)(6) witness agreed this is a "vastly different" customer experience (Silber Dep., Ex. A, 108:2-12), and that the experience is different enough that a customer "couldn't possibly be confused into thinking they are at an Edible Arrangements store, if they are at a dispensary" (Id. at 108:14-21). Edible Arrangements is not aware of any customer going to a dispensary to order a fruit bouquet. (Id. at 109:1-8.)

6

INCREDIBLES edibles are not advertised on tv or via paid social media advertising. (Benchetrit Dep., Ex. T, at 177:19-179:5.) Because of this, GTI's INCREDIBLES brand has just over three thousand followers on Facebook—essentially zero compared to Edible Arrangements' 900,000 followers. (Silber Dep., Ex. A, at 131:20-132:2.) GTI's INCREDIBLES brand pages on Facebook, Instagram and Twitter are not accessible through searches; users must know the specific INCREDIBLES account name to find them. (Id. at 130:15-131:20.)

### D. Edible Arrangements Delayed Key Discovery

Edible Arrangements delayed discovery of key facts which contradict the fanciful narrative of its Complaint. For example, Edible Arrangements' Complaint touts "almost 1,200 Edible stores worldwide" (Compl ¶ 21) and "20 years of substantial and uninterrupted use" (Compl. ¶ 24). But when Edible Arrangements finally presented a 30(b)(6) witness in June of 2022, she revealed that only *five* of those stores were branded "edible" at the time the case was filed. (Silber Dep., Ex. A, at 33:23-35:4.)

Edible Arrangements' Complaint also alleges "Edible's success is a direct result of…Edible's marketing and promotion of the EDIBLE marks and brand." (Compl. ¶ 23.) But Edible Arrangements resisted producing any usable product advertising information for the entire litigation. It never produced data showing how much of this advertising and promotion was for "Edible" alone, and how much was for "confections," as opposed to fruit baskets—not even after the Court granted GTI's motion to compel. (Dkt. Nos. 91, 92, 98.)

Edible Arrangements' Complaint also alleges "Edible's system-wide revenue is in the hundreds of millions annually." (Compl. ¶ 23). But Edible Arrangements didn't produce store-level data, and only five stores were branded "Edible" at the time of filing. Even now, GTI is unable to determine precisely which products were sold in the Dallas CBD pilot, or how many "confections" were sold in the five stores which were branded "Edible" in 2018. The punchline,

7

which Edible's document production only revealed at the close of fact discovery, is that Edible's total nationwide sales of purportedly relevant products are essentially zero, measured in the ▮▮▮▮▮▮▮▮ of its overall sales.

In its effort to obtain discovery—discovery GTI long suspected would confirm that Edible Arrangements does not have *any* rights to the word "Edible" alone—GTI drafted a total of ten motions to compel, and ultimately filed five of them. (Dkt. Nos. 47-52, 91-94.) For the ones not filed, Edible Arrangements ultimately admitted it had no responsive documents to produce or produced documents after GTI served the motion to compel on Edible Arrangements. The Court extended the fact discovery deadline a total of six times as GTI attempted to pursue discovery and secure depositions. (*See* Dkt. Nos. 22, 30, 38, 41, 58, 78, 89.) After Edible Arrangements was forced to concede it never had "any factual information," Edible Arrangements attempted to dismiss the case—without prejudice, no less.

### III. LEGAL STANDARD

"The court in exceptional circumstances may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A case is "exceptional" when it "stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). This inquiry is done on a case-by-case basis considering the totality of the circumstances. *Id.*

Prior to the 2014 *Octane Fitness* decision, the 7th Circuit weighed the appropriate standard for assessing an exceptional case. In *Nightingale Home Healthcare, Inc. v. Anodyne Therapy LLC*, 626 F.3d 958, 960-61 (7th Cir. 2010), the Court noted that there "is the potential for businesses to use Lanham Act litigation for strategic purposes not to obtain a judgment or defeat a claim but to obtain a competitive advantage independent of the outcome of the case by piling litigation costs

8

on a competitor." 626 F.3d at 962. The Court concluded an "exceptional case" is one where the plaintiff filed the case for an "improper purpose." *Id.* at 963, 966. The Court also found that a claim which is "objectively unreasonable," that is "a claim…that a rational litigant would pursue only because it would impose disproportionate costs on his opponent" is exceptional. *Id.* at 965. Particularly, the 7th Circuit reasoned that delving into a party's *subjective* state of mind was not necessary for an exceptional case finding.

