IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDIBLE IP, LLC & EDIBLE ARRANGEMENTS LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>MC BRANDS, LLC & GREEN THUMB INDUSTRIES, INC.,<br><br>  Defendants. | CIVIL ACTION<br>NO. 1:20-CV-5840 |

## PLAINTIFFS' RESPONSE TO MOTION FOR ATTORNEY FEES

Jason J. Carter
Georgia Bar No. 141669
carter@bmelaw.com
Solesse L. Altman
Georgia Bar No. 442827
altman@bmelaw.com
E. Allen Page
Georgia Bar No. 640163
page@bmelaw.com
BONDURANT, MIXSON
& ELMORE, LLP
1201 W Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
(404) 881-4100 – Telephone

Scott Hessell
IL ARDC #6275119
shessell@sperling-law.com
Timothy Sperling
IL ARDC #6293854
tsperling@sperling-law.com
SPERLING & SLATER, P.C.
55 West Monroe, Floor 32
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492

*Attorneys for Edible IP, LLC & Edible Arrangements, LLC*

## **Table of Contents**

**Introduction** ................................................................................................................... - 1 -

**Statement of Facts** ......................................................................................................... - 2 -

    1.    The Farm Bill and "Incredible Edibles" .............................................................. - 2 -

    2.    The Parties and the USPTO Identify a Likelihood of Confusion ...................... - 5 -

    3.    Subsequent Development and Litigation ........................................................... - 6 -

**Argument** ........................................................................................................................ - 7 -

    I.    **Edible's Litigating Position was Meritorious** ................................................ - 7 -

        A.    The USPTO Found a Likelihood of Confusion ............................................. - 8 -

        B.    GTI Previously Asserted that a Likelihood of Confusion Existed ............... - 10 -

        C.    Edible's Claims Fit Squarely Within Established Trademark Law.............. - 11 -

        D.    Edible's Claims Fit Alongside Other Post-Farm Bill Cannabis Cases ........ - 13 -

    II.    **Edible's Litigation Conduct Was Proper and Unexceptional** ..................... - 14 -

**Conclusion** .................................................................................................................... - 15 -

**Introduction**

Contrary to what the Defendants' (GTI's) Motion strains to say, this case is not "exceptional." It does not "stand[] out from other[]" cases either in (1) its substantive strength or in (2) the manner in which it was litigated. *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021). Notably, despite citing the 2019 Seventh Circuit decision in *LHO Chicago River*, GTI conveniently ignores the subsequent 2021 decision in the same case, in which the Court affirmed the district court's denial of a similar motion after a plaintiff voluntarily dismissed the case with prejudice, just as Edible did. This Court should likewise deny this Motion.

GTI's omission—whether intentional or otherwise—presages many other faults. Most importantly, GTI nowhere mentions that the USPTO previously found a likelihood of confusion between the "Incredibles" and "Incredible Edibles" marks. That fact alone precludes finding an exceptional case. *See Specht v. Google, Inc.*, 805 F. Supp. 2d 551, 557 (N.D. Ill. 2011) (plaintiffs "possessed reasonable grounds to file a likelihood-of-confusion suit against Google" because they "learned that [the USPTO] had denied Google's registration of the ANDROID mark on likelihood of confusion grounds"). That finding also accords with GTI's own stated position on the possibility of infringement in the cannabis market.

Nor does GTI address either the key precedent applicable to Edible's claims or the numerous other cases filed around the country that concern the same issue as this one. Well-established Circuit law allows a trademark suit to protect a party's "ability to enter product markets in which it does not now trade but into which it might reasonably be expected to expand in the future," which is exactly what Edible is doing. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992). And not just Edible: in the wake of the 2018 Farm Bill, plaintiffs around the country filed similar suits as they endeavor to assert their rights in new markets. *See,*

*e.g., BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 2022 WL 2820144, at *22 (D. Ariz. July 19, 2022). Many of those cases remain pending to this day. Yet nothing in GTI's Motion addresses Edible's reasonable expectation to expand into new and emerging markets.

Instead of addressing the applicable law, GTI casts aspersions: it states that Edible "tried to obliquely enter the cannabis industry by offering CBD-only products," Dkt. 127 at 5, and filed this case to try to create a "side-door into the cannabis industry" after "[sitting] on the sidelines of the cannabis industry for a decade," *id.* at 13. These statements are pure farce. It is as if GTI wants the Court to forget that **cannabis was and mostly still is illegal under U.S. law**. Edible isn't acting "obliquely" by selling CBD products, it is acting *legally*. Nor was Edible "sitting on the sidelines"—rather (unlike GTI), it was waiting for the game to become legal in the first place.

