**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC, | Civil Action No. 4:20-cv-05840 |
| Plaintiffs, | ███████████████ |
| v. | |
| MC BRANDS, LLC; and GREEN THUMB INDUSTRIES INC., | |
| Defendants. | |
| MC BRANDS, LLC; and GREEN THUMB INDUSTRIES INC, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| EDIBLE IP, LLC; and EDIBLE ARRANGEMENTS, LLC, | |
| Counterclaim-Defendants. | |

**<u>DEFENDANTS MC BRANDS, LLC'S AND GREEN THUMB INDUSTRIES INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEY FEES</u>**

Green Thumb Industries Inc. and MC Brands, LLC ("GTI"), respectfully submit this reply brief in support of its motion for a finding of "exceptional case" under the Lanham Act, 15 U.S.C. § 1117, and an award of reasonable attorneys' fees.

## I.    INTRODUCTION

Plaintiffs Edible IP, LLC, and Edible Arrangements, LLC ("EA"), had no evidence that GTI infringed its fruit basket trademarks when this lawsuit commenced. EA had no evidence of infringement during the lengthy fact discovery phase necessitated by EA's persistent delays. EA had no evidence of infringement when it continued to litigate this case even *after* the magistrate judge told EA its infringement claims were meritless. Now, after two-and-a-half years of arguing it owns the word "edible," EA suddenly claims its lawsuit was really about its fledgling, and commercially failing, Incredible Edibles CBD brand. EA's pivot is a tacit admission that its trademark infringement claims were baseless from the start.

## II.    ARGUMENT

### A.    Plaintiffs' Trademark Infringement Claims Were Objectively Unreasonable

The "evidence" that EA points to in arguing that its claims "fit squarely within established trademark law" only reinforces why EA's case was meritless.

First, EA's argument that the marks are similar (Dkt. 133 at 11) is dishonest. EA presents the following comparison in support of its claim:



These images—originally included in EA's Complaint—is a perfect example of EA's approach to this entire case. Ignoring the fact that the marks are not at all visually similar, *neither* the "edible"

logo *nor* the "incredibles" logo in is accurate. The "edible" logo is misleading because EA doesn't

actually *use* the phrase "edible" alone; it always has a stylized fruit basket next to it. (Dkt. 133 at

11.) The "incredibles" logo is misleading because it is an old version of the logo that GTI dropped,

due to a rebranding, *before* EA filed this lawsuit. An *honest* side-by-side of the companies' logos

would look like:



Edible-only logo which existed on EA website at some point in 2018, and at 5 real-world stores at time lawsuit was filed.



Incredibles Logo as it appears on the website, and as it appeared at the time this case was filed.

A more complete, honest comparison of the logos, as consumers encounter them, would also note

that the Incredibles logo changes color schemes depending on the product:









GTI's INCREDIBLES logo also has a distinctive bite taken out of the "e," an element that has

persisted in GTI's branding for over a decade and that never existed in EA's advertising. The

images in EA's reply brief (carried over from its equally misleading Complaint) are just one of the

2

many little fictions EA concocted to make its case *appear* to have merit when it did not. That EA is *still* using misleading images when responding to a *fees motion* only highlights why this case is exceptional.

Second, while EA spends much of its response discussing its fledgling "Incredible Edibles" CBD brand, EA is again misleading the Court. In its extensive discussion of the Farm Bill and "Incredible Edibles," EA states an application for an "'Incredible Edibles' food product" registered while this case was pending. But what EA conveniently omits is that registration has nothing to do with CBD or the Farm bill. It relates solely to a $1,500-$2,000 fruit basket, which has ███████ sales. (*See* U.S. Trademark Reg. No. 6448981 (App. No. 86503512) for INCREDIBLE EDIBLES for "Fresh fruit cut into shapes and displayed in containers as floral designs; processed fruits; arrangements made of fresh processed fruit.", Ex. 1; "Incredible Edible" Product Listing, Ex. 2; "Incredible Edible" Sales Info, Ex. 3.) Nothing about this singular, rarely-sold product changes the fact that no one has—or ever will—confuse fruit baskets with cannabis-infused edibles.