The 7th Circuit later adopted the Supreme Court's *Octane Fitness* standard for trademark cases. Courts consider a nonexclusive set of factors including, "frivolousness, motivation, objective unreasonableness…and the need in particular circumstances to advance considerations of compensation and deterrence." *LHO Chi. River, LLC v. Perillo*, 942 F.3d 384, 386 (7th Cir. 2019) (citing *Octane Fitness*, 572 U.S. at 554 n.6)). The standard of proof is a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 557-58.

**IV.    THIS CASE READILY "STANDS OUT" AS EXCEPTIONAL**

    **A.    GTI is the Prevailing Party**

When a plaintiff voluntarily dismisses its claims with prejudice, the opposing party is considered the "prevailing party" under Federal Rule of Civil Procedure 54. *See Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); *see also Sears, Roebuck & Co. v. Menard, Inc.*, No. 01-cv-9843, 2003 U.S. Dist. LEXIS 22246, at *10 (N.D. Ill. Dec. 11, 2003). This Court dismissed Plaintiffs' claims with prejudice pursuant to the Parties' Stipulation of Dismissal. (Dkts. 120-121.) Accordingly, GTI is the prevailing party in this case.

    **B.    Edible Arrangements' Case Was Objectively Unreasonable**

Edible Arrangements' case was objectively *and* subjectively unreasonable on the merits; it qualifies as exceptional even under the stricter, pre-*Octane Fitness* standard. ███████

9

███████████████████████████████████████████████████████████████ This is itself a fatal admission that Edible Arrangements did not yet have rights in the cannabis industry and that the INCREDIBLES brand already did.

Second, Edible Arrangements admits "edible" is a generic term in the cannabis industry. (Silber Dep., Ex. A, at 27:7-14; Sluben Dep., Ex. B, at 13:5-15; Bundonis WMG Dep., Ex. C, at 18:3-20:6.) Edible Arrangements has been considering transitioning to just "Edible" and entering the cannabis industry since at least 2010. (Silber Dep., Ex. A, 31:22-32:3; Farid Dep., Ex. D, at 326:13-22.) Yet, the cannabis industry has used the terms "edible" and "edibles" as the generic term for cannabis-infused baked goods, candy, and snacks for decades. (Dkt. No. 19 at 40-45.) There can be no dispute Edible Arrangements knew its case was doomed because it knew "edible" is generic.

Third, it is undisputed that Edible Arrangements did nothing to build brand recognition in the cannabis industry between 2010 and 2019. When it did finally get around to selling a product, it copied the INCREDIBLES brand name by calling its product "Incredible Edibles." Edible Arrangements' selection of its brand name was no accident.

Fourth, Edible Arrangements never presented credible evidence supporting *any* of likelihood of confusion factors necessary to win a trademark case. It presented:

- No evidence consumers consider the marks similar. When asked for evidence of this, Edible Arrangements offered only self-serving statements. (Silber Dep., Ex. A, at 91:15-92:21.)

- No evidence consumers consider the products similar. Despite referencing cookies, brownies, cheesecakes, and "confections" in its Complaint, Edible Arrangements presented no evidence any consumer considered these offerings similar to cannabis edibles.

- No evidence the area and manner of concurrent use overlap such that consumers would encounter the products in the same settings. Edible Arrangements' only "evidence" of this was that INCREDIBLES products are sold in some of the same states where Edible Arrangements stores are located. (Id. at 91:15-93:14.)

10

- No evidence that consumers exercise such a low degree of care they could be confused. Edible Arrangements admitted that cannabis consumers have a "vastly different consumer experience" and that consumers exercise a high degree of care when purchasing cannabis products. (Id. at 108:2-12, 136:8.)

- No evidence that Edible Arrangements' marks are "strong" in the cannabis industry, or indeed have *any* value in the cannabis industry.

- No evidence that GTI's INCREDIBLES brand had an intent to trade off its products as Edible Arrangements' products.

It is unsurprising that when GTI finally secured a 30(b)(6) deposition, Edible Arrangements' witness conceded "I don't have any factual evidence" of consumer confusion between GTI's INCREDIBLES-brand cannabis products and Edible Arrangements' products. (Id. at 77:18-78:3.)