Similarly flimsy are GTI's screeds against Edible's discovery practices. As the Court well knows, discovery in this case was in no way exceptional. Both parties prevailed on discovery motions. And as Edible recently outlined, GTI itself improperly withheld its CEO's deposition testimony about key topics despite the Court ordering it to do so. So GTI's feigned indignation about Edible's conduct—either as a business or as a party in this case—offers no support for its position. In short, for any of a host of reasons, the Court should deny this Motion.

## Statement of Facts

GTI's recitation of the facts is slanted and is undermined by key parts of the evidence. Here is what actually happened:

**1.      The Farm Bill and "Incredible Edibles"**

In December 2018, President Trump signed the Farm Bill, which legalized CBD. ▮

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Previously, any sales of cannabis products, including GTI's "Incredibles" products, were illegal in the United States—something GTI itself acknowledges. *See* 30(b)(6) Deposition of C. Rudolph ("Rudolph 30(b)(6) Dep.") dated January 20, 2022, attached as Exhibit B, at 118. So while GTI had previously operated in a federal black market, Edible only sold legal food products without any cannabis, CBD or otherwise.

In selling those legal food products (again unlike GTI), Edible had developed longstanding trademark rights. Among those were the marks at issue in this litigation: the incontestable registered trademarks for the brand "Edible"—developed over time as part of a strategic expansion beyond the company's origin as "Edible Arrangements"—as well as the mark for the "Incredible Edibles" food product, for which Edible applied for registration in 2015.[1]



---

[1] At the time of the Complaint, the application for registration for the "Incredible Edibles" food product mark was pending, but the trademark was registered on August 10, 2021. *See* Trademark Reference No. 86503512, available at the Trademark Status & Document Retrieval database, tsdr.uspto.gov ("TSDR"). The Court may take judicial notice of TSDR records. *See Jones v. Hollywood Unlocked, Inc.*, No. 221CV07929MEMFPVCX, 2022 WL 18674460, at *4 (C.D. Cal. Nov. 22, 2022).

██████████████████████████████████████████████████
████████████████████████████████

Naturally, as part of its expansion, Edible sought trademark protection for its products. In June 2019, less than six months after the Farm Bill legalized CBD, Edible filed trademark registration applications for "Incredible Edibles" for "Dietary and nutritional supplements; nutritional supplement energy bars."[2] A month later, in July 2019, Edible filed trademark registration applications for "Edible CBD" for a variety of food products containing CBD.[3]

GTI wrongly contends that Edible's "Incredible Edibles" brand actually "copied" GTI's "Incredibles" brand. Dkt. 127 at 11. ████████████████████████████████

████████████████████████████████████████████████████████████████ But the evidence doesn't support that contention. ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ The simple reality is that Edible used "Incredible Edibles" for its brand because Edible *had the right* to use "Incredible Edibles" for its brand. Ex. C, Silber Dep. at 250.[4]

---

[2] *See* Trademark Reference No. 88479932. The trademark was officially registered on August 10, 2021.

[3] *See* Trademark Reference Nos. 88550573, 88550569, 88550565.

[4] In addition to being false, GTI's argument about copying undercuts its motion because such "copying" counsels *in favor* of there being a likelihood of confusion.

**2.    The Parties and the USPTO Identify a Likelihood of Confusion**

As explained above, Edible's management team became aware of GTI's highly similar marks in September 2019. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Then, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on September 30, 2019, GTI sought to register a trademark for "Medicinal herbal preparations containing industrial hemp seed oil and cannabidiol, derived directly from 'hemp' as defined in the 2018 Farm Bill, which contains less than 0.3% THC".[5] After primarily marketing its "Incredibles" mark for federally-illegal THC products, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ GTI subsequently attempted to secure trademark rights that it otherwise could not obtain prior to the passage of the Farm Bill.