Third, EA tacitly admits its case never had merit in its argument about "backward looking" and "forward looking" allegations. In a footnote, EA admits that its "backward-looking allegations"[1] of its Complaint were based on a theory that "GTI's sales of food products with THC infringed on Edible's sale of food products without THC." EA claims it had a case because of the "developing state of the law at the time of filing," but this is nonsense. EA knew at the time it filed this case as a matter of *fact* that no consumer had ever confused GTI's Incredibles products with EA's fruit baskets and that THC products were sold in an entirely different retail environment that make confusion impossible. EA has identified no law nor legal decision that explains how it was

---

[1] EA's Complaint was never "backward-looking," unless EA is referring here to its misleading use of old logos in that document.

justified in ignoring these facts and filing this case anyway. EA's distinction between "backward-looking" and "forward-looking" allegations is absurd;[2] it *did* include the forward-looking allegation that "cannabis-related products are within the zone of Edible's natural expansion" in its Complaint. (Dkt. 1, ¶¶ 68, 75.) EA simply never offered a shred of evidence to support these allegations.

No consumer would reasonably think that EA's fruit baskets and baked goods come from the same source as GTI's INCREDIBLES-brand cannabis-infused edibles. *See Sullivan v. CBS Corp.*, 385 F.3d 772, 778-79 (7th Cir. 2004) (citing *Ty, Inc.*, 237 F.3d at 900) (CDs and merchandise were not similar when relating to different music genres). EA never offered any evidence to the contrary—not for the past, and not for the future. EA's corporate designee conceded that EA had no factual evidence to support an assertion that the parties' products are "similar,". (Silber Dep., Dkt. 127-1, at 76:21-79:2.) In over two years of litigation, EA produced *nothing* in support of its argument that the parties' products are similar. (*See* Dkt. 133.)

Fourth, GTI welcomes the Court's close attention to EA's argument that its "CEO testified expressly that there were instances of actual confusion of which he was aware." He certainly did say this. He claimed that somebody "told me they experienced our [Edible Arrangements'] product at a dispensary. They thought it was our product." (Farid Dep., Ex. 4, 51:8-54:3.) But he couldn't say *who* told him this, and he couldn't recall the *precise* conversation. He also claims this conversation prompted him to visit a dispensary, buy samples and take pictures that he gave to his counsel, yet he doesn't know where those are. (Id. at 54:9-15; 57:24-58:1; 64:9-66:9; 70:13-15.) He was purportedly "shocked" when he first saw an INCREDIBLES product but can't provide a

---

[2] The Court should take note that EA appears to be lining up arguments to file yet another lawsuit, by drawing a bogus distinction between "forward looking" and "backward looking" allegations.

single corroborating detail or document. (Id.) Similarly, he alleged that "many" people have walked into Edible Arrangements stores in Colorado and California asking to buy THC edibles. (Id. at 131:21-173:22.) Once again, despite this purportedly happening "many" times, EA has not produced a *single* document to corroborate its CEO's story. If EA had evidence these things its CEO said were true, it would have produced it, at the very least in response to this motion. But here we are, years after EA filed this lawsuit, and it cannot produce a *single* email, text message, or other document indicating a consumer was confused.

This evidence isn't merely "misplaced," it never existed. EA's designated 30(b)(6) witness (and the CEO's daughter) conceded that EA *never* had any evidence of actual confusion, a factor "universally acknowledged to be of special significance." (Silber Dep., Dkt. 127-1, at 77:18-78:4, 124:12-15, 139:19-22.) *Hydrox Chem. Co. v. Diversey, Inc.*, 2015 U.S. Dist. LEXIS 36276, at *39 (N.D. Ill. Mar. 23, 2015) (citing *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000)). This is particularly significant given the parties' peaceful coexistence since 2010. (Rudolph Dep., Dkt. 127-6, at 24:23-25); *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645, 1659-61 (TTAB 2010), *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011) (no evidence of any actual confusion by consumers during a substantial period of overlap favors finding no likelihood of confusion).

Fifth, EA has offered no evidence that GTI intended to cause confusion. *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 426 (7th Cir. 2019) (noting defendant's intent and actual confusion factors particularly important).