Fifth, despite littering its Complaint with references to "20 years of continuous use," Edible Arrangements didn't ever actually *use* the phrase "edible" alone to identify itself to consumers in *any* industry. Even when Edible Arrangements purportedly began its "rebrand" in 2018, its logo *still* included a stylized image of a fruit basket. Edible Arrangements had changed the signage on a mere *five* stores before it filed its lawsuit. Edible Arrangements offers *no* evidence that this attempted rebranding ever "took" with consumers. Edible Arrangements did not even bother to present *any* consumer survey in support of its claims. The two brands have coexisted for *13 years*; if Edible Arrangements cannot show evidence of confusion, then there isn't any confusion.

Sixth, in contrast to Edible Arrangement's utter lack of evidence, GTI *did* conduct consumer surveys—which Edible Arrangements never even attempted to rebut—which unsurprisingly demonstrated both that "edible" is generic in the cannabis industry *and* that there is *zero* confusion among INCREDIBLES-brand consumers. (Expert Report of Hal Poret, Ex. E.)

Edible Arrangements' utter lack of evidence is sufficient for an exceptional case finding. *Bretford Mfg. Inc. v. Smith Sys. Mfg. Co.*, 389 F. Supp. 2d 983, 986 (N.D. Ill. 2005) ("[Plaintiff's] complete lack of any evidence of likelihood of confusion makes this an exceptional case…"); *See*

*also, S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) ("from the outset, [plaintiff] had no federally protected right to defend" and "no product to protect from infringement" and in over four years of litigation, plaintiff failed to produce key evidence such as sales information relating to "Sentra" brand computer software or hardware and advertising and packaging materials); *Bretford Mfg. Inc. v. Smith Sys. Mfg. Co.*, 389 F. Supp. 2d 983, 986 (N.D. Ill. 2005) ("[Plaintiff's] complete lack of any evidence of likelihood of confusion makes this an exceptional case in our view, and we will award reasonable fees for the work [defendant] was required to do in defense of the trade dress claim."); *Sears, Roebuck & Co. v. Menard, Inc.*, No. 01-cv-9843, 2003 U.S. Dist. LEXIS 22246, at *13-21 (N.D. Ill. Dec. 11, 2003) (finding case exceptional because plaintiff's allegations were meritless).

### C. Edible Arrangements' Case Was Filed for an Improper Purpose

The utter lack of merit in Edible Arrangements' case leads to a second conclusion: that the case was filed for an improper purpose. Edible Arrangements filed this case because it was looking for a windfall. Having sat on the sidelines of the cannabis industry for a decade, while hundreds of companies sold cannabis-infused edibles, Edible Arrangements wants to use its trademarks as a lottery ticket. This lawsuit was *not* an attempt to resolve the kind of competitive problems the Lanham Act was designed to address. It was an attempt to use expensive litigation to create a side-door into the cannabis industry, without having to do the actual work.

### D. Edible Arrangements Unreasonably Delayed Key Discovery

Edible Arrangements made this case as expensive and long as possible by stalling key discovery and depositions. While bad litigation conduct is not necessary to make an exceptional case finding, it certainly supports such a finding. *S Indus.*, 249 F.3d at 627 (finding case exceptional and awarding attorney fees in light of plaintiff's dilatory tactics).

It took two years of fact discovery for Edible Arrangements to concede what it tried to

gloss over in its Complaint. The close of fact discovery was extended in this case *six times*. (Dkt. Nos. 22, 30, 38, 41, 58, 89, 91-94, 98.) Edible Arrangements produced over a hundred thousand pages of documents in this case, but *none* of those documents showed that Edible Arrangements did not start its "rebranding" until 2018 and none of them showed it had only "rebranded" five stores at the time this case was filed. GTI had to wait until the June 10, 2022 30(b)(6) deposition of Edible Arrangements to get that information.

Throughout discovery, GTI's counsel served *10* motions to compel on Edible Arrangements. Five were ultimately filed with the Court, with Edible Arrangements either producing documents after receiving the motions to compel, or conceding that it had no responsive documents, for the other five. Edible Arrangements forced GTI to repeatedly request documents and engage in extensive and repetitive meet and confers, only to eventually concede that they had no documents to produce. (*See* 11/29/2021 Maiers Email, Ex. U; 2/18/2022 Henner Email, Ex. V; 3/23/2022 Henner Email, Ex. W; 5/31/2022 Bowler Email, Ex. X.) For example, GTI repeatedly sought information relating to Edible Arrangements' profits, only to later learn that Edible Arrangements was withdrawing its claim for lost profits. (2/14/2022 Nelson Letter, Ex. Y, at 2; Plfs.' Suppl. Resp. to Interrogatory No. 22, Ex. Z.) In the final months of the case, Edible Arrangements declined to produce advertising data that its 30(b)(6) witness said exists (Dkts. 91-92, 98), and after the Court ordered production of that data, Edible Arrangements said its witness was mistaken (11/21/2022 Altman Email, Ex. BB.)