But GTI's application for the "Incredibles" mark ran into a predictable problem: in April 2020, the USPTO told GTI that Edible had prior pending applications for "Incredible Edibles," and that given the similarity of the products and marks, if Edible's application were to be approved, GTI's "mark may be refused registration under Trademark Act Section 2(d) *because of a likelihood of confusion with the registered mark(s)*." USPTO Office Action Letter dated April 10, 2020, attached as Ex. F at 2 (emphasis added). GTI did not challenge that finding, but rather "request[ed] that its application be suspended until such time as the remaining Prior Pending Applications register or lapse." GTI Response to Office Action Letter dated October 13, 2020, attached as Ex. G, at 7. As a result, GTI's application was suspended until action on Edible's applications.

This came as no surprise to GTI because GTI had already acknowledged that there was a likelihood of confusion. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[5] *See* Trademark Reference No. 88636987.



### 3. Subsequent Development and Litigation

Over the following year, Edible continued to develop the "Incredible Edibles" brand. ▌

In September 2020, ▌ Edible initiated this lawsuit against GTI. Given Edible's need to protect its brand, ▌ and the USPTO's finding of a potential likelihood of confusion between Edible's and GTI's product lines, pursuing the lawsuit was eminently reasonable.

Equally as reasonable was Edible's decision to stop pursuing its claims two years later. After discovery was completed, and given the significant and ongoing changes in the state of the law since the filing of the complaint, Edible made the strategic decision that any potential

trademark claims related to cannabis would be better litigated in the future. As such, it voluntarily dismissed its claims pursuant to an agreement with GTI.

Now, apparently dissatisfied with Edible's decision, GTI seeks to recover its attorney's fees. But it lacks any basis for doing so. Its Motion should be denied.

## Argument

Under *current* Seventh Circuit law,[6] "a case can be 'exceptional' if the court determines, under the totality of the circumstances, that it 'stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated.' *LHO Chicago River*, 988 F.3d at 967 (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). As the below shows, Edible's case does not stand out under *either* measure.

### I. Edible's Litigating Position was Meritorious

This case is plainly unexceptional under the governing standards. GTI rehashes arguments for summary judgment, but Edible is not required to prove it would win; rather, GTI is required to prove that this case "stands out" from other cases considering "both the governing law and the facts of the case." *LHO Chicago River*, 988 F.3d at 967. In determining whether GTI meets that burden, the Court "need not consider any inflexible set of elements to determine whether the factual or legal weaknesses of a party's litigating position make a case exceptional. Relevant considerations at least include 'frivolousness' and 'objective unreasonableness.'" *Id.*

GTI utterly fails to meet its burden. As an initial matter, GTI completely omits the key facts leading up to the lawsuit—namely, that (1) the USPTO identified that there may be a

---

[6] Despite originally citing the correct Supreme Court case, GTI bizarrely refers to outdated circuit precedent. Dkt. 127 at 9-10. The Court can disregard that discussion.

- 7 -

likelihood of confusion between the marks, and (2) GTI itself took the position that there was a likelihood of confusion between the marks. Those facts alone mean that Edible's decision to pursue the lawsuit was neither "'frivolous[]' nor 'objective[ly]' unreasonable[].'" *Id.*

Beyond that, Edible's claims in the lawsuit were meritorious, fitting comfortably both within circuit precedent and alongside similar cases around the country. In its Motion, GTI hardly discusses the applicable trademark law, much less the still developing cannabis law and raft of other cannabis cases that followed the Farm Bill. Given these deficiencies, GTI's suggestion that Edible's claims lack merit fails to satisfy its high burden here. Instead, it merely reflects the same basic refrain of all who believe they have prevailed and seek fees. *See, e.g., id.* at 968 (defendants argued that it was "'impossible to conceive of a weaker case'"; yet the court denied their motion for fees). For a variety of reasons, Edible's position was and is strong, and thus is not exceptional so as to warrant an award of fees.

### A. The USPTO Found a Likelihood of Confusion

A lawsuit filed after the USPTO denied the defendant's application due to likelihood of confusion with the plaintiff's mark is not an "exceptional case." *See Specht*, 805 F. Supp. 2d at 557. The court in *Specht* held that factor alone to be sufficient: the plaintiffs "learned that the [USPTO] had denied Google's registration of the ANDROID mark on likelihood of confusion grounds. They possessed reasonable grounds to file a likelihood-of-confusion suit against Google." *Id.* Indeed, the court denied Google's motion even though (1) the Court previously entered summary judgment against the plaintiffs and (2) the plaintiffs essentially admitted that their attorney violated Rule 11(b) by filing a complaint with a wholly unsupported counterfeiting charge. *Id.* at 558. Neither of those are true here.