Sixth, EA did not bother to submit an expert report supporting its claims, and its attempts to attack GTI's expert are again misleading. (Dkt. 133 at 13.) GTI's likelihood of confusion survey did not just test for confusion with the "brand 'Edible Arrangements,'" but rather it tested for *any*

brand confusion, including EA's "Incredible Edibles." (Poret Dep., Ex. 5, at 43:25-44:17.) Further, while four of 200 respondents initially identified "Incredible Edibles" as the company or brand that puts out GTI's INCREDIBLES-brand cannabis-infused edibles products, GTI's expert explained that based on those respondents' answers to the question Q230, "What makes you think the products we showed you are made or put out by Incredible Edibles?", the respondents were not thinking of EA:

| ID | Q220 | Q230 |
|---|---|---|
| 3267 | Incredible Edibles | I read that on the label |
| 4338 | Incredible Edibles | Name on each of the packages/containers |
| 4718 | Incredible Edibles | The phrasing on the boxes |
| 4752 | Incredible Edibles | I believe that was the name on the packaging. It was like Incredible Edibles IncrEdibles or something cute like that. |

(Poret Rpt., Dkt. 127-5, at 42-43.) None of the above responses refer to EA. Moreover, even if those four respondents were confused, the resulting 2% "confusion" would fall well below the accepted threshold for finding likelihood of confusion based on consumer surveys. *See, e.g.*, *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 358 (7th Cir. 1983) (finding 7.6% confusion rate "weighs against infringement"); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (finding 2% respondent confusion "showed an absence of significant confusion").

Seventh, EA never had any evidence that the area or manner of concurrent use of the parties' products are similar. (Dkt. 133 at 12-13.) Courts in the Seventh Circuit consider the "degree of overlap of promotion, distribution, and sales of the parties' goods or services, including the geographical area of distribution, any evidence of direct competition between the relevant products, whether the products are sold in the same stores, and whether the products are sold using the same means of advertising." *Bobak Sausage Co. v. A&J Seven Bridges, Inc.*, 805 F. Supp. 2d

503, 516-17 (N.D. Ill. 2011). EA's corporate designee admitted that no such overlap or competition exists. (Silber Dep., Dkt. 127-1, at 74:17-75:5, 122:2-135:3.) Most glaring is that GTI's cannabis-infused products are exclusively sold in state-licensed cannabis dispensaries, subject to strict regulations, and even EA's corporate designee conceded this is a "vastly different customer experience" than EA's retail stores. (Silber Dep., Dkt. 127-1, at 107:6-108:12.) EA's argument that the second and third likelihood of confusion factors support the merit of its case is unsupported by any evidence and divorced from reality. (Dkt. 133 at 11-12.)

EA always knew that it had no evidence of confusion, and that this case was never more than an opportunistic shot at obtaining trademark rights in the cannabis industry through litigation. EA cannot paint itself as "reasonable" after pursuing a baseless case for over two years and then throwing in the towel at the last minute to avoid a summary judgment ruling.[3] An assessment of key likelihood of confusion factors supports that this case should be found "exceptional" under § 1117.

### B. Neither USPTO Rulings Nor Pre-Litigation Letters Can Make a Meritless Case Meritorious

#### i. The USPTO Ruling is Not Relevant

EA asserts—for the first time in this case—that there is a likelihood of confusion because the USPTO says so and that this cannot be an exceptional case if the USPTO thinks there is a likelihood of confusion. (Dkt. 133 at 8; Dkt. 133-6.) This argument is both misleading (the USPTO did not make such a finding), and wrong (even if it did, that does not preclude an exceptional case because this court has access to facts the USPTO did not).

At the outset, EA's Complaint defined the "EDIBLE Marks" as the seven "edible" and

---

[3] Nevertheless, EA's dismissal of its claims *with* prejudice is the legal equivalent of judgement on all counts of the Complaint in GTI's favor.

"edible arrangements" registrations for fruit basket goods (Dkt. 1, ¶¶ 33-34), and defined the "INCREDIBLE EDIBLE Mark" (singular), as Reg. No. 5,950,393, also for fruit basket goods (Dkt. 1, ¶ 49). The Complaint references pending applications, but these are all "fruit basket" applications. (Dkt. 1, ¶ 50.) The Complaint does not reference a single "Incredible Edibles" trademark application or registration for CBD goods. It's fruit baskets all the way through.