Edible Arrangements also hid the ball on relevant witnesses. In its initial disclosures, Edible Arrangements identified a *single witness* as having information relevant to the case: CEO Tariq Farid. (Initial Disclosures, Ex. CC.) Review of the documents produced by Edible Arrangements revealed at least four witnesses who had substantial knowledge of Edible

13

Arrangements' forays into the cannabis industry: (1) Bill Sluben, Senior Director, Brand and Product Marketing for Edible Arrangements' Incredible Edibles product line; (2) Paul Bundonis, Brand President for Edible Arrangements' Incredible Edibles product line; (3) Somia Farid, Vice President, eCommerce, Edible Brands; and (4) Ron Reynolds, SVP and COO, Farids & Co. (essentially, Edible Arrangements). When the time came for Edible Arrangements' 30(b)(6) deposition, Edible Arrangements' CEO suddenly was not the only knowledgeable person at Edible Arrangements. Instead, Edible Arrangements designated his daughter, Somia Farid Silber, as a 30(b)(6) witness, even though she had *never* previously been disclosed as a witness with relevant knowledge. (5/13/2022 Henner Email, Ex. DD.) She was not included, for example, in searches of emails because she was not identified as someone who would have relevant information. At Ms. Farid Silber's deposition, it became clear that she did in fact possess relevant knowledge and should have been part of Edible Arrangements' disclosures all along.

All of this was a concerted effort to avoid producing or admitting the key facts set forth in this memorandum—that Edible Arrangements' Complaint was a farce.

### E. Edible Arrangements Pursued the Deposition of GTI's CEO for an Improper Purpose

Edible Arrangements also pursued the deposition of GTI's CEO, Ben Kovler, for the sole purpose of developing intelligence on the future of the cannabis business. When GTI moved for a protective order, Edible Arrangements represented to the Court that it needed to ask about "key agreements including GTI's acquisition of the INCREDIBLES name," "3,776 emails going to and coming from Mr. Kovler's personal email address," "negotiations with MC Brands," and a "cannabis product gift basket." (Dkt. 68 at 4.) Instead, Edible Arrangements asked:

[redacted]

14



### F. Edible Arrangements' Abandonment of its Case Does Not Save it From an Exceptional Case Finding

Edible Arrangements ultimately abandoned this case, first attempting to secure a "without prejudice" dismissal, and finally conceding to dismiss the case with prejudice. But this was far too little, too late. *See Sears, Roebuck & Co. v. Menard, Inc.*, No. 01-cv-9843, 2003 U.S. Dist. LEXIS 22246 (N.D. Ill. Dec. 11, 2003) (exceptional case despite dismissal); *see also*, Minute Order and Entry, *Sears, Roebuck & Co. v. Menard, Inc.*, No. 01-cv-9843, Dkt. Nos. 221-222 (N.D. Ill. Jan. 26, 2005) (awarding defendant $2,570,538.24 in fees, without deductions), attached as Ex. FF.

Edible Arrangements' change of heart was not motivated by altruism; it simply wanted to avoid a public, negative summary judgment ruling.

### V. CONCLUSION

For the aforementioned reasons, GTI respectfully requests that the Court declare this case exceptional and award GTI its reasonable attorneys' fees.

15

Respectfully submitted,

Dated: March 27, 2023

GREENBERG TRAURIG LLP

/s/ *Cameron Nelson*
Cameron Nelson
Eric J. Maiers
Maja E. Sherman
Katherine M. Cronin
Mikhael Tomlinson
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-6590
nelsonc@gtlaw.com
maierse@gtlaw.com
shermanm@gtlaw.com
cronink@gtlaw.com
tomlinsonm@gtlaw.com
*Attorneys for MC Brands, LLC and Green Thumb Industries Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon all counsel of record via the CM/ECF System on this 27th day of March, 2023.

/s/ Cameron M. Nelson

*Counsel for Defendants*