The Court should similarly deny GTI's motion, given the USPTO's finding that GTI's "mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of

confusion with the registered mark(s)." Ex. F at 2. GTI wholly ignores *Specht* in its Motion, and any attempt to distinguish it on reply would be futile.

*First*, although *Specht* was decided prior to the reformulation of the standard for an "exceptional case," that does not change the result. *Specht* predated *Octane Fitness* and so was technically decided under the old standard, which dictated that a case was exceptional if the plaintiff was "'guilty of abuse of process in suing.'" *Id.* at 557. But the Court still addressed the same two factors: (1) the strength of the party's case, and (2) the litigation conduct. It ultimately determined that the USPTO's finding superseded both. The same logic applies under the new standard, which, as noted above, remains sufficiently flexible to take into account the totality of the circumstances.

*Second*, although *Specht* involved a prior registered mark, rather than a prior pending application, that does not change the result, either as a legal or a factual matter. From a factual standpoint, though the USPTO originally paused GTI's application, rather than denying it outright, Edible's application has since been officially registered, meaning that the mark itself was deemed worthy of protection, and that Edible in fact had the rights it claimed. And from a legal standpoint, the underlying principle—the likelihood of confusion—is subject to the same considerations regardless of whether the registration is longstanding or the application newly sought, particularly given trademark law's protections of a plaintiff's "ability to enter product markets in which it does not now trade but into which it might reasonably be expected to expand in the future." *Sands, Taylor & Wood Co.*, 978 F.2d at 958.

*Third*, and relatedly, the fact that the USPTO merely suspended GTI's application, rather than denying it outright, does not change the result. Even if the USPTO only identified the issue for a future determination, nothing required Edible to wait until its mark was registered; black

letter law dictates that "[t]he owner of an unregistered mark may still use it in commerce and enforce it against infringers." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2297 (2019).

Ultimately, the conclusion is straightforward: when the USPTO—the agency charged with regulating trademarks—identifies a likelihood of confusion between the marks, that means that a lawsuit to resolve that particular issue is neither "'frivolous[]' nor 'objective[ly] unreasonable[].'" *LHO Chicago River*, 988 F.3d at 967. That conclusion belies GTI's belabored and belated efforts to distort the issues in this case. And while this Court undoubtedly has discretion to determine whether this case is "exceptional," by ignoring the USPTO's determination, GTI invites the Court to abuse that discretion. The Court should reject GTI's invitation to error.

### B. GTI Previously Asserted that a Likelihood of Confusion Existed

The USPTO wasn't the only entity to identify a potential likelihood of confusion: ▉ ▉ ▉ ▉ ▉ GTI's current arguments that there is no likelihood of confusion are therefore contradicted by its prior statements.

To be sure, GTI's pre-litigation cease and desist letter does not mean it waived its argument to the contrary. ▉ ▉ And, more importantly, it means that in the months leading up to the lawsuit, GTI identified the same likelihood of confusion that Edible did. ▉ ▉

███████████████████████████████████████ Given that GTI teed up the controversy, the lawsuit Edible brought to resolve that controversy cannot be considered "'frivolous[]' nor 'objective[ly] unreasonable[].'" *LHO Chicago River*, 988 F.3d at 967.

### C. Edible's Claims Fit Squarely Within Established Trademark Law

"Incredible Edibles" and "Incredibles" are incredibly similar marks. So it is not surprising that the USPTO and GTI shared Edible's concern over a likelihood of confusion for food products and supplements using those marks. And that is before considering the apparent visual similarity between "Incredibles" and Edible's brand logo:

**edible** **incredibles**

*See* Dkt. 1 at ¶ 60.[7] Indeed, the "'similarity of the marks'" is one of the "most important" of the seven factors identified by the Seventh Circuit for establishing a likelihood of confusion. *Uncommon, LLC*, 926 F.3d at 425. The pertinent test involves a consideration of those seven factors, and "[n]o one factor is dispositive." *Id.*

Even a passing glance at the seven relevant factors belies GTI's conclusion. Again, for purposes of this Motion, Edible is not required to prove *any* of those facts or make out an affirmative case for trademark infringement; it is only required to rebut GTI's baseless assertion that its case was exceptionally weak. That burden is easily satisfied, given that the first and one of the "most important" factors—the similarity of the marks—weighs so strongly in Edible's favor.