EA certainly made its new "Incredible Edibles" CBD products and brand part of discovery this litigation, through its discovery responses and deposition witness answers. But its briefing glosses over distinctions between the two brands and product lines. So before addressing EA's argument that the USPTO found confusion, it is important to note that the USPTO did *not* find a likelihood of confusion between GTI's INCREDIBLES mark and any of EA's *fruit basket* marks. The USPTO did not even cite EA's INCREDIBLE EDIBLE registrations for fruit baskets. USPTO examiners apparently understand just as well at consumers do that THC edibles are vastly different product than fruit baskets. The USPTO office action EA relies on to support its argument *only* cites EA's INCREDIBLE EDIBLES applications relating to its CBD brand.

In fact, the USPTO did not *really* make a formal finding at all. On April 10, 2020, the USPTO merely stated that *if* one or more of EA's pending applications issued "[GTI's] mark *may* be refused registration under Trademark Act section 2(d) because of a likelihood of confusion with the registered mark(s)." (Dkt. 133-6 at 2 (emphasis added).) The pending EA applications the USPTO pointed to are for "dietary and nutritional supplements,"[4] not fruit baskets. While the USPTO stated that there *may* be a likelihood of confusion issue between the parties' marks, the USPTO did not undertake a side-to-side comparison of the marks, nor did it assess the likelihood

---

[4] "Dietary and Nutritional Supplements" was EA's attempts to get around the fact that the USPTO will not grant registrations for CBD products. It is undisputed, though, that the only products EA is selling under these marks are CBD products. (incredibleedibles.com, Ex. 9.)

of confusion factors, and likely did not appreciate that GTI's INCREDIBLES brand was the senior user by a decade. (*Id.*)

The USPTO's April 10, 2020 Office Action is a far cry from a substantive likelihood of confusion finding. This was merely a procedural mechanism that put off further examination until a later date; indeed, GTI's application remains suspended, and EA's suggestion that GTI's application has been denied is false. (Dkt. 133 at 8; Appl. Serial No. 88/636987 Cover Page, Ex. 6.) Even if the USPTO *had* made an actual finding, it would not be binding on this court. While initial determinations by the USPTO may be considered, they need not be given weight when the USPTO did not review the evidence available to the district court. *See, e.g.*, *RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 664 (N.D. Ill. 2016) ("If the examiner considered evidence that is not presented to the factfinder at trial, or the examiner did *not* consider evidence that the factfinding *will* consider, then the probative value of the examiner is questionable.") (collecting cases).

The USPTO did not receive evidence, did not hear witnesses, and did not engage in discovery or any adversarial process. It did not know what EA already knew when it filed this lawsuit: that the parties' brands had peacefully coexisted for over a decade without incident, that EA did not begin selling CBD products until 2019, that those sales did not give rise to any trademark rights under the Lanham Act;[5] or that there was no evidence of actual confusion between the parties' products. Accordingly, the USPTO's finding that there "may" be a likelihood of confusion in a non-final office action simply is not entitled to any weight. It has no effect on this Court's ruling, and it had no effect on EA's knowledge that it had *no* evidence to support its case

---

[5] Ingestible CBD products are unlawful under the Food Drug and Cosmetics Act, as set forth in section D below.

against GTI.

### ii. The *Specht* Case is Not Relevant

EA's reliance on the *Specht* case is also misplaced. It is a district court case denying fees under the stricter standard that existed before *Octane Fitness*. It also is not as relevant as EA claims; the Court in *Specht* did *not* rely exclusively on a USPTO finding a likelihood of confusion in deciding not to find an exceptional case. In making his decision, Judge Lienenweber also pointed to the fact that abandonment was not a cut-and-dry issue, and that he had granted summary judgment on a "narrow" use in commerce issue. *Specht v. Google*, Inc., 805 F. Supp. 2d 551, 557. He did *not* find the entire case to be meritless – here, on the other hand, EA has conceded the utterly meritless nature of the entire case by dismissing it on the eve of summary judgment.