And the second and third factors—the similarity of the products and the area and manner of use—do too, particularly with respect to Edible's forward-looking contentions about the CBD

---

[7] The branding of the "Incredibles" logo is also similar to that found on the "Incredible Edibles" products. *See* https://www.incredibleedibles.com/shop/edibles/12.

market. Edible alleged (and would have argued) that as it expanded its brand into CBD products and as GTI potentially did the same, the parties would increasingly operate in 'convergent marketing channels'—essentially selling the same products. *BBK Tobacco & Foods LLP*, 615 F. Supp. 3d 982, 1021 (D. Ariz. 2022). Those contentions regarding market convergence fit under longstanding Seventh Circuit authority that trademark infringement rights protect a mark owner's "ability to enter product markets in which it does not now trade but into which it might reasonably be expected to expand in the future." *Sands, Taylor & Wood Co.*, 978 F.2d at 958. Yet GTI doesn't address these forward-looking allegations regarding CBD at all, instead myopically focusing only on Edible's backward-looking allegations.[8]

Those contentions, though not adjudicated, are also well-supported by the evidence. GTI's expert testified expressly that "likelihood of confusion is usually forward looking, not just what's happening in the moment, but the likelihood of confusion going forward." Deposition of H. Poret ("Poret Dep.") dated November 29, 2022, attached as Exhibit I, at 27. Moreover, the parties both sold CBD-only products through e-commerce channels. Edible, as already noted above, does so via its "Incredible Edibles" brand. At the time of the lawsuit, GTI had applied for trademark registration for CBD-only "Incredibles" products. (Of course, as noted, the USPTO suspended this application.) And shortly thereafter, GTI began to sell CBD-only products through online channels. Ex. B, Rudolph 30(b)(6) Dep. at 66. Thus, Edible's premise—that the parties would be selling the same products, with similar marks, in the same channels, was exactly correct.

---

[8] The backward-looking allegations centered on the theory that GTI's sales of food products with THC infringed on Edible's sale of food products without THC (or CBD, for that matter). As Edible explained in its Motion to Dismiss [Dkt. 109], that theory was reasonable based on the parties' understanding of the relevant facts and the developing state of the law at the time of filing. But in light of what Edible learned from fact discovery here as well as subsequent developments in similar cases involving cannabis where courts distinguished between THC and non-THC products, *see, e.g., BBK Tobacco & Foods LLP*, 2022 WL 2820144, at *22, Edible made the eminently reasonable decision not to pursue that theory further at this time. *See* Dkt. 109.

On the other hand, GTI's cherry-picked contentions about actual confusion are belied by the evidence. GTI states that there was "[n]o evidence consumers consider the marks similar." Dkt. 127 as 12. Not true. Edible's CEO testified expressly that there were instances of actual confusion of which he was aware. Ex. A, Farid Dep. at 236. GTI also states that its expert report shows there "is *zero* confusion among INCREDIBLES-brand consumers." Dkt. 127 at 12 (emphasis in original). Also patently not true. The expert report found no confusion with the brand "Edible Arrangements"; but on the ***very next page*** of his report, he noted that several customers reported confusion with "Incredible Edibles." Dkt. 127-5 at 42-43. GTI again simply ignores evidence that doesn't support its strawman theory of the case.

On this point, GTI's citation to *Bretford Manufacturing, Inc. v. Smith Systems Manufacturing. Co.*, 389 F. Supp. 2d 983, 985 (N.D. Ill. 2005) does it no favors. That case involved a plaintiff who, due to a misunderstanding of the applicable law, did not believe that likelihood of confusion was a necessary element in a trade dress claim. As a result, there was "no evidence that the similarity of [the] design, or other trade dress, would be likely to confuse consumers as to the source of the tables." *Id.* at 984–85. The Court found that complete absence, based on the legal error about a necessary element, to be exceptional. *Id.* at 986. Beyond being a case involving a different kind of claim, that conclusion is a far cry from this case.