Specht was also an individual with a largely defunct business, who retained his brother-in-law, a real estate attorney, as counsel.[6] Judge Leinenweber came close to sanctioning Specht's counsel, agreeing with Google that "an objectively reasonable attorney who conducted the proper due diligence into the law and facts of this case would not have pursued these tactics," that "there were significant deficiencies in Plaintiffs' pleadings," and that Specht's counsel's "conduct during the course of this litigation comes closer to warranting sanctions." *Specht*, 805 F. Supp. 2d at 558-59. Ultimately, Judge Leinenweber denied sanctions against Specht's counsel pointing out that Google dealt with the inappropriate pleadings relatively easily. *Id.* at 559.

Naturally, a fee award to Google would have been a rounding error on Google's balance sheet, but it would have bankrupted Specht and his brother-in-law. During oral argument on appeal, one of the 7th Circuit Panel even commented to Specht's counsel that "He [Judge Leinenweber] was *doing you a favor there* by not awarding attorney's fees, describing it in a

---

[6] One of GTI's undersigned counsel represented Google in the *Specht* case and can attest to these facts.

general way, that's not a determination that he was doubtful of his summary judgment ruling was it?"[7] (emphasis added).

EA does not need any favors; it is a large company with hundreds of millions in annual revenue (according to public sources). It is quite familiar with litigation, having engaged in extensive federal and state court litigation with 1-800-Flowers, Google, and many others. A quick Pacer search at the time of filing this brief shows Edible Arrangements has filed *eighteen* federal lawsuits with a 'nature of suit' code 840 (trademarks). EA has multiple in-house counsel and multiple outside counsel. EA did not file this lawsuit because it got bad advice from a real estate attorney on a trademark matter. It filed this suit in a deliberate and planned attempt to sue its way into a different industry.

### i.  GTI's Pre-Litigation Letter is Not Relevant

EA misrepresents the parties' pre-litigation correspondence. GTI did *not* assert a likelihood of confusion between EA's *fruit basket* products and GTI's cannabis-infused edibles, nor did GTI "tee up" this case. (Dkt. 133 at 11.) On October 21, 2019, GTI sent its response to EA's September 25, 2019 cease and desist letter and set forth the same positions it maintains to date, namely that EA does not have any trademark rights in cannabis-infused edibles, that GTI is the senior rights holder for cannabis-infused edibles, and that "*[n]o consumer in the market for [cannabis-infused] edibles is likely to be confused* by Edible Arrangements' fruit, and vice versa." (*See* Dkt. 133-5; Dkt. 133-8 at 2 (emphasis added).) At the time GTI wrote its responsive letter, EA had just begun selling its CBD products and had not entered the cannabis industry in any capacity. (Silber Dep., Dkt. 127-1, at 64:17-65:17, 259:19-24.) GTI's cease and desist response only provides further

---

[7]  April 2, 2012 Motion Hearing, *Specht v. Google Inc.*, No. 11-3317, https://media.ca7.uscourts.gov/sound/2012/migrated.orig.11-3317_04_02_2012.mp3, at 33:50. While we do not have a transcript of the oral argument, we reviewed the recording and have transcribed it to the best of our ability here.

support that EA knew its claims were baseless from the start, and that this case should be found "exceptional."

**C.      Plaintiffs Delayed Key Discovery And Timely Resolution Of This Case**

EA's argument that its litigation conduct was proper and unexceptional is a misguided attempt to rewrite the history of this case. (Dkt. 133 at 14-15.) First, it was EA's dilatory tactics that necessitated extending fact discovery numerous times. Of course GTI signed the parties' joint motions to extend; it needed discovery from EA, and EA was stalling on its discovery obligations. (Dkt. 127 at 12-14.) Second, GTI did not file a "frivolous" protective order motion, but rightfully sought to prohibit an apex deposition of its CEO who did not have any unique relevant information justifying a burdensome deposition. (Dkt. 68.) At the deposition, EA asked GTI's CEO to read, word-for-word, an old earnings press release without any direction or purpose, among other pointless lines of questioning. (*See* Dkt. 127 at 14-15.) Indeed, it is EA that misrepresents the record when it states that the Court "denied" GTI's protective order when, in fact, the Court limited the apex deposition to "no more than three hours" on the narrow topics that EA identified in its opposition brief. (Dkt. 72 at 9; Dkt. 68.) Third, GTI's discussion of its motions to compel is not misleading. GTI never stated that it "won" all of these motions, but rather that EA's delayed productions drove up litigation costs and significantly delayed the resolution of this case. (Dkt. 127 at 12-14.) EA's assertion that this was just an "ordinary lawsuit" fails to appreciate that GTI— the Defendant—diligently worked to progress the case toward resolution while EA seemingly did everything possible to delay and instigate recurring discovery complications and disagreements. Lastly, the notion that EA gets to ride off into the sunset a hero because it chose to voluntarily dismiss its meritless case after nearly two and a half years is a farce. ███████████████████