### D. Edible's Claims Fit Alongside Other Post-Farm Bill Cannabis Cases

In addition to binding circuit precedent, Edible's case fits alongside other recent cases addressing the contours of trademark law as it applies to cannabis—both CBD and THC. In *Jergenson v. Inhale International Ltd.*, No. 22 CV 2040, 2022 WL 3908618, at *5 (N.D. Ill. Aug. 30, 2022), for example, a court in this district upheld an injunction on behalf of a longtime pipe-maker who obtained trademarks after the passage of the Farm Bill and whose pipes were intended for use, at least in part, for marijuana. In *Woodstock Ventures, LC v. Woodstock Roots LLC*, 837

F. App'x 837 (2d Cir. 2021), the Second Circuit upheld a district court's denial of an injunction in a trademark infringement suit between two smoking paraphernalia manufacturers. And in *BBK Tobacco & Foods LLP*, 2022 WL 2820144, at *22, a district court similarly ruled that a smoking paraphernalia seller could not challenge a product that was similar except that it was made for THC. Although early rulings in the latter cases declined to enforce trademark rights against potential THC-marketer infringers, there is no suggestion in the courts' considerations that those cases were exceptional. And there is nothing about Edible's case that "stands out" from those.

**II.  Edible's Litigation Conduct Was Proper and Unexceptional**

As the Court well knows from the record, Edible's litigation conduct in this case was proper and unexceptional. Yet GTI, despite conceding that it received "over a hundred thousand pages of documents" and took all the depositions it sought, argues that Edible engaged in "bad litigation conduct." Dkt. 127 at 13-14. GTI primarily cites discovery squabbles, and even there, it fudges the record. It first talks about "extensions to discovery," but, among its record cites are the court setting the initial discovery schedule [Dkt. 22] and a plethora of ***joint*** motions. *See, e.g.,* Dkt. 28, 36, 40. In those motions, ***which counsel for GTI signed***, the parties indicated that the extensions were "with good cause." GTI's retroactive about-face does not accurately reflect the record.

Its references to motions to compel are misleading too. In framing its one-sided portrait of the discovery record, GTI omits that it filed a frivolous protective order, which the Court denied. *See* Dkt. 72 at 9. And of the five Motions it filed, it hardly can be said that GTI "won" all those motions outright. If need be, the Court can review its transcript on those motions [Dkt. 73] to see that the Court either accepted Edible's proposal (*Id.* at 11), declined to provide the relief the Defendants sought (*Id.* at 17), or narrowed Defendants overly broad motion (*Id.* at 26–28). In so doing, the Court then gently admonished ***both*** sides to try to work better together—hardly an

indictment of Edible alone. GTI's self-aggrandizement stretches the reality of this case, but the truth is simple: this was an ordinary lawsuit, involving some back and forth around discovery of documents, which led to disagreements between the parties, which were eventually resolved.

As for Edible's deposition of GTI's CEO, the topics Edible discussed were entirely appropriate and in keeping with *the Court's order compelling that testimony*. Dkt. 72 at 3, 9–10. Rather, it was GTI that improperly withheld that testimony, and did so after the Court denied its motion for a protective order. As Edible argued previously in its Motion to Dismiss, if the case had continued, Edible would have moved this Court to compel the testimony that counsel improperly instructed GTI's CEO not to answer during his deposition.

Finally, and most significantly, Edible's decision to voluntarily dismiss this case is the culmination of its reasonable conduct. Upon a determination that this case was better adjudicated in the future, Edible immediately moved the Court, forestalling any further effort needed on the part of the defendants to mount their defense. The case was settled without any dispositive motions required. Yet somehow, GTI endeavors to spin even that into its false narrative about Edible's "bad litigation conduct." Edible should not be punished for choosing to dismiss its case.

## Conclusion

This case was objectively reasonable in its inception, and it was reasonably litigated throughout. Nothing about it stands out from other cases to render it "exceptional" so as to warrant an award of attorney's fees. GTI's motion is therefore due to be denied.

*Signatures appear on the following page.*

Respectfully submitted this 5th day of May, 2023,

/**s**/ *Jason J. Carter*
Jason J. Carter
Georgia Bar No. 141669
carter@bmelaw.com
Solesse L. Altman
Georgia Bar No. 442827
altman@bmelaw.com
E. Allen Page
Georgia Bar No. 640163
page@bmelaw.com
BONDURANT, MIXSON
& ELMORE, LLP
1201 W Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
(404) 881-4100 – Telephone

Scott Hessell
IL ARDC #6275119
shessell@sperling-law.com
Timothy Sperling
IL ARDC #6293854
tsperling@sperling-law.com
SPERLING & SLATER, P.C.
55 West Monroe, Floor 32
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492

*Attorneys for Edible IP, LLC & Edible Arrangements, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was electronically filed this day with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all parties of record.

                                                  /s/ Jason J. Carter
                                                  Jason J. Carter