██████████████████████████████████████████████████████████

████████████████  and yet EA continued to litigate for another *five months*, including multiple

depositions and expert discovery, and filed its motion for voluntary dismissal just weeks before summary judgment motions were due but after GTI had put substantial time and expense into its summary judgment motion. (*See* Dkt. 109.) EA's voluntary dismissal does not change the fact that its case was baseless from the day it commenced.

### D. The Farm Bill is Irrelevant

EA's repeated references to the 2018 Farm Bill are a red herring. Contrary to EA's unsupported assertions, the 2018 Farm Bill did *not* "legalize CBD." Instead, it defined "hemp" and carved hemp out from the Controlled Substances Act's definitions of "marihuana" and "tetrahydrocannabinols." *See* Agriculture Improvement Act of 2018 §§ 297A(1) and 12619; 7 U.S.C. 1639o; 21 U.S.C. 802(16)(B); 21 U.S.C. 812(c)(17). Importantly, the 2018 Farm Bill expressly states, "Nothing in this subtitle shall affect or modify [] the Federal Food, Drug, and Cosmetic Act … or [] the authority of the Commissioner of Food and Drugs." *See* Agriculture Improvement Act of 2018 § 297D(c)(1); 7 U.S.C. 1639r(c). As EA well knows from the *numerous* refusals it has received from the USPTO,[8] consumable forms of CBD are unlawful under the Food, Drug, and Cosmetic Act. The very congressional testimony by the FDA's Principal Deputy Commissioner that EA cited in its attempt to dismiss this case without prejudice confirms: "At present, any CBD food or purported dietary supplement products in interstate commerce is in violation of the [Food, Drug, and Cosmetic Act]." (*See* Testimony of Amy Abernethy, Md, Phd., Principal Deputy Commissioner, Office of the Commissioner, Food and Drug Administration, Department of Health And Human Services before the Senate Committee on Agriculture, Nutrition, and Forestry (July 25, 2019), Ex. 8.) In short, EA does not have and cannot obtain

---

[8] A sampling of such refusals is collectively attached as Exhibit 7. *See* sections in each captioned "REFUSAL UNDER SECTIONS 1 AND 45 – NO BONA FIDE INTENT TO USE IN COMMERCE."

trademark rights in relation to edible CBD under the Lanham Act, and thus any belief of "infringement" based on those marks is both objectively and subjectively unreasonable. *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526, 3 USPQ2d 1306, 1308 (Fed. Cir. 1987) (noting that to qualify for federal trademark registration, the use of a mark in commerce must be lawful).

**III.      CONCLUSION**

For the aforementioned reasons, GTI respectfully requests that the Court declare this case exceptional and award GTI its reasonable attorneys' fees.

Respectfully submitted,

Dated:  May 19, 2023                          GREENBERG TRAURIG LLP

/s/ *Cameron Nelson*
Cameron Nelson
Eric J. Maiers
Maja E. Sherman
Katherine M. Cronin
Mikhael Tomlinson
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-6590
nelsonc@gtlaw.com
maierse@gtlaw.com
shermanm@gtlaw.com
cronink@gtlaw.com
tomlinsonm@gtlaw.com
*Attorneys for MC Brands, LLC and Green Thumb Industries Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon all counsel of record via the CM/ECF System on this 19th day of May, 2023.

/s/ Cameron M. Nelson

*Counsel for Defendants*

15